STEPHEN KARL GRESH v. BERKS CO., et. al.

CIVIL ACTION No. 00-5697

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2002 U.S. Dist. LEXIS 13347

July 18, 2002, Decided

DISPOSITION: Defendants' motions for summary judgment granted.

CORE TERMS: prison, hepatitis, therapy, medication, summary judgment, liver, prisoner, specialist, inmate, medical care, admit, blood, deposition, filling, deliberately, deprivation, indifferent, diagnosis, doctor, evidentiary support, dentist, cavity, Eighth Amendment, motion to dismiss, medical need, credibility, enzymes, fail, denial of access, oral argument

COUNSEL: [*1] For STEPHEN KARL GRESH, PLAINTIFF: KATHLEEN D. DAUTRICH, READING, PA USA.

STEPHEN KARL GRESH, PLAINTIFF, Pro se, BIRDSBORO, PA USA.

For BERKS COUNTY, PENNSYLVANIA, BERKS COUNTY PRISON BOARD, HOLLIDAY, OFFICER, MS., DEFENDANTS: ANDREW B. ADAIR, HOLSTEN & ASSOCIATES, MEDIA, PA USA.

For CARL HOFFMAN, DEFENDANT: JOHN R. NINOSKY, GOLDBERG, KATZMAN & SHIPMAN, HARRISBURG, PA USA.

For A. RAB CHOWDHURY, MARY-BETH JACKSON, DEFENDANTS: GEORGE H. KNOELL, III, KANE, PUGH, KNOELL & DRISCOLL, NORRISTOWN, PA USA.

For ON-SITE PILL NURSE JOHN-JOHN/OFFICER JOHN HAYES, DEFENDANT: JOHN R. NINOSKY, GOLDBERG, KATZMAN AND SHIPMAN, HARRISBURG, PA USA. ANDREW B. ADAIR, HOLSTEN & ASSOCIATES, MEDIA, PA USA.

JUDGES: Norma L. Shapiro, S.J.

OPINIONBY: Norma L. Shapiro

OPINION: MEMORANDUM AND ORDER

Norma L. Shapiro, S.J.

July 18, 2002

Stephen Karl Gresh ("Gresh"), originally bringing this action as a prisoner pro se, claims that defendants offered him constitutionally deficient medical care. After Gresh's release from prison, a motion to dismiss was granted in part and denied in part. The following claims survived:

a. Plaintiff's § 1983 claim against Officer Holliday, in her individual [*2] capacity, for denial of medical care when plaintiff was vomiting blood;

b. Plaintiff's § 1983 claim against Carl Hoffman, A. Rab Chowdhury, and Marybeth Jackson, in their individual capacities, for denial of appropriate medical care for plaintiff's Hepatitis C;

c. Plaintiff's § 1983 claim against John Haynes and Sandy Martin, in their individual capacities, for their denials of access to medication;

d. Plaintiff's claims against Berks County and the Berks County Prison:

i. Under § 504 of the Rehabilitation Act for denial of access to the dental care program;

ii. Under § 1983 for the policy of denying a seriously ill prisoner access to necessary but costly medical care;

iii. Under § 1983 for the policy and procedures resulting in prisoners routinely not receiving prescribed medications.

Gresh retained counsel while discovery was ongoing. All defendants then moved for summary judgment. After oral argument, the motions for summary judgment will be granted for the following reasons.

I. Factual History

From February 17, 2000, through May 21, 2001, Gresh was an inmate at the Berks County Prison (the "Prison"), in Berks County, Pennsylvania. Gresh suffered from [*3]

several pre-existing medical conditions: Hepatitis C; n1 attention deficit disorder; gastrointestinal problems; tooth decay; and clinically diagnosed depression (marked by an attempted suicide).

    n1 "Hepatitis C is a condition which results in the inflammation of the liver. See STEDMAN'S MEDICAL DICTIONARY 808 (27th Ed.2000). The ensuing liver cell damage causes, inter alia, the retention of bilirubin (a type of bile pigment) as well as a rise in the level of particular enzymes. See id. at 202, 808. Of the various forms of hepatitis, Hepatitis C has the highest likelihood of becoming a chronic condition and at least 20% of Hepatitis C patients eventually develop cirrhosis. See THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 382-383 (17th ed. 1999)." *McKenna v. Wright, 2002 U.S. Dist. LEXIS 3489, 2002 WL 338375,* *1 n. 1 (S.D.N.Y. Mar. 4, 2002).

A. Facts Relevant to a Claims of Denial of Access to Care for Hepatitis C

One week after entering the Prison, Gresh met with John D. Surry, M.D. ("Dr. Surry"), the medical [*4] director of Prime Care Medical, Inc. ("Prime Care"). Prime Care is an independent contractor that provided medical coverage at the Prison. Prime Care refers inmates with exceptional medical needs to outside specialists. The decision to refer an inmate to an outside specialist is made by Prime Care's prison medical director.

Dr. Surry requested Gresh's medical records, and reviewed his liver enzymes to determine the severity of his Hepatitis C infection. Dr. Surry made an initial determination that Gresh's disease was stable.

Within days, Gresh filed a pro se petition in the Court of Common Pleas of Berks County for Modification of Sentence under 61 P.S. § 81. Gresh alleged that he needed to be released from prison to be treated for his disease. At a court hearing in April, 2000, Dr. Surry testified that Gresh was a candidate for a treatment consisting of a mix of Ribavirin and Interferon, both anti-viral agents (the "combination therapy"), but not every candidate is suitable for the combination therapy. Because Interferon causes depression, individuals must by cleared by a psychiatrist before they can receive the combination therapy. Because it can also have serious side effects, [*5] the individual's Hepatitis C must be sufficiently progressed and the individual's condition deteriorating before treatment is warranted. Dr. Surry testified further that if Gresh successfully completed the testing process, he would receive the combination therapy.

At a second hearing in June, 2000, Judge Sprecher of the Court of Common Pleas spoke with defendant Dr. Carl Hoffman ("Dr. Hoffman"), the President of Prime Care. Dr. Hoffman assured the court the Prison would test Gresh's blood and forward the results to an appropriate outside specialist.

In July, 2000, defendant Marybeth Jackson, M.D. ("Dr. Jackson") became Prime Care's medical director at the Prison. Dr. Jackson referred Gresh to a liver specialist, defendant A. Rab Chowdhury, M.D. ("Dr. Chowdhury"). Gresh met with Dr. Chowdhury on July 6, 2000. Dr. Chowdhury noted that Gresh had a history of depression. He recommended Gresh continue receiving Axid for his gastrointestinal problems despite Gresh's concern about possible liver damage. Dr. Chowdhury ordered further testing to determine Gresh's eligibility for the combination therapy.

Gresh then sent Dr. Chowdhury a letter, attaching recent medical literature regarding [*6] Hepatitis C treatments. The letter stated, in relevant part:

Please also feel free to utilize this information as a guide, or for cross-referencing purposes, for any future report(s) or testimony concerning my unfortunate condition. Thank you in advance, and I look forward to finally receiving treatment as soon as possible.

You are further requested to make a duplicate copy of the CHOWDHURY report and entire medical record file, and mail such to [my attorney].

Please also remain available on July 20, 2000, between 11:00 a.m. and 12:00 p.m. ... in the event that your expert testimony may become necessary before the honorable court.

/s/ [Gresh], Certified Legal Assistant

((Thank you kindly!))

Upon receipt of this communication, Dr. Chowdhury withdrew as Gresh's liver specialist. Shortly thereafter, at a third hearing before the Court of Common Pleas in late July, Gresh testified that Dr. Chowdhury refused to treat him because the time remaining on his term of incarceration was less than the time required to completed the drug therapy. Gresh did not bring the Dr. Chowdhury correspondence, suggesting no such final decision had been made, to the attention [*7] of the Court.

Judge Sprecher asked Dr. Hoffman to find a new specialist; Dr. Hoffman and Dr. Jackson referred Gresh

to Dr. Thomas R. Riley ("Dr. Riley"). Dr. Jackson continued to monitor Gresh's liver function while Gresh awaited an appointment with Dr. Riley.

On September 8, 2000, Gresh filed a Petition to Permit Absence from Jail for Medical Treatment; the Petition would have allowed Gresh to visit his own specialist. Judge Sprecher denied this Petition.

In December, 2000, Dr. Riley examined Gresh. He ordered a liver biopsy to determine if the combination drug treatment was appropriate.

On January 4, 2001, Judge Sprecher held that "PrimeCare Medical has acted appropriately in securing care for Mr. Gresh's Hepatitis C." Gresh's appeal of this decision was dismissed.

On March 16, 2001, Gresh's liver biopsy showed a minimal inflammation corresponding to mildly active Hepatitis C.

Gresh was released from the Prison on May 8, 2001.

On August 10, 2001, Dr. Riley met with Gresh to discuss his treatment. n2 Dr. Riley told Gresh that the best course of treatment was a "watch and wait" strategy because Gresh's most recent blood tests showed that his disease was under control. Dr. Riley [*8] discussed with Gresh the National Institute of Health consensus that low grade Hepatitis C did not warrant aggressive drug treatment. Gresh told Dr. Riley he would seek a second opinion. It is unclear if Gresh has begun the combination therapy to date.

> n2 Plaintiff's brief mentions an earlier meeting and letter, but Plaintiff does not submit the letter or detail the meeting.

B. Facts Relevant to Claim of Denied Dental Care Under Rehabilitation Act

Plaintiff admits he saw a dentist on March 10, 2001. Michael Kovaleski ("Dr. Kovaleski"), D.M.D., confirmed Gresh had a cavity and offered to fill it with a metal filling (a white filling was out of stock). Gresh, allegedly refusing a silver filling, stated he would wait for the white filling. Plaintiff's cavity was not filled before his May 21, 2001, release from Prison. Dr. Kovaleski avers that he did not deny Gresh treatment because of his Hepatitis C condition, and that he has treated other similarly affected inmates.

C. Facts Relevant to Plaintiff's Claims Against [*9] Officer Holiday

Plaintiff alleges that defendant Officer Catherine Holliday ("Holliday") was deliberately indifferent to his medical needs on June 22, 2000; she ignored his requests for medical help and refused to get assistance when he vomited blood.

In his deposition, plaintiff did not recall if he vomited blood, and admitted it might have been fruit punch. Holliday alerted the first passing nurse, and the nurse advised her that she would take care of the problem. Plaintiff admits that he does not know if Holliday saw him vomit; Holliday avers she did not.

D. Facts Relevant to Plaintiff's Claim of Denial of Access to Medication

Plaintiff's original complaint outlined occasions where he was denied access to medication by Sandy Martin ("Martin"), John Haynes ("Haynes") and the Berks County defendants. In his deposition, plaintiff admitted that medication may have been delivered late, not denied, on an unspecified number of days. Plaintiff does not provide any documentation supporting his claim that his heartburn medication was not provided him on a regular basis.

II. Discussion

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, [*10] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c).* The party moving for summary judgment bears the initial burden of demonstrating there are no facts supporting the opposing party's claim. See *Celotex Corp. v. Catrett, 477 U.S. 317, 322-324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).* There is an issue of material fact only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).* The nonmoving party is entitled to every favorable inference that can be drawn from the record. See *United States v. Diebold, Inc., 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962).* Relevant facts will be considered according to this standard in the discussion of the motions.

In most cases, if the moving party meets his burden, the opposing party must introduce specific, affirmative evidence manifesting a genuine issue of material fact requiring a trial. [*11] See *Celotex, 477 U.S. at 322-324.* A plaintiff must "point to concrete evidence in the record that supports each and every essential element of his case" to survive summary judgment. *Orsatti v. New*

*Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *Fed R. Civ. Pro. 56(e)*. But, if the movant's papers themselves create a triable issue of fact, or if the movant's evidence "raises subjective questions such as motive, intent, or conscience, there may have to be a trial inasmuch as cross-examination is the best means of testing the credibility of this kind of evidence." Charles Alan Wright et al, 10A Federal Practice and Procedure § 2727 (1998).

Three groups of defendants move for summary judgment: (1) Dr. Chowdhury and Dr. Jackson; (2) County of Berks, Berks County Prison Board, and Officer Holiday; and (3) Dr. Hoffman, Martin, and Haynes. The defendants have produced voluminous evidentiary support for their motions, including affidavits, expert reports, depositions, contemporaneous correspondence, and notes.

Plaintiff responds with a cursory brief. He disputes one legal issue raised by some of the defendants (claim preclusion), and argues, [*12] without explanation, that defendants' evidence fails to meet their burden because the issues raised necessarily implicate credibility determinations best left to the jury. Plaintiff submits no evidence of his own, nor identifies any evidence submitted by defendants, to support his claims. Plaintiff also argues, for the first time, that defendants are liable to him as a third party beneficiary of a contract. n3

> n3 Plaintiff's counsel is Kathleen D. Dautrich, Esq. Ms. Dautrich consistently failed to file documents within the time constraints imposed by the court's scheduling orders. She failed to return repeated phone calls from the court's deputy clerk. Her brief displays little awareness of the Federal Rules of Civil Procedure or constitutional law. At oral argument, she asserted a lack of time to understand the case, but Ms. Dautrich also represented Gresh during the state court proceedings; this excuse lacks credibility.

The court's order on defendants' motion to dismiss sets forth the law governing this action. [*13] The claims that survived the motion under *Fed. R. Civ. Pro. 12(b)(6)* are now analyzed under *Fed. R. Civ. Pro. 56*.

A. Claims for Deprivation of Medical Care under § 1983

"To impose liability under Section 1983, a plaintiff must establish with particularity that the named defendant was directly and personally involved in the deprivation of the plaintiff's rights." *Payton v. Vaughn, 798 F. Supp. 258, 260 (E.D. Pa. 1992)*(citations omitted).

In order to bring a claim for unconstitutional deprivation of medical care, plaintiff must allege: (1) a sufficiently serious medical need; and (2) the defendant was deliberately indifferent to that serious medical need. See *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)*. The Supreme Court has strongly emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id. at 105*.

"Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993)*. Medical treatment violates the Eighth Amendment [*14] only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)*. Mere negligence or medical malpractice is insufficient. See *Estelle, 429 U.S. at 106*. "Deliberate indifference ... requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)* (internal quotes and citations omitted). Disagreement with a doctor's diagnosis, even if that disagreement is by another doctor, does not establish deliberate indifference. See *White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990)*. Prisoners are not entitled to the best medical care available; they are merely guaranteed that their doctors will not be deliberately indifferent to their needs. See *Campbell v. Sacred Heart Hospital, 496 F. Supp. 692, 695 (E.D. Pa. 1980)*.

1. Against Berks County and the Prison for the policy of denying a seriously ill prisoner access to necessary but costly medical treatment [*15] for Hepatitis C.

Plaintiff claims that Berks County and its Prison had a policy to deny him the combination therapy for Hepatitis C. Plaintiff alleges that this purported deprivation resulted from an official policy or custom of Berks County and the Berks County Prison. See *Monell v. Department of Social Servs., 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978)*.

However, plaintiff has provided no evidence that Bucks County or its Prison had a policy of denying care to Hepatitis C positive inmates. Plaintiff alleged that one other inmate, Eric Miller, was denied treatment. He has produced no evidentiary support for this allegation.

Dr. Jackson, administering the Berks defendants' medical programs, testified that two to three inmates have received treatment for Hepatitis C while at the Prison. She also testified that Gresh was evaluated for the drug combination therapy, according to standing

medical procedures, and ultimately judged to be an inappropriate candidate. After Gresh was released from the Prison, his personal physician confirmed this diagnosis.

Plaintiff has brought no evidence to the court's attention establishing the County or the Prison had [*16] a policy of denying medical care to inmates infected with Hepatitis C. He argues that he is the third party beneficiary of a contract between the Prison and Prime Care. However, this allegation was not made in his original Complaint. The claim is not one of those permitted under the order denying in part defendants' motion to dismiss. Discovery did not proceed on this theory, and Gresh did not move to amend his Complaint. Gresh has not identified which part of what contract was purportedly breached. Even if he had, breach of a contract would not necessarily establish liability under Monell: if the Berks defendants had a contract to provide care, and Prime Care breached it, then the Berks County defendants would not necessarily be liable because their policy would have been to provide care, not to fail to do so.

Plaintiff's § 1983 allegations against the Berks County defendants for a policy denying care to inmates infected with Hepatitis C have no evidentiary support. Summary judgment will be granted as to these claims. n4

> n4 It is unnecessary to decide the defendants' contention that Gresh is precluded from re-litigating the issue of their liability.

[*17]

2. Against Carl Hoffman, A. Rab Chowdhury and Marybeth Jackson, in their individual capacities, for denial of appropriate medical care for plaintiff's Hepatitis C

Defendants admit that Hepatitis C constitutes a serious medical need. Gresh contends that their refusal to provide him with drug combination therapy constituted deliberate indifference to that need. Gresh's position is rebutted by the evidence of record.

Dr. Hoffman and Dr. Jackson, Prime Care employees, carefully monitored Gresh's condition during his incarceration. They tested his liver enzymes on a regular basis (6 blood tests in 2000); his liver was biopsied; and he was referred to a liver specialist. This specialist, as well as every other doctor whose evaluation is of record, determined that Gresh was not a suitable candidate for the drug combination therapy. His liver function, while not normal, was not sufficiently impaired to warrant the therapy. He had not been declared psychologically fit, a failure especially relevant in light of his previous attempted suicide.

After Gresh's release from prison, Doctor Riley, who is not a defendant in this action, also concluded that the best treatment course was to "watch [*18] and wait," not to administer the treatment.

Gresh's claim reduces to a demand that his belief about his suitability for certain medicines should trump the considered judgment of multiple medical professionals. Defendants' experts state that Gresh's care was within standard medical guidelines: these reports are not controverted. There is no evidence of record from which a reasonable factfinder could conclude that denying Gresh the combination therapy was medically negligent.

Even if it were, that is, if Gresh's belief that he deserved the combination therapy was grounded in fact, he has provided no evidence that defendants believed he was a suitable candidate for the combination therapy and nevertheless denied it to him because of expense or otherwise. Cf. *Estelle v. Gamble, 429 U.S. at 106* ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Without such evidence, Gresh's claim fails as a matter of law. No reasonable jury could conclude that the defendants' failure to provide Gresh combination therapy was deliberately indifferent to his medical needs; summary judgment will be granted.

3. Against Officer Holliday, [*19] in her individual capacity, for denial of medical care when plaintiff was vomiting blood

Plaintiff now admits that "I don't know if there was blood in my vomit." He admits that his stomach pains followed a prolonged, self-imposed fast. Holliday, who is not qualified to administer medical care on her own, secured treatment for Gresh from the first available medical professional. Gresh admits that he does not know if Holliday observed him vomit. Holliday avers that she did see any vomiting, and that she was unaware of Gresh's alleged distress.

The evidence of record establish neither Gresh's serious medical need nor Holliday's deliberate indifference. Summary judgment will be granted for Officer Catherine Holliday.

4. Against Berks County and the Prison for the policy and procedures resulting in prisoners routinely not receiving prescribed medications.

Plaintiff alleged that he was denied medications on numerous occasions. At deposition, plaintiff testified he

was unable to distinguish between those days where he was denied medication and those days when it was delivered late.

Occasional missed doses of medication do not implicate the Constitution, see *Herndon v. Whitworth, 924 F. Supp. 1171 (N.D. Ga. 1995),* [*20] although a consistent failure to provide prescribed medication could constitute a "wanton infliction of unnecessary pain" and violate the Eighth Amendment. *Id. at 1173; Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980),* cert. denied, *450 U.S. 1041, 68 L. Ed. 2d 239, 101 S. Ct. 1759 (1981).*

The defendants successfully established there are no material facts of record supporting plaintiff's claim he was denied access to medications when those medications were necessary to treat a serious medical need. The burden then shifted to plaintiff to identify instances of actual denial of access to medication, and the effect on his health. Gresh failed to meet this burden, despite being offered a chance, through counsel, to do so at oral argument. Summary judgment will be granted.

5. Against John Haynes and Sandy Martin, in their individual capacities, for their denials of access to medication

Claims against Haynes and Martin arise from those against the Berks County defendants, and fail for the same reason.

6. Under § 504 of the Rehabilitation Act for denial of access to the dental care program.

Gresh alleged that the Berks County defendants [*21] violated the Rehabilitation Act by denying him access to dental care because of his Hepatitis C condition. To prevail under the Rehabilitation Act, Gresh must establish: (1) he was handicapped within the definition of the Act; (2) he was "otherwise qualified" to participate in the program in question; (3) he was excluded because of his handicap; and (4) the program receives federal funds. *August v. PA Dept. of Corrections, 876 F. Supp. 1437, 1465 (E.D. Pa. 1995).* Defendants assert the plaintiff fails to meet the third requirement.

Plaintiff admits he was seen by a dentist twice. He also admits that the Prison dentist told him there was no white filling in stock to repair a cavity. The dentist's notes of that conversation state that Gresh was offered the chance to have a silver filling, but that Gresh refused. The defendants have successfully articulated a legitimate reason for denying Gresh dental treatment. The burden therefore shifts to Gresh to establish that disputed issues of material fact defeat summary judgment.

In his deposition, Gresh disputed Dr. Kovaleski's account of their conversation, but did not suggest that the dentist denied him treatment because [*22] of his medical condition. Gresh testified that a "Martha Gambler" told him that his condition was the real reason his cavity was not filled. However, he does not provide any evidentiary support for this hearsay account. Absent such evidence, summary judgment will be granted on Gresh's Rehabilitation Act claim.

III. Conclusion

The defendants' motions for summary judgment will be granted, and judgment will be entered against Gresh and for the defendants on all remaining claims.

ORDER

AND NOW, this 18th day of July, 2002, for the reasons given in the foregoing memorandum, it is ORDERED that:

1. The Motion for Summary Judgment of defendants Chowdhury and Jackson (# 56), erroneously docketed as plaintiff's Motion for Summary Judgment (# 56), is GRANTED. JUDGMENT IS ENTERED in favor of defendants A. Rab Chowdhury and Marty Beth Jackson, and against plaintiff Stephen Karl Gresh.

2. The Motion for Summary Judgment of defendants Hoffman, Martin, and Haynes (# 58) is GRANTED. JUDGMENT IS ENTERED in favor of defendants Carl Hoffman, Sandy Martin, and John Haynes and against plaintiff Stephen Karl Gresh.

3. The Motion for Summary Judgment of [*23] defendants Berks County, Berks County Prison, and Holliday (# 62) is GRANTED. JUDGMENT IS ENTERED in favor of defendants County of Berks, Berks County Prison Board, and Officer Catherine Holliday and against plaintiff Stephen Karl Gresh.

4. The clerk shall mark this action closed for statistical purposes.

Norma L. Shapiro, S.J.

JOSEPH HASSAN, and all others similarly situated, Plaintiffs, - against - DR. CYRIL KHANYILE, et al., Defendants.
98 Civ. 1289 (DC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1998 U.S. Dist. LEXIS 7636

May 20, 1998, Decided
May 21, 1998, Filed

DISPOSITION: [*1] Plaintiff's request for a TRO and preliminary injunction denied.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff inmate made a motion for a temporary restraining order (TRO) and preliminary injunction in his action alleging a violation of his constitutional rights due to defendant doctor's decision to discontinue interferon treatment for the inmate's hepatitis.

OVERVIEW: The doctor discontinued the inmate's interferon treatment because his condition showed no marked improvement. Upon consideration, the court denied the inmate's motion for a TRO and preliminary injunction, holding that he failed to demonstrate irreparable harm or likelihood of success on the merits. The court determined that the inmate had not established irreparable harm because the doctor stated in his affidavit that the treatment appeared to be ineffective and should be discontinued to prevent further damage to the inmate's liver. With respect to the inmate's likelihood of success on the merits, the court construed his claim as one for violation of his Eighth Amendment rights. The court found that the inmate did not demonstrate subjectively that the doctor acted with deliberate indifference to an excessive risk to his health because the facts indicated that continued treatment could actually be detrimental to the inmate's health. The court noted that the doctor consulted with a gastroenterology specialist before discontinuing treatment and discussed the medical necessity of his decision with the inmate.

OUTCOME: The court denied the inmate's motion for a TRO and preliminary injunction against the doctor.

CORE TERMS: interferon, discontinued, preliminary injunction, hepatitis, medically, Eighth Amendment, likelihood of success, injunctive relief, irreparable harm, discontinue, deliberate indifference, subjective, decidedly, excessive, hardships, tipping, gastroenterology, specialist, patients, pain

LexisNexis (TM) HEADNOTES - Core Concepts:

Civil Procedure: Injunctions: Preliminary & Temporary Injunctions
Civil Procedure: Injunctions: Elements
[HN1] A party seeking a preliminary injunction must show (1) that it is likely to suffer irreparable harm if temporary injunctive relief is not granted and (2) either (A) a likelihood of success on the merits or (B) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in its favor.

Constitutional Law: Cruel & Unusual Punishment
[HN2] To prevail on a claim for an Eighth Amendment violation, plaintiff must establish both a subjective and an objective element. On a subjective level, plaintiff must show that the prison official acted with deliberate indifference to an excessive risk to plaintiff's health or safety. Objectively, plaintiff must prove that the alleged wrongful act was "sufficiently serious" such that the deprivation denied him the minimal civilized measure of life's necessities.

COUNSEL: JOSEPH HASSAN, Plaintiff, Pro Se, Warwick, New York.

MIRNA E. MARTINEZ, ESQ., Assistant Attorney General, DENNIS C. VACCO, ESQ., Attorney General of the State of New York, New York, New York, for Defendants.

JUDGES: DENNY CHIN, United States District Judge.

OPINIONBY: DENNY CHIN

OPINION: MEMORANDUM DECISION

CHIN, D.J.

Plaintiff, an inmate at the Mid-Orange Correctional Facility, seeks a temporary restraining order ("TRO") and preliminary injunction with respect to Dr. Khanyile's n1 decision to discontinue interferon treatment for his hepatitis. Plaintiff alleges that such action violates his constitutional rights because if his treatment is discontinued, plaintiff may suffer severe internal organ damage and death from hepatitis.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 Although in the caption plaintiff names as defendants "Dr. Cyril Khanyile, et al.," Dr. Khanyile appears to be the only defendant against whom plaintiff seeks relief. Accordingly, the Court recognizes Dr. Khanyile as the sole defendant in this action.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*2]

[HN1] A party seeking a preliminary injunction must show (1) that it is likely to suffer irreparable harm if temporary injunctive relief is not granted and (2) either (A) a likelihood of success on the merits or (B) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in its favor. *Polymer Tech. Corp. v. Mimran, 37 F.3d 74, 77-78 (2d Cir. 1994).* Having reviewed plaintiff's complaint and Dr. Khanyile's opposition papers submitted on March 31, 1998, I find no basis for the grant of injunctive relief.

First, plaintiff has not demonstrated irreparable harm. According to Dr. Khanyile's affidavit, plaintiff's interferon treatment was discontinued because plaintiff's condition exhibited no marked improvement as a result of the treatment, and thus it appeared that such treatment was ineffective. Moreover, plaintiff had already been taking interferon for six to twelve months longer than is generally medically indicated for treatment of hepatitis, and it was Dr. Khanyile's medical opinion that the treatment should be discontinued to prevent further damage to plaintiff's liver, an opinion with which a gastroenterology [*3]specialist, Dr. Maliakkal, concurred. Finally, Dr. Khanyile stated in his affidavit that interferon treatment is effective in only a small number of hepatitis patients, and that even for those patients who respond well to such treatment, there is a high rate of relapse. Hence, because further interferon treatment would not likely improve plaintiff's condition, plaintiff cannot demonstrate that irreparable harm will flow from the Court's refusal to issue a TRO or preliminary injunction compelling Dr. Khanyile to resume treatment.

Furthermore, plaintiff cannot establish a likelihood of success on the merits, or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in his favor. I construe plaintiff's allegation of denial of medical treatment as an Eighth Amendment claim. [HN2] To prevail on a claim for an Eighth Amendment violation, plaintiff must establish both a subjective and an objective element. *Cruz v. Jackson, 1997 U.S. Dist. LEXIS 1093, 94 Civ. 2600, 1997 WL 45348,* at *6 (S.D.N.Y. Feb. 5, 1997); see also *Hamilton v. Peters, 919 F. Supp. 1168, 1173 (N.D. Ill. 1996).* On a subjective level, plaintiff must show that the[*4] prison official acted with deliberate indifference to an excessive risk to plaintiff's health or safety. *Branham v. Meachum, 77 F.3d 626, 631 (2d Cir. 1996); Cruz v. Jackson, 1997 U.S. Dist. LEXIS 1093, 1997 WL 45348,* at *6 (citing *Wilson v. Seiter, 501 U.S. 294, 298-99, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991)); Williams v. Greifinger, 918 F. Supp. 91, 94* (S.D.N.Y.) (citing *Farmer v. Brennan, 511 U.S. 825, 834, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994)),* rev'd on other grounds, *97 F.3d 699 (2d Cir. 1996); Hamilton, 919 F. Supp. at 1173.* Objectively, plaintiff must prove that the alleged wrongful act was "'sufficiently serious' such that the deprivation 'denied [him] the minimal civilized measure of life's necessities.'" *Branham, 77 F.3d at 630-31* (quoting *Wilson, 501 U.S. at 298).*

Plaintiff's complaint states that Dr. Khanyile discontinued the interferon treatment without consultation with plaintiff; that Dr. Khanyile ignored plaintiff's high enzyme levels; and that plaintiff complained about pain and inflammation in his side, but that no medication was prescribed for his pain. Dr. Khanyile's sworn affidavit, on the other hand, states that plaintiff had been treated with[*5] interferon for eighteen months, but had not responded to the treatment; that discontinuation of interferon treatment was medically indicated because continued interferon treatment could actually exacerbate plaintiff's condition; that the decision to discontinue plaintiff's interferon treatment was made only after Dr. Khanyile's clinical findings had been confirmed by a gastroenterology specialist; and that Dr. Khanyile met with plaintiff shortly after treatment was discontinued and explained to him that the decision to discontinue interferon treatment was medically indicated due to the ineffectiveness of the treatment.

In view of these facts, plaintiff will have difficulty demonstrating at trial that, in discontinuing the interferon treatment, Dr. Khanyile acted with deliberate indifference to an excessive risk to plaintiff's health or safety. Rather, it appears that Dr. Khanyile was acting in plaintiff's best interests medically and was attempting to minimize the possibility of further suffering by plaintiff. Accordingly, plaintiff has not established a likelihood of success on the merits of his Eighth Amendment claim.

As plaintiff fails to satisfy the prerequisites for injunctive[*6] relief, plaintiff's request for a TRO and preliminary injunction is denied.

SO ORDERED.

Dated: New York, New York

May 20, 1998

DENNY CHIN

United States District Judge

FRANK GRAHAM, Plaintiff, - against - LESTER N. WRIGHT, etc.,et al., Defendant(s).
01 Civ. 9613 (NRB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OFNEW YORK

2003 U.S. Dist. LEXIS 16106

September 11, 2003, Decided
September 12, 2003, Filed

DISPOSITION: [*1] All claims dismissed against defendants with exception of plaintiff's claims for monetary damages against defendants Graceffo, Makram, Lancellotti, and Milicevic in their individual capacities.

CASE SUMMARY:

PROCEDURAL POSTURE: In a *42 U.S.C.S. § 1983* case, pro se plaintiff inmate sued defendants, six prison employees, including four doctors, alleging violations of the Eighth and Fourteenth Amendments because his Hepatitis C condition was not diagnosed in a timely manner and a failure to provide him with adequate medical treatment. A magistrate judge recommended that defendants' Fed. R. Civ. P. 12(b)(1) and 12(b)(6) motion be granted in part and denied in part.

OVERVIEW: The inmate's claim against one prison employee stemmed entirely from that employee's denial of his grievance. There was no way that the individual could have responded to and/or remedied the inmate's allegations of deliberate indifference that occurred prior to inmate's transfer to the facility where the employee was employed. The inmate failed to state a claim against that employee in his individual capacity. The inmate's claim for monetary damages against one doctor failed because the inmate did not allege that he was ever treated by the doctor. In regards to two other doctors, dismissal was inappropriate since those doctors treated the inmate. Relevant to the inmate's claim was the time frame in which the medical community acquired sufficient knowledge of Hepatitis C so that a failure to diagnose the condition might possibly be an Eighth Amendment violation. Neither party submitted admissible evidence on the precise time frame in which the medical community acquired its knowledge of Hepatitis C. While the doctors might prevail at the summary judgment stage of the proceedings, dismissal was inappropriate.

OUTCOME: All claims against all defendants were dismissed except for monetary claims against four doctors in their individual capacities.

CORE TERMS: deliberate indifference, grievance, recommendation, medical community, monetary damages, inmate, motion to dismiss, time frame, summary judgment, medical staff, diagnosed, diagnose, prisoner, immunity, stem, injunctive relief, decision to deny, ordering, patient, liver

LexisNexis (TM) HEADNOTES - Core Concepts:

Constitutional Law: State Autonomy
Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials
[HN1] In a *42 U.S.C.S. § 1983* case, a plaintiff's claims against individual defendants in their personal capacity are not barred by Eleventh Amendment immunity.

Constitutional Law: Cruel & Unusual Punishment
Constitutional Law: Civil Rights Enforcement: Prisoners: Medical Treatment
[HN2] In order to survive, a plaintiff's deliberate indifference claims against each of these defendants must demonstrate a level of culpable recklessness beyond ordinary negligence. A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Constitutional Law: Civil Rights Enforcement: Prisoners: Medical Treatment
[HN3] It is well established that prison supervisory officials are generally entitled to delegate medical responsibility to facility medical staffs and are entitled to rely on the opinion of medical staff concerning the proper course of treatment.

COUNSEL: Frank Graham, Plaintiff, Pro se, Dannemora, NY.

For Defendants: Kevin P. McCaffrey, Esq., Assistant Attorney General, State of New York, New York, NY.

JUDGES: NAOMI REICE BUCHWALD, UNITED STATES DISTRICT JUDGE.

OPINIONBY: NAOMI REICE BUCHWALD

OPINION: MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

On October 31, 2001, plaintiff, Frank Graham ("plaintiff" or "Graham"), an incarcerated inmate in the custody of the New York State Department of Correctional Services ("DOCS"), filed this complaint pursuant to *42 U.S.C. § 1983* alleging violations of the *Eighth* and *Fourteenth Amendments.* Specifically, plaintiff, who has been diagnosed with Hepatitis C, alleged in his complaint that the defendants failed to diagnose his condition in a timely manner and to provide him with adequate medical treatment. In addition, plaintiff alleged that DOCS' policy of imposing special requirements for the treatment of inmates diagnosed with Hepatitis C violates[*2] the *Fourteenth Amendment.* On February 4, 2002, defendants moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction and for failure to state claim. On August 22, 2003, Magistrate Judge Pitman issued a Report and Recommendation granting defendants' motion in part and denying it in part. Familiarity with that Report and Recommendation is assumed. On September 8, 2003 defendants filed objections to the Report and Recommendation only with respect to defendants Graceffo, Matthews, and Keane.

We concur with Judge Pitman's decision to dismiss plaintiff's claims for: (1) injunctive relief ordering a liver biopsy and evaluation by a liver specialist; (2) injunctive relief ordering a revision of the DOCS Guidelines; and (3) monetary damages against all of the individual defendants in their official capacity. n1 We also concur with Judge Pitman's decision to deny defendants' motion to dismiss plaintiff's claim for monetary damages against Drs. Graceffo, Makram, Lancellotti, and Milicevic in their individual capacities. n2 We disagree, however, with Judge Pitman's decision to sustain plaintiff's monetary damages claims against defendants Wright n3 and Keane.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 To avoid confusion, we note that there appears to be a typographical error on page 20 of Judge Pitman's Opinion. The sentence which currently reads, "However, plaintiff's claims against the individual defendants in their personal capacity are barred by *Eleventh Amendment* immunity" should instead read as follows: "However, [HN1] plaintiff's claims against the individual defendants in their personal capacity are not barred by *Eleventh Amendment* immunity."

[*3]

n2 While we ultimately concur with Judge Pitman's decision to deny defendants' motion to dismiss plaintiff's deliberate indifference claims on the theory that "certain instances of medical malpractice may rise to the level of deliberate indifference", *Hathaway v. Coughlin, 99 F.3d 550, 553 (1996)* we note that [HN2] in order to survive, plaintiff's deliberate indifference claims against each of these defendants must demonstrate a level of "culpable recklessness" beyond ordinary negligence. *Id.* See also *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285* & n.14, *429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285, (1976)*; ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the *Eighth Amendment.* Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.") Thus, while it would be inappropriate to dismiss plaintiff's claims on the merits at this stage, going forward, plaintiff has a heavy burden in order to sustain his claims against these defendants.

[*4]

n3 Defendants have not specifically objected to Judge Pitman's denial of their motion to dismiss plaintiff's claims against defendant Wright.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

I. Defendant Keane

While Judge Pitman found that plaintiff sufficiently alleged the requisite "personal involvement" we find that plaintiff's claim against defendant Keane should be dismissed for failure to state a claim. Plaintiff's claim against Keane stems entirely from Keane's review and denial of plaintiff's grievance. To the extent that plaintiff argues that Keane ignored the allegations within his grievance of deliberate indifference by medical personnel at facilities prior to his transfer to the Woodbourne facility, we fail to see how Keane could have responded to and/or remedied these allegations within the framework of the grievance process. n4 Moreover, as to Keane's determination that "plaintiff must use the sick call procedure and obtain a doctor's appointment if he wishes to receive treatment", Plaintiff's Complaint, Ex. B, Inmate Grievance Response, we note that this determination was unanimously upheld by the Central Office Review [*5] Committee "upon a full hearing of the facts and circumstances ... and upon recommendation of the Division of Health Services." Id., Inmate Grievance Program Central Office Review Committee Denial of Grievance.  [HN3] It is well established that supervisory officials are "generally entitled to delegate medical responsibility to facility medical staffs and are entitled to rely on the opinion of medical staff concerning the proper course of treatment." *Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 183 (N.D.N.Y. 1996). In the instant case, plaintiff has not suggested that defendant Keane, as part of his investigation of plaintiff's grievance, failed to appropriately rely on the opinion of medical staff in coming to his determination, nor has he alleged that defendant Keane was deliberate or malicious in his ultimate denial of the grievance. Accordingly, we find that plaintiff has failed to state a claim against Keane and dismiss plaintiff's claim against him in his individual capacity.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n4 Plaintiff filed his grievance while at the Woodbourne facility. The evidence indicates that Keane did not "ignore" plaintiff's allegations of past deliberate indifference but rather notified plaintiff that his request for a monetary judgment "is not accepted and is not a part of the grievance mechanism." This determination was subsequently affirmed on review by the Central Office Review Committee.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*6]

II. Defendant Wright

Plaintiff's claims against defendant Wright, the Associate Commissioner Chief Medical Officer of DOCS, stem from his allegations that he was injured as a result of Wright's implementation of Guidelines for the diagnosis and treatment of Hepatitis C. However, as plaintiff does not allege that he was ever personally treated by Dr. Wright, and as we concur with Judge Pitman's determination that plaintiff lacks standing to challenge the Guidelines' special requirements for the treatment of Hepatitis C, we find that plaintiff cannot sustain a claim against Wright. n5 Accordingly, we hold that defendant's claim for monetary damages against this defendant is dismissed.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n5 As an aside, we note that the portions of the Guidelines challenged by plaintiff, namely that the inmate must successfully complete an ASAT program or at least be concurrently enrolled in such a program and that there must be an anticipated incarceration period for the inmate of at least 12 months appear to be highly rational in light of the fact that severe side effects, including death, may result from treatment of the patient with interferon-alpha-2b or 2a combined with ribavirin for 6-12 months, and that active substance abuse, including alcohol abuse, can cause life threatening consequences to a patient following the treatment regimen.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*7]

III. Defendants Graceffo and Matthews

With respect to Graceffo and Matthews, despite defendants' objections, we continue to concur with Judge Pitman's decision not to dismiss plaintiff's claims against these defendants. Drs. Graceffo and Matthews treated plaintiff between the years 1990 and 1992. As Judge Pitman indicated in footnote 1 of his Report and Recommendation, there exists a discrepancy with regard to the date on which plaintiff alleges his deliberate indifference claim commenced. Clearly relevant to a proper analysis of the date on which a deliberate indifference claim accrued is the time frame in which the medical community acquired sufficient knowledge of Hepatitis C so that a failure to diagnose the condition might possibly be an *Eighth Amendment* violation. Neither party has submitted admissible evidence on the precise time frame in which the medical community acquired its knowledge of Hepatitis C. n6 While defendants may ultimately prevail at the summary judgment stage if the facts show that Drs. Graceffo and Matthews could not, based on the knowledge available to the medical community generally, have knowingly disregarded an excessive risk to plaintiff's[*8] health or safety during the period of 1990-1992, we find that it is not appropriate at this time to grant defendant's motion to dismiss plaintiff's claim against these defendants on the pleadings alone.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n6 While plaintiff does alleges a time frame in which the medical community became aware of Hepatitis C, he provides no support for this assertion nor does he do so with any degree of precision. See Compl. P 19 ("The beginning of defendants deliberate indifference started in 1992-93 when the medical community became aware of the Hep. C virus ....")

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

CONCLUSION

For the reasons set forth in this Opinion and in Judge Pitman's Report and Recommendation, we dismiss all claims against the defendants with the exception of plaintiff's claims for monetary damages against Drs. Graceffo, Makram, Lancellotti, and Milicevic in their individual capacities. Having resolved this initial motion, we note that it would assist the resolution of this case, perhaps even by summary judgment, if plaintiff's entire medical[*9] record was made available.

IT IS SO ORDERED.

DATED: New York, New York

September 11, 2003

NAOMI REICE BUCHWALD

UNITED STATES DISTRICT JUDGE

RICHARD LANDOW, as next friend of KAYLA LANDOW, asrepresentative of a class of similarly situated persons, Plaintiff, -vs- SCHOOLBOARD OF BREVARD COUNTY, Defendant.
Case No. 6:97-CIV-1463-ORL-22KRS

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OFFLORIDA, ORLANDO DIVISION

2001 U.S. Dist. LEXIS 7155

March 7, 2001, Decided

CASE SUMMARY:

PROCEDURAL POSTURE: The court declared that defendant school board violated Title IX of the Education Amendments of 1972, *20 U.S.C.S. § 1681,* and the Florida Educational Equity Act, Fla. Stat. ch. 228.2001, by virtue of disparities between the boys' baseball and girls' softball programs at two high schools. As a result, plaintiff class was entitled to injunctive relief. The parties were directed to submit a joint plan for remedying the inequalities.

OVERVIEW: The parties submitted a stipulated joint plan. Under the plan, new softball fields were to be constructed at the two high schools. The parties represented that these playing fields would be dedicated for the exclusive use of the girls' softball teams, and that the fields, and their associated amenities, would be substantially equivalent to those provided to the boys' baseball teams at those high schools. Defendant had already approved the funding for the construction of the two new softball fields. The court determined that the proposal outlined in the stipulated joint plan constituted an adequate and effective remedy for the gender equity violations identified in its prior order.

OUTCOME: The stipulated joint plan was approved.

CORE TERMS: softball, girls', team, baseball, built, Florida Educational Equity Act, disparities, school year, refrigerated, constructed, scoreboard, electronic, bleachers, commence, fencing, diamond, seating, batting, playing, warmup, dugouts, water, cage

COUNSEL: [*1] For RICHARD LANDOW, plaintiff: Mark E. Tietig, Lisa Kuhlman Tietig, Tietig & Tietig, Merritt Island, FL.

For SCHOOL BOARD OF BREVARD COUNTY, defendant: Michael H. Bowling, Michael M. Bell, Bell, Leeper & Roper, P.A., Orlando, FL.

JUDGES: ANNE C. CONWAY, UNITED STATES DISTRICT JUDGE.

OPINIONBY: ANNE C. CONWAY

OPINION: FINAL ORDER AND PERMANENT INJUNCTION

On December 15, 2000, following a bench trial, the Court issued a Memorandum Decision and Order (Doc. 171) declaring that the School Board of Brevard County had violated Title IX, *20 U.S.C. § 1681,* and the Florida Educational Equity Act, *Fla. Stat. § 228.2001*, by virtue of disparities between the boys' baseball and girls' softball programs at Astronaut and Titusville High Schools. As a result, the Court determined that the Plaintiff class was entitled to injunctive relief. Accordingly, the Court directed the parties to submit a joint plan for remedying the inequalities identified in the memorandum decision, or, if they could not reach agreement, to file separate proposals.

In accordance with the Court's direction, on March 5, 2001, the parties submitted a Stipulated Joint Plan (Doc. 173). Under the Plan, new softball [*2]fields will be constructed at Astronaut and Titusville High Schools. The parties represent that these playing fields will be dedicated for the exclusive use of the girls' softball teams, and that the fields, "and their associated amenities, will be substantially equivalent to those provided to the boys' baseball teams at those high schools." Doc. 173 at 3. Counsel state that the School Board has already approved the funding for the construction of the two new softball fields, and that the School Board can begin construction in March 2001 so that the fields will be ready for play by the summer of 2001.

The Court determines that the proposal outlined in the Stipulated Joint Plan constitutes an adequate and effective remedy for the gender equity violations identified in the December 15th Memorandum Decision and Order. The Court commends counsel and the parties for submitting an agreed plan.

Based on the foregoing, it is ORDERED as follows:

1. The Stipulated Joint Plan (Doc. 173) is APPROVED.

2. Not later than March 31, 2001, the School Board shall begin demolishing the Riverview Elementary facility at Titusville High School, and shall thereafter promptly commence construction of a[*3] girls' softball field at Titusville High School on the Riverview site. In accordance with the School Board's stated goal of having the new field built in time for the girls' softball team to practice on it before the playing season begins, the School Board shall ensure that construction is completed and the field is ready for play by the first day of classes in the 2001-2002 school year. As outlined in the Stipulated Joint Plan, "the field will have appropriate fencing, bleachers providing seating for 60 on each side of the diamond, dugouts, with refrigerated water, an electronic scoreboard, a batting cage, and a pitching warmup area." Doc. 173 at 2. Additionally, the new softball field "will be lighted and a concession/restroom/pressbox/storage facility will also be constructed." Id.

3. Not later than March 31, 2001, the School Board shall commence construction of a girls' softball field at Astronaut High School. The softball field will be built next to the existing baseball field. The School Board shall ensure that construction is completed and the new field is ready for play by the first day of classes in the 2001-2002 school year. As outlined in the Stipulated Joint Plan, [*4] the field will have a backstop and 6' fencing, "bleachers seating 60 on both sides of the diamond, dugouts with refrigerated water for each team, an electronic scoreboard, a batting cage, a warmup area, and an 8x12 storage shed." Doc. 173 at 2-3.

4. Not later than March 30, 2001, the School Board shall notify the student bodies of Astronaut and Titusville High Schools that the two new softball fields are being built.

5. Henceforth, the School Board shall ensure that there are no disparities that would violate Title IX and the Florida Educational Equity Act in its girls' softball and boys' baseball programs throughout Brevard County.

6. The Clerk shall close this case.

DONE and ORDERED in Orlando, Florida this 7th day of March, 2001.

ANNE C. CONWAY

UNITED STATES DISTRICT JUDGE