EDWARD MCKENNA, Plaintiff, - against - LESTER K. WRIGHT, Associate Commissioner/Chief Medical Officer DOCS, JOHN P. KEANE, Superintendant, Woodbourne Correctional Fac., T.J. MILLER, Deputy Supt. for Admin., Woodbourne Corr., Facility, FRANK LANCELLOTTI, Physician, MERVAT MAKRAM, Physician, Health Care Unit, Woodbourne Correctional Facility; AND ALL UNNAMED PERSONS, INDIVIDUALS, OFFICERS, CIVILIANS, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES, Defendants.

01 Civ. 6571 (WK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2002 U.S. Dist. LEXIS 3489

March 4, 2002, Decided

DISPOSITION: [*1] Plaintiff's motion for a preliminary injunction DENIED.

CORE TERMS: hepatitis, inmate, Eighth Amendment, cirrhosis, deliberate indifference, equal protection, retaliation, preliminary injunction, medical treatment, irreparable harm, first, medical care, therapy, liver, equal protection claim, medical condition, decompensated, succeeding, discriminatory, follow-up, medical judgment, cause of action, consent decree, specialist, diagnosis, pain, deprivation, prisoner, substantial likelihood, constitutional rights

COUNSEL: Edward McKenna, Plaintiff, Pro se, Woodbourne, NY.

For Defendants: John E. Knudsen, Assistant Attorney General, State of New York, Office of the Attorney General, New York, NY.

JUDGES: WHITMAN KNAPP, SENIOR U.S.D.J.

OPINIONBY: WHITMAN KNAPP

OPINION: MEMORANDUM & ORDER

WHITMAN KNAPP, SENIOR DISTRICT JUDGE

   On July 17, 2001, Plaintiff Edward McKenna ("Plaintiff"), proceeding pro se, filed a Complaint against Defendants Lester Wright, John Keane, T.J. Miller, Frank Lancellotti, and Mervat Makram ("Defendants") alleging violations of his rights under the Eighth and Fourteenth Amendments to the Constitution. Plaintiff's action is predicated upon Defendants' alleged failure to provide him with adequate medical treatment after he was diagnosed with Hepatitis C in 1999. He asserts that Defendants either failed to treat or delayed the treatment of

his Hepatitis C between 1999 and 2000 and that he consequently developed cirrhosis of the liver. He also alleges that Defendants continue to provide him with inadequate medical care even to this day.

Plaintiff now moves us for a preliminary injunction which would (a) require Defendants [*2] to arrange for him to receive an examination and a plan of treatment for his Hepatitis C condition from a qualified specialist and (b) require Defendants to carry out any plan of treatment recommended by that specialist. For the reasons set forth below, we deny Plaintiff's motion for a preliminary injunction.

BACKGROUND

Plaintiff is an inmate at the Woodbourne Correctional Facility ("Woodbourne"). He has been consulting with Woodbourne's physicians and receiving treatment from them for various ailments and pains since 1998. On July 1, 1999, he was allegedly informed that he had some form of Hepatitis by Dr. Frank Lancellotti ("Dr. Lancellotti"). On July 19, 1999, following a blood test, Plaintiff was further informed that he had Hepatitis C by Dr. Mervat Makram ("Dr. Makram"). n1 Both Dr. Lancellotti and Dr. Makram are physicians working at Woodbourne.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 Hepatitis C is a condition which results in the inflammation of the liver. See STEDMAN'S MEDICAL DICTIONARY 808 (27th Ed. 2000). The ensuing liver cell damage causes, inter alia, the retention of bilirubin (a type of bile pigment) as well as a rise in the level of particular enzymes. See id. at 202, 808. Of the various forms of hepatitis, Hepatitis C has the highest likelihood of becoming a chronic condition and at least 20% of Hepatitis C patients eventually develop cirrhosis. See THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 382-383 (17th ed. 1999).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -
[*3]

Although there is some dispute as to when Dr. Lancellotti subsequently discussed Plaintiff's condition with him, Plaintiff alleges that he was again diagnosed with Hepatitis C on September 16, 1999 and that he was asked whether or not he wanted treatment for his condition. Plaintiff purportedly requested treatment for his Hepatitis C condition at that time because he had been experiencing stomach pain. n2 See Compl. P 22.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 Although Plaintiff claims that Dr. Lancellotti informed him of this diagnosis on September 16, 1999, the Department of Correctional Services' ("DOCS") Ambulatory Health Record entry for September 16 (which Plaintiff attached to his Complaint, along with numerous other exhibits) does not show any such discussion. See Compl., Exh. G at 6. Rather, the Ambulatory Health Record

entry for February 24, 2000 evidences a somewhat similar discussion. See Compl., Exh. E at 6. The February 24th entry states that Plaintiff's release was set for September 28, 2000, and that Plaintiff did not qualify for Hepatitis C treatment. See id. The February 24th entry also states that, regardless of his release date, Plaintiff did not want treatment for his Hepatitis C condition. See id. Plaintiff disputes the February 24th entry in virtually its entirety. He contends that he had this discussion with Dr. Lancellotti on September 16, 1999, and that he did request treatment for his Hepatitis C condition on that September date. He asserts that his records have been improperly altered and has filed various grievances regarding these discrepancies.

- - - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -
[*4]

In responding to this request for treatment, Dr. Lancellotti allegedly inquired as to when Plaintiff was set to appear before the Parole Board. When Plaintiff explained that he would appear before the Board around September 2000, Dr. Lancellotti purportedly informed him that, pursuant to medical protocols, he could not receive treatment for Hepatitis C.

More specifically, Dr. Lancellotti allegedly refused to provide Plaintiff with medical treatment for his Hepatitis C condition in accordance with the Department of Correctional Services' ("DOCS") Hepatitis C Primary Care Practice Guideline ("Hepatitis C Guideline"). DOCS' Hepatitis C Guideline, developed by various physicians and nurses and revised on December 17, 1999, and December 13, 2000, outlines, inter alia, a number of criteria which should be considered by physicians in determining whether Hepatitis C treatment is appropriate for an inmate.

According to the Hepatitis C Guideline which was supposedly in effect at the time Plaintiff was diagnosed with Hepatitis C, one such criterion was whether or not it was anticipated that the inmate would remain incarcerated for at least 12 months from the time treatment would begin.   [*5]   See Compl., Exh. A at 4. Where an inmate's remaining period of incarceration was anticipated to be less than 12 months and the inmate would therefore be unable to "predictably complete a course of treatment," the relevant Hepatitis C Guideline criterion provided that he "should receive a baseline evaluation and be referred to medical follow-up and treatment upon release." Id. Plaintiff asserts that Dr. Lancellotti refused to provide him with medical treatment for his Hepatitis C condition because he was eligible for parole release in less than one year from the time of their alleged discussion about treatment. n3

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3 According to the more recent Hepatitis C Guideline, the relevant criterion is now whether or not Plaintiff's anticipated period of incarceration is at least 15 months (which includes time for a 12 month course of treatment). See Wright Aff., Exh. A at 4.

- - - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

On August 29, 2000, Plaintiff appeared before the Parole Board. The Board denied his release and informed him that he could return in  [*6]   two years. Thereafter, although Woodbourne's physicians had been treating Plaintiff's general medical condition and stomach pains in the interim between September 1999 and December 2000 (albeit not to Plaintiff's satisfaction), Plaintiff met with Dr. Lancellotti on December 11, 2000 and specifically discussed his Hepatitis C condition with him. At that time, Plaintiff purportedly requested treatment for his Hepatitis C condition because of his continuing stomach pains and breathing problems. See Compl. P 25.

In response to Plaintiff's request, Dr. Lancellotti allegedly informed Plaintiff that he had to attend an Alcohol and Substance Abuse Treatment ("ASAT") program before he could receive any such treatment. One of the criterion outlined in the Hepatitis C Guideline for determining whether Hepatitis C treatment is appropriate is whether or not the inmate had successfully completed an ASAT program. See Compl., Exh. A at 4; Wright Aff., Exh. A at 4. Plaintiff contends that he is unemployed at the prison because he holds the status of being medically unassignable to work and suggests that this status somehow makes him ineligible to attend an ASAT program. See Compl. P 25;  [*7]   Pl.'s Reply Brief at 6 n.7.

Despite his alleged discussion with Plaintiff about the ASAT program, Dr. Lancellotti notified Plaintiff that he would be sent to the Albany Medical Center for the very stomach pains which had originally led him to request treatment for his Hepatitis C condition in September 1999 and December 2000. On January 10, 2001, Plaintiff traveled to the Albany Medical Center for a computerized axial tomography scan. When Plaintiff subsequently inquired as to the results of the CAT scan, Dr. Lancellotti notified him that he had been diagnosed with cirrhosis of the liver. n4 After being informed of this diagnosis, Plaintiff allegedly told Dr. Lancellotti that he would never have developed cirrhosis had he been provided treatment for his Hepatitis C at an earlier date. n5

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n4 Cirrhosis is a liver disease characterized by, inter alia, diffuse damage to liver cells and interference with blood flow in the liver. See STEDMAN'S MEDICAL DICTIONARY 355 (27th ed. 2000). The condition is the end stage of many forms of liver injury. See THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 373 (17th ed. 1999). Cirrhosis results in a number of major complications, including portal hypertension with variceal bleeding, ascites, or liver failure leading to renal failure and coma. See id.  [*8]

n5 Plaintiff also alleges that DOCS' medical records had shown for years that his liver enzymes were very high. He argues that this fact alone would have alerted any competent physician of the need for follow-up tests for Hepatitis A, B, and C. Plaintiff asserts that had he been diagnosed with Hepatitis C in 1997 or 1998 on the basis of these medical records and received timely treatment, he would never have developed cirrhosis of the liver.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

On February 2, 2001, Dr. Lancellotti notified Plaintiff that he would be referring him to an outside specialist. Accordingly, on March 19, 2001, Plaintiff consulted with Dr. Benedict Maliakkal ("Dr. Maliakkal") at the Coxsackle Regional Medical Unit regarding the stomach pain which had originally led him to request treatment for his Hepatitis C condition. Following this consultation, Dr. Maliakkal diagnosed him with cirrhosis secondary to Hepatitis C. On April 23, 2001, Dr. Maliakkal operated on Plaintiff in order to, in part, further evaluate his medical condition. After this operation, Dr. Maliakkal issued a report in which he recommended that Plaintiff [*9] (1) should continue on his current medication ("Inderal with or without ISMO") and (2) follow-up with him to discuss the management of his Hepatitis C condition through treatment with such therapies as Interferon and Ribavirin.

Plaintiff was never allowed to follow-up with Dr. Maliakkal regarding the possibility of treatment with Interferon and Ribavirin. Although Dr. Makram apparently requested such a follow-up consultation, Plaintiff was subsequently diagnosed with "decompensated" liver cirrhosis. n6 As a result, on June 1 and June 7, 2001, Dr. Lester Wright ("Dr. Wright"), the Deputy Commissioner and Chief Medical Officer of DOCS, as well as Dr. Robert Hentschel ("Dr. Hentschel"), decided that the treatment of Plaintiff's Hepatitis C with such therapies as Interferon and Ribavirin would be inappropriate because, according to both the Hepatitis C Guideline and medical literature on the subject, an individual with decompensated cirrhosis should not receive treatment for Hepatitis C with these therapies as such treatment would be potentially life threatening.

- - - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n6 Decompensated cirrhosis is a type of cirrhosis accompanied, inter alia, by ascites. See DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 334 (28th ed.1994). In other words, it results, among other things, in the accumulation of serous fluid in the peritoneal cavity. See STEDMAN'S MEDICAL DICTIONARY 154 (27th ed. 2000). Ascites usually appear in advanced stages of cirrhosis. See THE SLOANE-DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY 146 (1987). The prognosis for patients with cirrhosis is usually poor if major complications such as ascites are present. See THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 374 (17th ed. 1999). According to a statement issued by the National Institutes of Health in 1997 on the management of Hepatitis C, patients with decompensated cirrhosis should not be treated with currently available therapy for Hepatitis C. See Wright Aff., Exh. B at 2.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -
[*10]

Having determined that treating Plaintiff's Hepatitis C with Interferon and Ribavirin would be inappropriate given the threat it would pose to his health in light of his related decompensated liver cirrhosis, Dr. Hentschel and Dr. Wright

denied Plaintiff a follow-up consultation with Dr. Maliakkal to discuss treatment with such therapies. On July 25, 2001, Dr. Makram explained this decision to Plaintiff. On August 3 and October 5, 2001, the decision was further explained to Plaintiff by Dr. Wright.

After unsuccessfully seeking to obtain both his desired treatment as well as redress for Defendants' alleged failure to provide him with adequate medical care through internal grievance procedures, Plaintiff brought this action in July 2001 against Defendants under [42 U.S.C. a 1983](#) for the alleged deprivation of his constitutional rights under the Eighth and Fourteenth Amendments to the Constitution. Plaintiff now moves for a preliminary injunction pursuant to [Federal Rule of Civil Procedure 65(a)](#). Having never been allowed a follow-up examination with Dr. Maliakkal to discuss the treatment of his Hepatitis C with Interferon and Ribavirin, Plaintiff asks us to order [*11]  Defendants to (a) arrange for Plaintiff to receive an examination and plan of treatment from Dr. Maliakkal and (b) carry out whatever plan of treatment Dr. Maliakkal may eventually recommend.

DISCUSSION

A preliminary injunction constitutes an extraordinary remedy which should not be routinely granted. [Medical Society of the State of New York v. Toia 560F.2d 535, 538 (2d Cir. 1977)](#) A party seeking a preliminary injunction must ordinarily "'establish that it will suffer irreparable harm in the absence of an injunction and demonstrate either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.'" [Espinal v. Goord 180 F. Supp. 2d 532, 536 (S.D.N.Y.2002).](#)

However, a heightened standard must be applied where, as here, the injunction which Plaintiff seeks is mandatory in nature. See [Norcom Electronics Corp. v. Cim USA, Inc. 104 F. Supp. 2d 198, 207 (S.D.N.Y. 2000).](#) A mandatory injunction is one which would "alter the status quo by commanding some positive act." [Tom Doherty Associates, Inc. v. Saban Entertainment, Inc. 60 F.3d 27, 34 (2d Cir. 1995)](#)  [*12]  In this instance, Plaintiff asks us to order Defendants to provide him with a treatment which the defendant physicians have already rejected on the basis of their medical judgment. Since such an injunction would alter the current status quo by commanding a positive act, it is a "mandatory" injunction and therefore should only issue "upon a clear showing that the moving party is entitled to the relief requested" or "where extreme or very serious damage will result from a denial of preliminary relief." Id. In other words, under this more stringent standard for mandatory injunctions, Plaintiff must demonstrate that he has a clear or substantial likelihood of success on the merits. See [Jolly v. Coughlin 76 F.3d 468, 473-474 (2d Cir. 1996)](#); [S.E.C. v. Unifund SAL 910 F.2d 1028, 1040 (2d Cir.1990)](#); [Espinal, 180 F. Supp. 2d at 536](#); [Padberg v. McGrath-McKechnie 108 F. Supp. 2d 177, 183 (E.D.N.Y. 2000).](#)

I. Irreparable Harm

Plaintiff asserts that he has been deprived of his Eighth and Fourteenth Amendment rights through Defendants' deliberate indifference in failing to provide him with adequate medical treatment. [*13] Generally, an alleged violation of constitutional rights, such as those encompassed by the Eighth Amendment, creates a presumption of irreparable harm. See Jolly, 76 F.3d at 482. See also Mitchell v. Cuomo 748 F.2d 804, 806 (2d Cir. 1984) (holding that where an alleged deprivation of a constitutional right is involved, no further showing of irreparable harm is necessary); Zolnowski v. County of Erie 944 F. Supp. 1096, 1109 (W.D.N.Y. 1996) (holding that a presumption of irreparable harm was established where Eighth Amendment rights were allegedly violated).

However, since the movant must show that the alleged irreparable harm is imminent, and not remote or speculative, we cannot rest a finding of irreparable harm solely on past conduct, even where a plaintiff has alleged that such conduct violated the Eighth Amendment. Garcia v. Arevalo 1994 U.S. Dist. LEXIS 8719, 1994 WL 383238 (S.D.N.Y. June 27, 1994) *2. See also Flack v. Friends of Queen Catherine Inc. 139 F. Supp. 2d 526, 540 (S.D.N.Y. 2001) (holding that a presumption created in the context of a preliminary injunction only applies to prospective violations of the law). [*14] Here, Plaintiff's action is premised on two separate sets of allegations. On the one hand, Plaintiff alleges that Defendants either delayed or altogether failed in providing him with treatment for his Hepatitis C condition between 1999 and 2000. However, Plaintiff acknowledges that, at the very least, Defendants began providing him with some form of care around December 2000 for the stomach pains which had originally led him to request treatment for his Hepatitis C condition. Despite this acknowledgment, Plaintiff asserts that even the treatment he has since received violates his constitutional rights.

While Plaintiff's first set of allegations with respect to Defendants' past misconduct between 1999 and 2000 cannot support a finding of irreparable harm (and therefore does not warrant injunctive relief), his latter set of allegations regarding his continued deprivation of rights under the Eighth Amendment stemming from Defendants' ongoing medical treatment of his medical condition raises a presumption of irreparable harm. n7 We therefore find that Plaintiff's latter set of allegations satisfies his burden to demonstrate irreparable harm.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n7 To the extent that Plaintiff also alleges that any failure to diagnose him with Hepatitis C in 1997 and 1998 violated his constitutional rights, such past alleged misconduct would similarly fail to support the requisite showing of irreparable harm necessary to warrant injunctive relief on the basis of these allegations.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*15]

II. Likelihood Of Success On The Merits

Since Plaintiff seeks a mandatory injunction, he must demonstrate that he has a clear or substantial likelihood of success on the merits of his action. See Tom Doherty Associates, Inc., 60 F.3d at 34; Jolly, 76 F.3d at 473-474; Unifund SAL, 910 F.2d at 1028; Espinal, 180 F. Supp. 2d at 536; Padberg, 108 F. Supp. 2d at 183. As Plaintiff cannot show irreparable harm with respect to his allegations relating to Defendants' past conduct between 1999 and 2000 and a preliminary injunction would therefore be unwarranted on the basis of such assertions, we do not address whether Plaintiff has any likelihood of succeeding on the merits of those allegations which relate to past misconduct. Instead, we focus on the set of allegations which have raised a presumption of irreparable harm in this instance. Therefore, we must determine whether Plaintiff has demonstrated a clear or substantial likelihood of succeeding on the merits of his action based on his allegations with respect to his ongoing medical treatment. With these considerations in mind, we turn to the merits [*16] of Plaintiff's two causes of action.

A. Plaintiff's First Cause Of Action

Plaintiff brought his action pursuant to 42 U.S.C. @ 1983. "In an action brought under 42 U.S.C. @ 1983, the plaintiff must establish that a person acting under color of state law deprived him or her of a federal constitutional right." Vento v. Lord 1997 U.S. Dist. LEXIS 11022, 1997 WL 431140 (S.D.N.Y. July 31, 1997) *3. "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James 13 F.3d 515, 519 (2d Cir.1993) cert. denied 512 U.S. 1240, 129 L. Ed. 2d 867, 114 S. Ct. 2749 (1994) Here, Plaintiff asserts that he is being deprived of his constitutional rights because Defendants are failing to provide him with adequate medical care.

"A claim under @ 1983 for inadequate medical treatment is governed by the standards of the Eighth and Fourteenth Amendments to the Constitution." Wise v. Halko 1997 U.S. Dist. LEXIS 13903, 1997 WL 570544 (S.D.N.Y. Sept. 12, 1997) *2. In order to establish an Eighth Amendment claim arising out of inadequate [*17] medical care, a prisoner must prove "deliberate indifference to serious medical needs." Estelle v. Gamble 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976). n8, See also Chance v. Armstrong 143 F.3d 698, 702 (2d Cir. 1998).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n8 Although a state prisoner's claim for inadequate medical treatment primarily involves violations of the Eighth Amendment's prohibition on cruel and unusual punishment, the Fourteenth Amendment is also implicated because the prohibition against such conduct is made applicable to the states by the Fourteenth Amendment. See Estelle, 429 U.S. at 101.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

"The standard of deliberate indifference includes both subjective and objective components." Chance, 143 F.3d at 702. "First, the alleged medical need must be, in objective terms, 'sufficiently serious.'" Davidson v. Scully 155 F. Supp. 2d 77, 2001 U.S. Dist. LEXIS 12690, 2001 WL 963965 (S.D.N.Y. 2001) *2. "Second, to satisfy the subjective prong, the defendant mut act with 'a sufficiently [*18] culpable state of mind' that amounts to 'deliberate indifference' to the serious medical need." 155 F. Supp. 2d 77, [WL] at *3. See also Gill v. Jones, 2001 U.S. Dist. LEXIS 17674, 2001 WL 1346012 (S.D.N.Y. Nov. 1, 2001) *7 ("This is a two prong test requiring both a sufficiently serious medical condition as well as deliberate indifference by the Defendants").

1. Serious Medical Condition

A condition will be considered sufficiently serious under the Eighth Amendment if it is a "'condition of urgency, one that may produce death, degeneration, or extreme pain.'" See Morales v. Mackalm 278 F.3d 126, 132 (2d Cir. 2002). Given the nature of Plaintiff's Hepatitis C symptoms, as well as the defendant physicians' determination that his condition has reached an advanced stage, see Pl.'s Aff. in supp. of Mot. for Prelim. Inj., Exh. at 19, Plaintiff has established a sufficiently serious medical condition under the Eighth Amendment. See Campbell v. Young (W.D. Va. March 22, 2001) 2001 U.S. Dist. LEXIS 23065, 2001 WL 418725, *3 ("Here, there is no question that Campbell suffers from a serious medical condition, namely, Hepatitis C and the associated pain and symptoms"); Carbonell v. Goord 2000 U.S. Dist. LEXIS 8227, 2000 WL 760751 (S.D.N.Y. June 13, 2000) [*19] *9 (holding that Hepatitis C can constitute an objectively serious condition).

2. Deliberate Indifference

"Deliberate indifference 'requires more than negligence.'" Veloz v. NewYork 35 F. Supp. 2d 305, 311 (S.D.N.Y. 1999). However, "while 'mere medical malpractice' is not tantamount to deliberate indifference, certain instances of medical malpractice may rise to the level of deliberate indifference; namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" Hathaway v. Coughlin 99 F.3d 550, 553 (2d Cir. 1996) In essence, "a prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmatehealth or safety.'" Hathaway v. Coughlin 37 F.3d 63, 66 (2d Cir. 1994) cert. denied 513 U.S. 1154 (1995)

Although Plaintiff has shown that he suffers from a sufficiently serious medical condition, he cannot demonstrate that he has a clear or substantial likelihood of succeeding on the merits of his Eighth Amendment claim [*20] because he is unable to show that Defendants acted with the requisite deliberate indifference with respect to his ongoing medical treatment. Instead of illustrating that Defendants acted with deliberate indifference to his serious medical condition, Plaintiff's moving papers and accompanying

exhibits, as well as Defendants' opposition papers and affidavits, show that the defendant physicians provided adequate medical care in light of the difficult circumstances presented by Plaintiff's related Hepatitis C and decompensated cirrhosis conditions.

Rather than acting with deliberate indifference and turning a blind eye to Plaintiff's Hepatitis C condition, the physicians examined his medical condition and determined, pursuant to their medical judgment, that treating Plaintiff's Hepatitis C with such therapies as Interferon and Ribavirin would endanger Plaintiff's health rather than improve it given the advanced state of his cirrhosis. In essence, rather than knowing of and disregarding an excessive risk to Plaintiff's health and safety in refusing to treat him with Interferon and Ribavirin, the physicians acted pursuant to their medical judgment (as based on the Hepatitis C Guideline [*21] and current medical literature on the relevant subject matter) to protect Plaintiff's health. Such conduct does not constitute deliberate indifference. See Hassan v. Khanyile 1998 U.S. Dist. LEXIS 7636, 1998 WL 264834 (S.D.N.Y. May 21, 1998) *2 (denying a preliminary injunction where the defendant physician acted in the plaintiff's best medical interests in discontinuing the treatment of his Hepatitis C with Interferon); Johnson v. Raba 1997 U.S. Dist. LEXIS 14827, 1997 WL 610403 (N.D. Ill. Sept. 24, 1997) *4 (holding that the defendant physician did not act with deliberate indifference where he refused to treat the plaintiff with the semiexperimental drug Interferon); Dias v. Vose 865 F. Supp. 53, 58 (D. Mass. 1994) aff'd (1st Cir. 1995) 50 F.3d 1 (holding that physician's refusal to authorize treatment with the highly experimental drug Interferon did not rise to the level of an Eighth Amendment violation). See also Ortiz v . Makram 2000 U.S. Dist. LEXIS 18428, 2000 WL 1876667 (S.D.N.Y. Dec. 21, 2000) *7 (holding that Dr. Lancellotti's treatment decisions did not evidence deliberate indifference where he did not disregard a risk to plaintiff).

Moreover, although Plaintiff disagrees [*22] with the physicians' treatment decisions as well as their decompensated cirrhosis diagnosis and claims that he is entitled to consult with a specialist regarding a different diagnosis and treatment plan, such disagreements and allegations do not amount to Eighth Amendment violations. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." Chance,1 43 F.3d at 702. Indeed, "there is no right to the treatment of one's choice." Wise, 1997 U.S. Dist. LEXIS 13903, 1997 WL 570544 at *3. Nor does a prison er have a categorical right to be treated by a specialist. Johnson, 1997 U. S.Dist. LEXIS 14827, 1997 WL 610403 at *4. Hence, "disagreements over medicatio ns,diagnostic techniques..., forms of treatment, or the need for specialists or thetiming of their intervention are not adequate grounds for a Section 1983 clai m. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." Sonds v. St. Barnaba s Hospital Correctional Health Services 151 F. Supp. 2d 303, 312 (S.D.N.Y. May 21,2001). See also Hodge v. Coughlin 1994 U.S. Dist. LEXIS 13409, 1994 WL 519902 (S.D.N.Y. Sept. 22, 1994) [*23] *11, aff'd (2d Cir. 1995) 52 F.3d 310 (holding that "an allegation of 'misdiagnosis or faulty [medical]

judgment'" does not state a claim under the Eighth Amendment).

   Accordingly, while Plaintiff may have engaged in his own medical research, determined for himself that a different course of treatment would be appropriate, and may now contend that the defendant physicians misdiagnosed the nature of his cirrhosis, that their treatment decision with respect to his Hepatitis C is therefore incorrect, and that the defendant physicians should have permitted him a follow-up consultation with a specialist, these allegations do not rise to the level of Eighth Amendment violations. See   McKinnis v.W illiams 2001 U.S. Dist. LEXIS 10979, 2001 WL 873078 (S.D.N.Y. Aug. 1, 2001) *4 (holding that, to the extent the plaintiff contested the diagnosis and treatment he received, such allegations were insufficient to state a valid claim of medical mistreatment under the Eighth Amendment);   Brown v. Selwin 1999 U.S. Dist. LEXIS 14868, 1999 WL 756404 (S.D.N.Y. Sept. 24, 1999) *6-*7 (holding that plaintiff's disagreement with defendant's medical judgment with respect to treatment and diagnosis were insufficient  [*24]   to constitute an Eighth 961896, *4, *6-*7 (E.D. Pa. Dec. 31, 1998) (recognizing that a physician's decision to withhold Interferon treatment for the plaintiff's Hepatitis condition did not constitute an Eighth Amendment violation where the physician felt such treatment was inappropriate);   Allen v. Sanders (N.D. Tex. June 4, 1998) 1998 U.S. Dist. LEXIS 23378, 1998 WL 318841, *6 (holding that physician's refusal to treat plaintiff's Hepatitis with Interferon did not evidence deliberate indifference where plaintiff failed to show that the physician did not make the decision in his best medical judgment);   Dias, 865 F. Supp. 53 at 58 (holding that a prisoner's disagreement with a physician' srefusal to authorize Interferon treatment for his Hepatitis C condition did not rise to the level of an Eighth Amendment violation);   Bouchard v. Magnusson 715 F. Supp. 1146, 1147-1149 (D. Me. 1989) (holding that officials' refusal to allow plaintiff to consult with a different doctor or to permit him to follow up with a specialist he had already been referred to was not an Eighth Amendment violation). See also   Bartlett v. Correctional Med. Serv., Inc. 124 F.3d 2 16 (table), 1997 WL 572834 (10th Cir. 1997)  [*25]   *1 (holding that plaintiff's disagreement with his physicians' refusal to treat his Hepatitis C with Interferon did not state a claim under the Eighth Amendment). As such, Plaintiff has failed to demonstrate that he has a clear likelihood of succeeding on the merits of these allegations. n9

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

   n9 In his motion for a preliminary injunction, Plaintiff appears to contend for the first time that the defendant physicians violated the consent decree entered by Judge Ward in Milburn v. Coughlin, No. 79 Civ. 5077 (S.D.N.Y.) by refusing to allow him to follow-up with Dr. Maliakkal. See Pl.'s Aff. in supp. of Mot. for Prelim. Inj. at 2-3 n.1. In 1980, Judge Ward certified a class of present and future Green Haven Correctional Facility ("Green Haven") inmates challenging the constitutionality of health care services. See   Shariff v. Artuz 2000 U.S. Dist. LEXIS 12248, 2000 WL 1219381 (S.D.N.Y. Aug. 28, 2000) *4 n.5. The parties in that lawsuit entered into a series of agreements culminating in a 1991 modified consent decree. Id. The various Milburn consent decrees govern the provision of health care services at Green Haven.

Candelaria v. Coughlin 1994 U.S. Dist. LEXIS 18325, 1994 WL 707004 (S.D.N.Y. Dec. 19, 1994) *7. Plaintiff cannot support his claim on the basis of the consent decrees entered in Milburn. First, Plaintiff is not an inmate at Green Haven; rather, he is an inmate at Woodbourne and has therefore failed to show how the Milburn consent decree, which governs the provision of health care services at Green Haven, applies to him. See Candelaria, 1994 U.S. Dist.LEXIS 18325, 1994 WL 707004 at *7-*8 (holding that inmate who was incarcerated at the Clinton Correctional Facility could not obtain injunctive relief on the basis of the Milburn consent decree which governed the provision of health care services at Green Haven); Cole v. Scully 1995 U.S. Dist. LEXIS 5127, 1995 WL 231250, n.5 (S.D.N.Y. April 18, 1995) (refusing to consider plaintiff's allegations that correction officers' conduct violated the Milburn consent decree where the plaintiff had failed to show how the Milburn decree was relevant to the action). Moreover, even if the Milburn consent decree did somehow apply to this action, we could not consider a claim premised on its violation since Judge Ward retains supervision over the consent decree. See Vasquez v. Artuz 1999 U.S. Dist. LEXIS 9679, 1999 WL 440631 (S.D.N.Y. June 28, 1999) *1 n.1 ("Vasquez's Milburn consent decree violation claim is also not properly before this Court, and should be filed with Judge Ward in this district, who retains supervision over the decree"); Kaminsky v. Rosenblum737 F. Supp. 1309, 1317 n.6 (S.D.N.Y. 1990), appeal dismissed (2d Cir. 1991) 929 F.2d 922 (holding that the issue of whether the Milburn consent decree

was violated "is not, and cannot be, before this Court. Violations of the Milburn decree can be remedied only by bringing the alleged violations to the attention of the able District Judge [Ward] who retains supervision over that decree").

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

are based solely on a plaintiff's disagreement with his prison physicians' treatment decision by arguing that the defendant physicians' medical judgment also contradicts Dr. Maliakkal's medical recommendation. Even assuming arguendo that the defendant physicians' refusal to treat Plaintiff with such therapies as Interferon and Ribavirin in light of his decompensated cirrhosis condition explicitly contradicts Dr. Maliakkal's recommendation that Plaintiff be allowed a follow-up visit to discuss the treatment of his Hepatitis C with these therapies, such a disagreement between the medical judgments of the defendant physicians and Dr. Maliakkal does not rise to the level of an Eighth Amendment violation.

   "Not every physician will treat every ailment in exactly the same manner." Douglas v. Stanwick 93 F. Supp. 2d 320, 325 (N.D.N.Y. 2000). The mere fact

that the defendant physicians may have made a different medical decision with respect to Plaintiff's treatment than that purportedly recommended by Dr. Maliakkal does not indicate that they acted for culpable reasons. While a plaintiff may be  [*27]  able to state an Eighth Amendment claim where a doctor acts without medical justification, "no claim is stated when a doctor disagrees

with the professional judgment of another doctor." White v. Napoleon 897 F.2d 103, 110 (3d Cir. 1990). Hence, courts have repeatedly held that "a disputebetween two doctors as to the proper course of medical treatment will not give rise to an Eighth Amendment violation." Hodge, 1994 U.S. Dist. LEXIS 13409, 1994 WL 519902 at *11; Miller v. Fisher 1993 U.S. Dist. LEXIS 15192, 1993 WL 438761 (N.D.N.Y. Oct. 26, 1993) *3 (Mag. J. Hurd), approved (N.D.N.Y. Mar. 23, 1995) 1995 U.S. Dist. LEXIS 3970, 1995 WL 131561, *1 (J. Scullin). See Webb v. Jackson 1994 U.S. Dist. LEXIS 3008, 1994 WL 86390 (S.D.N.Y. Mar. 16, 1994) *3, aff'd (2d Cir. 1995) 47 F.3d 1158 ("It is well established that a mere differences [sic] in opinion, whether between doctors or laymen, based on medical care does not give rise to an Eighth Amendment violation of inadequate medical treatment pursuant to section 1983"). See also Sanchez v. Vild 891 F.2d 240, 241 (9th Cir. 1989); Culp 2000) *9; Douglas v. Stanwick 93 F. Supp. 2d 320, 325 (S.D.N.Y. 2000); [*28] Mercer v. Green Haven Correctional Facility, 1998 U.S. Dist. LEXIS2 108, 1998 WL 85734 at *6 (S.D.N.Y. Feb. 26, 1998); Gardner v. Zaunbrecher1 996 U.S. Dist. LEXIS 12963, 1996 WL 507072 (S.D.N.Y. Sept. 4, 1996) *2.

   In this instance, Defendants evaluated Plaintiff's medical condition and determined, pursuant to their medical judgment, that the treatment of Plaintiff's Hepatitis C with such therapies as Interferon and Ribavirin would be inappropriate given the risk such a treatment would pose to Plaintiff's health in light of his closely related decompensated cirrhosis condition. Even assuming that their decision represented a medical judgment which disagreed in substance with Dr. Maliakkal's medical recommendation, such a disagreement among Plaintiff's physicians would not constitute deliberate indifference under these circumstances. See Douglas, 93 F. Supp. 2d at 325 (holding that physician's decision to countermand a different doctor's treatment decision, made on the basis of her medical judgment, did not constitute deliberate indifference); Mercer, 1998 U.S. Dist. LEXIS 2108, 1998 WL 85734 at *6 (holding that mere fact that physician's treatment choice was different than treatment recommended by specialist did not give rise to a violation of the plaintiff's [*29] Eighth Amendment constitutional rights); Gardner, 1996 U.S. Dist. LEXIS 12963, 1996 WL 507072 at *2 (holding that disagreements among the prisoner's physicians did not constitute deliberate indifference). Accordingly, Plaintiff cannot demonstrate a likelihood of succeeding on the merits of his claim on the basis of the supposed disagreement over treatment between Dr. Maliakkal and the defendant physicians.

   B. Plaintiff's Second Cause Of Action

   In his second cause of action under 42 U.S.C. a 1983, Plaintiff alleges that Defendants "deprived, with deliberate indifference, plaintiff of rights secured to him by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution by refusing to provide him with necessary medical assessment, treatment and care." Compl. P 47. We now address each of the claims raised by this cause of action respectively.

   1. Due Process Claim

We are hard pressed to differentiate between Plaintiff's second cause of action for deprivation of due process stemming from Defendants' "deliberate indifference" in providing him with "necessary medical assessment, treatment and care" and Plaintiff's first [*30] cause of action under the Eighth and Fourteenth Amendments. Both are based on the same exact allegations and seek relief from Defendants' alleged deliberate indifference in providing Plaintiff with inadequate medical care.

"Constitutional due process mandates...[the] provision of adequate medical care to persons in official custody." Haitian Centers Council, Inc. v. Sale 823 F. Supp. 1028, 1043 (E.D.N.Y. 1993). The Due Process Clause of the Fourteenth Amendment directly protects pretrial detainees from the provision of inadequate medical care by the state. See Sulkowska v. City of New York 129 F. Supp. 2d 274, 291-292, n.29(S.D.N.Y. 2001). In contrast, incarcerated prisoners are protected from cruel and unusual punishment in the form of inadequate medical care by the Eighth Amendment, as applied to the state by the Fourteenth Amendment. See Estelle, 429 U.S. at 101-105. As such, Plaintiff's attempt to assert a Section 1983 cause of action for inadequate medical care directly under the Fourteenth Amendment on the basis of the same allegations as his first Section 1983 cause of action for inadequate medical care under the Eighth [*31] and Fourteenth Amendments is redundant. Moreover, since Plaintiff is not a pre-trial detainee, is it unclear whether or not he could assert such an action directly under the Fourteenth Amendment's Due Process clause for the deprivation of his substantive due process rights as opposed to asserting the action under the Eighth Amendment as it is applied to the state through the Fourteenth Amendment. See Howard v. Goord (E.D.N.Y. June 6, 2001) 2001 U.S. Dist. LEXIS 8708.

Where a pro se incarcerated prisoner has asserted separate claims for deliberate indifference to medical needs under both the Eighth Amendment's prohibition against cruel and unusual punishment as well as the Fourteenth Amendment's Due Process Clause, we construe such claims as if they were brought for the deprivation of Eighth Amendment rights. See id. See also Amaker v. Haponik 2000 U.S. Dist. LEXIS 4091, 2000 WL 343772 (S.D.N.Y. Mar. 31, 2000) *6 ("It is well established that 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive [*32] due process'"). Since we have determined that Plaintiff cannot demonstrate a clear or substantial likelihood of success on the merits of his Eighth Amendment claim, we now similarly hold that he cannot demonstrate a clear or substantial likelihood of succeeding on the merits of this aspect of his second cause of action.

2. Equal Protection Claim

In his second cause of action, Plaintiff also asserts a Section 1983 claim for the deprivation of his rights under the Equal Protection Clause of the Fourteenth Amendment stemming from Defendants' refusal to "provide him with necessary medical assessment, treatment and care." Compl. P 47. Unfortunately, given the opaque nature of Plaintiff's moving papers, it is unclear whether or

not Plaintiff grounds his motion for a preliminary injunction solely on his Eighth Amendment claim or whether he also bases his motion on the alleged violation of his equal protection rights. While Plaintiff's pro se moving papers do not substantively contend that he is entitled to injunctive relief because of the Equal Protection Clause or that he is likely to succeed on the merits of his equal protection claim, a footnote in his Reply brief in support  [*33] of a preliminary injunction suggests that he may be partly relying on his equal protection claim in seeking injunctive relief. See Pl.'s Reply Brief at 6 n.7.

In essence, Plaintiff appears to contend, inter alia, that the restrictions on treatment in the Hepatitis C Guideline violate his equal protection rights. As the defendant physicians have determined that Plaintiff should not be treated with Interferon and Ribavirin on the basis of both the relevant medical literature on the subject as well as the Hepatitis C Guideline's proviso that treatment for Hepatitis C is contraindicated for persons with decompensated cirrhosis, see Wright Aff. P 8, we will address the issue of whether or not Plaintiff has a clear likelihood of succeeding on the merits of his equal protection claim.

Plaintiff's Complaint and moving papers are not a model of clarity with respect to this claim. Although his Complaint is replete with allegations of how he has been denied adequate medical care, it contains no allegations pertaining to how he has been deprived of his equal protection rights beyond his conclusory sentence setting forth his equal protection claim. See Compl. P 47.

The only  [*34]  substantive factual allegations which pertain to this claim can be found in the grievance which Plaintiff filed with the prison authorities regarding his medical treatment. That grievance was attached as an exhibit to the Complaint. See Compl., Exh. I at 1, 6, 8-9. In his grievance, Plaintiff argued that he had been deprived of his rights under the Equal Protection Clause because inmates with HIV or AIDS were generally allowed unconditional treatment for their disease whereas, pursuant to the Hepatitis C Guideline generally, inmates with Hepatitis C were not. See Compl., Exh. I at 6. See also Pl.'s Reply Brief at 6 n.7. Plaintiff also asserted that the Hepatitis C Guideline's provision recommending treatment for only those inmates with Hepatitis C whose anticipated incarceration would last at least 12 months was discriminatory "in its application" because it had the effect of providing incarcerated inmates with Hepatitis C less favorable treatment than that available to non-inmates, such as parolees, with Hepatitis C. See Compl., Exhibit I at 8-9.

"The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'" Plyler v. Doe 457 U.S. 202, 216, 72 L. Ed. 2d 786, 102 S. Ct. 2382 (1982).  [*35]   The Second Circuit has explained that "there are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause" and has identified at least three such methods. Brown v. City of Oneonta 221 F.3d 329, 337 (2d Cir. 2000). First, a plaintiff can point to a law or policy that expressly classifies persons on the basis of various protected categories. See Hayden v. County of Nassau 180 F.3d 42, 48 (2d Cir. 1999). Second, a plaintiff

can identify a facially neutral law or policy that has been applied in an unlawfully discriminatory manner. Pyke v. Cuomo 258 F.3d 107, 110 (2d Cir. 2001). Finally, a plaintiff can also "allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." Brown, 221 F.3d at 337.

Although the true nature of Plaintiff's equal protection claim is somewhat unclear, we construe his equal protection allegations with respect to the Hepatitis C Guideline's adverse effect as an equal protection claim premised on allegations that a policy has an adverse impact and that it was motivated by discriminatory [*36] animus. n10 In sum, Plaintiff claims that both the application of the general restrictions in the Guideline as well as the application of the specific provision addressing an inmate's anticipated period of incarceration has an adverse effect because inmates with Hepatitis C receive less favorable treatment options as a result of the Guideline than do inmates with HIV or AIDS or non-inmates with Hepatitis C (such as parolees). n11

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n10 Since the Hepatitis C Guideline explicitly applies to the treatment of inmates with Hepatitis C, see Wright Aff., Exh. A, and is not actually applicable to the treatment of either HIV or AIDS or to the treatment of non-inmates, such as parolees, with Hepatitis C, we cannot construe Plaintiff's allegations as stating a challenge to a facially neutral policy that has actually been applied in an unlawfully discriminatory manner.

n11 In his Reply brief, Plaintiff asserts for the first time that the Hepatitis C Guideline's ASAT provision violates his equal protection rights. See Pl.'s Reply Brief at 6 n.7. Among the criteria which are outlined in the Hepatitis C Guideline as considerations for Hepatitis C treatment are whether those inmates with a history of substance abuse have successfully completed an ASAT program. See Wright Aff., Exh. A at 4. According to Plaintiff, only inmates who are employed are eligible to attend an ASAT program; since Plaintiff is medically unemployed due to breathing problems, he asserts that the ASAT provision violates his equal protection rights because that treatment consideration is applied more favorably to employed inmates with Hepatitis C than to unemployed inmates with Hepatitis C. See Pl.'s Reply Brief at 6 n.7. As an initial matter, we hold that since Plaintiff only raised this equal protection allegation for the first time in his Reply brief, we need not address this argument. See Carbonell v. Acrish 154 F. Supp. 2d 552, 560-561 (S.D.N.Y. 2001) (refusing to consider an equal protection challenge raised by the plaintiff for the first time in his reply brief). See also Mitchell v. Northern Westchester Hospital 171 F. Supp. 2d 274, 277 n.1 (S.D.N.Y. 2001).; Higgins v. Coombe 1997 U.S. Dist. LEXIS 8418, 1997 WL 328623 (S.D.N.Y. June 16, 1997) *12. However, even assuming arguendo that we did consider this new challenge and that the ASAT provision violated the Equal Protection Clause, such allegations could not support a preliminary injunction under these circumstances. Whether or not Defendants delayed Plaintiff's treatment or refused to treat him altogether in the past on the basis of the ASAT provision,

that provision is not the basis of his ongoing medical treatment. Rather, the physicians have refused to treat Plaintiff's Hepatitis C with Interferon and Ribavirin because both the relevant medical literature on the subject and another provision in the Hepatitis C Guideline provide that such treatment is inappropriate where the patient has decompensated cirrhosis in light of the risk such treatment would pose to the patient's life. See Wright Aff. P 8. See also Pl.'s Aff. in supp. of Mot. for Prelim. Inj., Exh. at 23 (Dr. Hentschel's recommendation that such Interferon and Ribavirin therapy be denied because the patient was cirrhotic). Since any purported past reliance on the ASAT provision in the Guideline is not the reason why Plaintiff is allegedly suffering irreparable harm stemming from the physician's current treatment decisions, Defendants' past conduct in allegedly refusing to treat Plaintiff's Hepatitis C on the basis of the ASAT provision cannot establish the requisite irreparable harm necessary to support a preliminary injunction.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -
[*37]

As the Second Circuit has recently clarified, a plaintiff who alleges that the application of a facially neutral statute or policy has an adverse effect "is not obligated to show a better treated, similarly situated group of individuals" in order to establish a claim of equal protection. Pyke, 258F .3d at 110. However, although Plaintiff may not be required to show a similarly situated group of individuals who were more favorably treated in order to support his equal protection claim, he must still establish purposeful discrimination. While Plaintiff has alleged both that the restrictions in the Hepatitis C Guideline in general and particular provisions in the Guideline have an adverse impact on the treatment provided to inmates with Hepatitis C, "a policy does not deny equal protection merely because it is known to affect a particular class adversely." Johnson v. Wing 178 F.3d 611, 615 (2d Cir. 1999) cert. denied 528 U.S. 1162, 145 L. Ed. 2d 1085, 120 S. Ct. 1177 (2000) Rather, as a general matter, a policy violates the Equal Protection Clause only where its adverse effect reflects purposeful discrimination. Id. In this context, [*38] "[a] plaintiff need not show that a discriminatory reason was the sole reason for the disparate treatment, just that it was a substantial or motivating one." Querry v. Messar 14 F. Supp. 2d 437, 446 ( S.D.N.Y. 1998).

"Discriminatory purpose 'implies that the decisionmaker...selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.'" Hayden, 180 F.3d at 50. Although Plaintiff has asserted allegations of adverse impact, his Complaint, moving papers, and accompanying exhibits are devoid of any factual allegations that the Hepatitis C Guideline was implemented because of the alleged adverse effects it had on the medical treatment provided to inmates with Hepatitis C. Given the absence of such factual allegations, Plaintiff cannot show that he has a likelihood of succeeding on the merits of his equal protection claim. See Hayden, 180 F.3d at 50-51 (affirming dismissal of equal protection claim where plaintiff's allegations were insufficient to establish that county officials had acted because of a desire to

adversely affect the plaintiffs);   [*39]    Johnson, 178 F.3d at 616 (affirming summary judgment in favor of the defendants on plaintiff's equal protection claim where nothing in plaintiff's allegations supported the finding of a discriminatory purpose); Lee v. State of New York Dept. of Correctional Services 1999 U.S. Dist. LEXIS 13214, 1999 WL 673339 (S.D.N.Y. Aug .30, 1999) *12 (dismissing plaintiff's equal protection claim where plaintiff ha dfailed to set forth any allegations suggesting that DOCS officials had some discriminatory purpose behind their actions). n12

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

   n12 Even had we construed Plaintiff's equal protection claim as a challenge against a policy which expressly distinguished between groups on the basis of some protected category, Plaintiff would still be unable to show that he has a clear likelihood of succeeding on the merits of this claim. Since inmates with Hepatitis C, without more, do not fall within the type of express protected classification in Brown for which a plaintiff is not required to establish a similarly situated group, Plaintiff would need to show that inmates with Hepatitis C were treated differently than similarly situated individuals. See    Gagliardi v. Village of Pawling 18 F.3d 188, 193; (2d Cir. 1994)  Caracciola v. City of New York 1999 U.S. Dist. LEXIS 2983, 1999 WL 144481

(S.D.N.Y. Mar. 17, 1999) *6. As Plaintiff compares the treatment provided to inmates with Hepatitis C to that provided to non-inmates with hepatitis or inmates with HIV or AIDS, he would be unable to establish that he was being treated differently than similarly situated individuals. See    Hrbek v. Farrier 787 F.2d 414 (8th Cir. 1986) (holding that inmates are not similarly situated to non-inmates);    Daleure v. Kentucky 119 F. Supp. 2d 683, 691 (W.D. Ky. 2000) (same);    Allen, 1998 U.S. Dist. LEXIS 23378, 1998 WL 318841 at *2-*3 (concluding that inmate with hepatitis failed to state an equal protection claim based on discriminatory treatment because he was not similarly situated to an inmate with HIV).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -
[*40]

   3. Retaliation Claim

   Although he did not assert allegations or a cause of action under Section 1983 for retaliation in his Complaint, Plaintiff alleges for the first time in his motion for a preliminary injunction that Defendants are refusing to allow him to consult with Dr. Maliakkal or to receive treatment with Interferon or Ribavirin in retaliation for his having filed a prior, unrelated Section 1983 Inj. at 8 ("Finally, the Court should be aware that plaintiff is being denied medical treatment in retaliation for a prior Civil Rights Action which is pending before this Court"). See also Pl.'s Reply Brief at 7-8.

   "It is well-established that prison officials may not retaliate against inmates for exercising their constitutional rights."    Rivera v. Goord 119 F. Supp. 2d 327, 339 (S.D.N.Y. 2000). To state a retaliation claim

under Section 1983, "a plaintiff must show that (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity." Friedl v. City of New York 210 F.3d 79, 85 (2d Cir. 2000). [*41] "Because claims of retaliation areeasily fabricated, 'courts must examine prisoners' claims of retaliation with skepticism and particular care...requiring detailed fact pleading... ." Rivera, 119 F. Supp. 2d at 339. See also Dawes v. Walker 239 F.3d 489, 491 (2d Cir. 2001) ("courts must approach prisoner claims of retaliation with skepticism and particular care"); Bartley v. Artuz 1999 U.S. Dist. LEXIS 16017, 1999 WL 942425 (S.D.N.Y. Oct. 19, 1999) *8 ("The standard for pleading retaliation is high because, as the Second Circuit recognized, retaliation claims by prisoners are 'prone to abuse' as virtually every prisoner can assert such a claim as to every decision which he or she dislikes").

At the outset, we hold that since Plaintiff never asserted either a cause of action for retaliation or even allegations in support thereof in his Complaint, we need not consider his retaliation arguments. See Mitchell v. Northern Westchester Hospital 171 F. Supp. 2d 274, 277 n.1 (S.D.N.Y. 2001) (refusing to consider claims raised by plaintiff for first time in opposition to motion for summary judgment where such claims were not pleaded in the complaint); [*42] Higgins v. Coombe 1997 U.S. Dist. LEXIS 8418, 1997 WL 328623 (S.D.N.Y. June 16, 1997) *12 (refusing to consider allegations of retaliatory transfer raised by pro se plaintiff for the first time in his response to defendants' motion to dismiss since they were not pleaded in the complaint and were therefore beyond the scope of the instant action). See also Carbonell v. Acrish 154 F. Supp. 2d 552, 560-561 (S.D.N.Y. 2001).

However, even if we were to address Plaintiff's retaliation contentions, we would still find that Plaintiff's allegations are insufficient to support a preliminary injunction in this instance. Here, Plaintiff's allegations of retaliation are wholly conclusory and unsupported by detailed fact pleading. The nature of his retaliation allegations is unsurprising since these allegations are raised as cursory arguments in the course of Plaintiff's moving papers. Since Plaintiff's retaliation allegations are wholly conclusory, Plaintiff cannot demonstrate that he has a clear likelihood of succeeding on the merits of the retaliation claim set forth in his motion for a preliminary injunction. See Gill v. Mooney 824 F.2d 192, 194-195 (2d Cir. 1987) [*43] (affirming dismissal of claim which alleged retaliation in wholly conclusory terms); Washington v. Coughlin (N.D.N.Y. Sept. 23, 1998) 1998 U.S. Dist. LEXIS 23407, 1998 WL 661532, *3 (dismissing retaliation claim where it was unsupported and wholly conclusory); Benitez v. Beneway 1995 U.S. Dist. LEXIS 11680, 1995 WL 489694 (S.D.N.Y. Aug. 15, 1995) *5 (dismissing retaliation claim where underlying allegations were conclusory). n13

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n13 Since Plaintiff has not requested a hearing with respect to his motion and since the affidavits, exhibits, and moving papers submitted to us themselves demonstrate that Plaintiff does not have a clear or substantial likelihood

of succeeding on the merits of his various claims, we have not held an evidentiary hearing on Plaintiff's motion for a preliminary injunction. See [LaRouche v. Webster 566 F. Supp. 415, 419 n.5 (S.D.N.Y. 1983)](#) ("There is no doubt that a preliminary injunction may be 'denied without a hearing...when the written evidence shows the lack of a right so clearly that receiving further evidence would be manifestly pointless'").

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -
[*44]

CONCLUSION

For the foregoing reasons, we DENY Plaintiff's motion for a preliminary injunction.

SO ORDERED.

March 4, 2002
New York, New York

WHITMAN KNAPP, SENIOR U.S.D.J.