UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | : | PRISONER |
|---|---|---|
| GERALD CODERRE, | : | CIVIL NO. 3:03CV1096(RNC)(DFM) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| EDWARD PESANTI, ET AL., | : | JULY 1, 2004 |
| *Defendant.* | | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

The issue in this case is whether the denial of interferon treatment on the basis that a patient has not completed a substance abuse program is reckless or wanton. Because such a denial is in accordance with sound medical practice, statements by the National Institute of Health and the Federal Bureau of Prisons' policy, the denial of interferon treatment in such a circumstance cannot be deemed to constitute deliberate indifference.

**UNDISPUTED FACTS**

The following facts were admitted by plaintiff. Given these undisputed facts, summary judgment should issue in defendants' favor.

The community standard is that an individual who uses intra-venous drugs does not receive Hepatitis C treatment in the form of interferon/ribavirin therapy. Statement of Material Facts Not in Dispute par. 49.[1] The National Institute of Health ("NIH") has stated: "Given the current status of therapies for Hepatitis C treatment is clearly recommended only in a selected group of patients." Plaintiff's response to Defendants' Local Rule 56(a)(2) statement paragraph 26. Before providing

---

[1] (Plaintiff does not controvert this statement and thus under D. Conn. Civ. L. R. 56(a)(1) it must be deemed admitted).

interferon treatment an individual should undergo drug addiction treatment.  Plaintiff's response to Defendants' Local Rule 56(a)(2) statement paragraph 26;  Defendants' Local Rule 56(a)(2) Statement par. 27; Plaintiff's brief p. 23.

The Federal Bureau of Prison guidelines provide, "Inmates with evidence of substance abuse, either in the present or the recent past (check urine toxicology screen if drug use is suspected and check Sentry for disciplinary actions related to drug or alcohol use) <u>should be referred for counseling and assessment prior to considering antiviral therapy</u>."  Defendants Local 56(a)(2) statement par. 25 (emphasis added)[2].  Plaintiff further concedes that for an active IV drug user, the risks of interferon therapy outweigh the benefits.  Plaintiff's response to paragraph 28 of Defendants' Local 56(a)(2) statement.  Plaintiff also admits that the interferon treatment available in 1998, 1999, 2000, and 2001 and even in the summer of 2002 was not as good as the current treatment.  Plaintiff's response to paragraph 43 of Defendants' Local 56(a)(2) statement.  Plaintiff also admits that during this time period the side effects were much more frequent and the success rate in clearing the virus was lower.  Plaintiff's response to paragraph 43 of Defendants' Local 56(a)(2) statement.

Plaintiff was transferred from MacDougall Walker to Robinson Correctional Institution on June 6, 2001.  Plaintiff's Affidavit p. 42; Plaintiff's RT 60.  Shortly after plaintiff's transfer back to Robinson, Dr. Bianchi ordered blood work for plaintiff.  Plaintiff's affidavit p. 43.  Within one week of the completion of the blood work which showed elevated AST and ALT levels, Dr. Bianchi sent a URC request for a gastroenterology consult for possible interferon therapy.  Defendants' Local Rule 56(a)(2) statement par. 19.  The URC request indicated that plaintiff had not completed

---

[2] (Plaintiff does not controvert this statement and thus under D. Conn. Civ. L. R. 56(a)(1) it must be deemed admitted).

2

a substance abuse course while in prison and that his expected release date was 7/6/03.  Exhibit O to plaintiff's affidavit.

At the time the request was submitted, the UCMHC Guidelines provided treatment to "inmates who were not using cocaine or IV drugs <u>for at least 6 months prior to the current incarceration</u> OR who have very long sentences (>5 years)."  Affidavit of Gerald Coderre par. 48; Exhibit R, p. 2 to Affidavit of Coderre.)

Under the NIH standard, interferon treatment should not be provided until "<u>habits of using illicit drugs or drinking significant amounts of alcohol <u>had been discontinued for six months</u>.</u>" Plaintiff's brief p. 15 (emphasis added).  Here, the fact that plaintiff may not have been able to get alcohol or heroin while incarcerated did not prove that his "habit" had discontinued.  Indeed, plaintiff's actions in returning to drug use upon each release into the community proved otherwise.

Plaintiff admitted to using drugs and alcohol for two weeks when he was out of DOC custody in November 2000.  Exhibit W p. 2 to plaintiff's affidavit.  Moreover, in a DOC medical intake screening form dated December 14, 2000, plaintiff reported drinking between a pint to a liter of rum/vodka daily and using ½ to 1 bag of heroin daily.  Statement of Material Facts not in Dispute par. 9 admitted by plaintiff.  Thus, plaintiff admits that as of June 2001, he had used drugs six months prior to his then current incarceration.  Moreover, in June 2001, plaintiff's expected release date was two years away, July 6, 2003.  See Exhibit O to plaintiff's affidavit.

In denying the 2001 URC request for interferon therapy, Dr. Pesanti believed that giving plaintiff interferon would be at best a futile act and at worst, an unnecessary subjection of plaintiff to side effects of a medication that would be rendered useless, when plaintiff discharged to the streets and returned to drug use.  Statement of Material Facts Not in Dispute par. 23, 24, 26, 28,

3

and 29 Exhibit Q to affidavit of plaintiff, Exhibit R p.2 to affidavit of plaintiff. The undisputed facts show that Dr. Pesanti was right. More specifically, after being paroled in September 2002, plaintiff returned to intravenous drug use. Statement of Material Facts Not in Dispute par. 39 admitted by plaintiff. Plaintiff agrees with Dr. Pesanti "that those cured of Hepatitis C can relapse." Plaintiff's response to Defendants' Local 56(a)(2) statement paragraph 28. Plaintiff also admits that an individual currently using IV drugs is at risk of infecting himself and, for such a person, the risks of interferon treatment would outweigh the benefits." Id. Finally, plaintiff admits that he did not sustain any clinical significant progression of his illness by a delay in treatment from June 2001 until 2003.[3]

**ARGUMENT**

**A.   As A Matter of Law, Plaintiff Cannot Prove that Defendants Were Deliberately Indifferent to His Medical Needs**

Given the undisputed facts of this case, plaintiff, cannot as a matter of law establish that Dr. Pesanti's denial of the June 2001 URC request for interferon treatment constituted deliberate indifference. Exhibit Q to plaintiff's affidavit.

Rather, this case presents a classic disagreement between plaintiff and his doctors over his course of treatment in a cutting area of medicine. Such a disagreement does not state an Eighth Amendment claim. A pure issue of medical judgment cannot form the basis for an eighth amendment claim. Hernandez v. Keane, 341 F.3d 137, 146-46 (2d Cir. 2003).

In a case similar to the one at bar, a United States Magistrate judge in New York granted summary judgment in favor of the medical doctor who refused to give an inmate who had Hepatitis C the medication Ribavirin, because the inmate had used marijuana a year prior to the request for

---

[3]  (Plaintiff does not controvert this statement and thus under D. Conn. Civ. L. R. 56(a)(1) it must be deemed admitted).

4

Ribavirin. The Magistrate judge held that in denying the request the physician had followed the prison guideline. The Magistrate judge then looked to see whether the application of the guideline rose to the level of deliberate indifference. In finding that it did not the court stated:

> <u>Of course, it is not for this Court to decide whether this medical view is correct. Instead, the issue is whether there is any disputed issue of fact as to whether the defendants reasonably could have harbored the belief that the view embodied in the Guideline was correct</u>. This is because if they held such a belief, it would be impossible for a jury to conclude that they had the subjective intent necessary to show deliberate indifference to Johnson's medical needs. . . . <u>The undisputed evidence in this case reflects that the factor listed in the DOCS Practice Guideline was supported by – and indeed, was based upon – reports prepared by medical professionals. One of those reports, the NIH Report</u>, states that "treatment of patients who are drinking significant amounts of alcohol or who are actively using illicit drugs should be delayed until these habits are discontinued for at least 6 months. Such patients are at risk for the potential toxic effects of alcohol and other drugs and also present problems with compliance. Treatment for addiction should be provided prior to treatment of hepatitis C." [citations omitted]. Another report referred to in the Guideline, the BOP Report, states in almost identical terms to the Guideline that treatment "should be considered in accordance with the following criteria" one of which is :"(10) No evidence of active substance abuse during past 2 years (check urine toxicology screen if drug use suspected.)" [citation omitted] It is thus clear that there were valid medical reasons justifying the denial of Rebetron Therapy to active substance abusers. While Johnson has presented medical evidence suggesting that he could properly have received Rebetron Therapy, <u>he has not rebutted defendants' evidence that their treatment of Johnson was consistent with the DOCS Practice Guideline and that the Guideline was based on medical evidence that was apparently reliable at the time</u>.

<u>Johnson v. Wright,</u> 2004 U.S. Dist Lexis at p. 9 (emphasis added)(attached).

Here, rather than deny the request for interferon treatment outright, Dr. Pesanti stated that plaintiff first needed to complete a substance abuse program. Plaintiff's Disputed Issues of Material Fact par. 31.[4] In other words, Dr. Pesanti exercised his medical judgment and determined consistent

---

[4] IT IS NOT DISPUTED THAT THIS WAS THE ONLY REASON GIVEN FOR THE URC DENIAL. Thus, plaintiff's hearsay statement that Dr. Bianchi allegedly told him that Dr. Pesanti does not approve requests for HCV treatment because such treatment costs too much is a speculative red-herring contradicted by plaintiff's own exhibits. More specifically, on page 3 of Exhibit W to plaintiff's affidavit, plaintiff writes, "<u>People in D.O.C. are being treated for this virus (with the medication interferon)</u>." If Dr. Pesanti did not approve HCV treatment because of expense, no

5

with Federal Bureau of Prison guidelines that plaintiff should be "<u>referred</u> for counseling and assessment <u>prior to considering</u> antiviral therapy." Defendants Local 56(a)(2) statement par. 25 (emphasis added). In addition, Dr. Pesanti's judgment is in line with the community standard that an individual who uses IV drugs does not receive hepatitis C treatment in the form of interferon/ribavirin therapy. Statement of Material Facts Not in Dispute par. 49. [5] Finally, Dr. Pesanti's medical judgment was in accord with the NIH publication that stated, "Treatment for addiction should be provided prior to treatment to hepatitis C." Defendants' Statement of Material Facts not in dispute par. 26. Thus, the decision in 2001, denying plaintiff interferon treatment cannot as a matter of law be deemed wanton and reckless. This is particularly so, when plaintiff admits he did not suffer any clinical significant progression of his illness because he did not receive the treatment in 2001 and given plaintiff's drug use during his parole in the fall/winter of 2002-2003. Defendants' Local 56(a)(2) statement par. 37, 44.[6]

Plaintiff also admits that shortly after his readmission in March 2003, when he received a five year sentence, he began receiving hepatitis C treatment. Plaintiff's response to paragraphs 36, and 41. Plaintiff will have his liver enzymes checked six months from the end of his drug therapy or in mid July 2004 to determine if he is a sustained responder to treatment. Statement of Material Facts Not in Dispute par. 48 admitted by plaintiff. Given these facts, the uncontroverted medical opinions of Drs. Bianchi, Blanchette, Pesanti, Gittzus, the NIH literature, the federal bureau of prisons policy, there is no genuine issue of material fact here. Plaintiff cannot establish that it was

---

inmate would be receiving the interferon treatment. Moreover, 1) the request for plaintiff's treatment was not denied outright under the policy even though plaintiff had engaged in substance abuse within six months prior to his incarceration and had less than five years to serve, and 2) plaintiff has since received Hepatitis C treatment.

[5] (Plaintiff does not controvert this statement and thus under D. Conn. Civ. L. R. 56(a)(1) it must be deemed admitted).

[6] Plaintiff does not controvert this statement and thus under D. Conn. Civ. L. R. 56(a)(1) it must be deemed admitted).

deliberate indifference to deny interferon treatment until plaintiff sought and received substance abuse counseling.

Moreover, in the Level I grievance submitted to Nurse White, upon which plaintiff's claims against her is premised, plaintiff indicates that the action requested was, "To be medically evaluated per D.O.C. requirements for proper and adequate amount of medication. To have a biopsy done to see how far off I am in my disease of Hepatitis C." Exhibit W, to plaintiff's affidavit, section 3. Nurse White denied the grievance based upon a June 26, 2001 URC determination but then referred plaintiff to a medical doctor. These actions cannot, as a matter of law be deemed reckless or wanton.

### B. Defendants Have Qualified Immunity

At a minimum defendants are entitled to summary judgment on qualified immunity grounds. Defendants actions in delaying Hepatitis C treatment, at the very least was objectively reasonable:

> Even when a plaintiff's federal rights are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified or good faith immunity might still be available as a bar to a plaintiff's suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights. Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990); Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987) (citing Malley v. Briggs, 475 U.S. 335, 341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986)). If the right is so generalized that its application in the factual context of the case is subject to doubt, the immunity defense may bar action against the official. See Anderson, 483 U.S. at 639.

Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. N.Y. 1991).

Here, because the URC policy in effect in June 2001, under which plaintiff was denied interferon therapy until he completed a substance abuse program, is similar to the Federal Bureau of Prisons guidelines and is based upon the NIH policy, the defendants have qualified immunity. It was objectively reasonable for Dr. Pesanti to apply the URC policy, and deny plaintiff interferon

treatment because he had less than 5 years to serve and had not completed a substance abuse program.[7]  It was objectively reasonable to Dr. Bianchi and Dr. Blanchette not to dispute that denial.  It was objectively reasonable for Nurse White to deny plaintiff's grievance where he sought interferon treatment, based upon the June 26, 2001 URC denial and to refer plaintiff back to a physician.  Given that defendants acted in an objectively reasonable fashion, they have qualified immunity and Summary Judgment must issue in their favor.

**C.     The Plaintiff Has Failed to State A Claim Upon Which Relief Can Be Granted Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**

The Fourteenth Amendment to the United States Constitution declares that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 87 L.Ed.2d 313, 105 S.Ct. 3249 (1985).  See also, Smith v. U.S. Parole Commission, 814 F.Supp. 246, 247 (D.Conn. 1993) (The essence of equal protection is that persons similarly situated with respect to challenged government action shall be treated similarly).  Of course, the government can treat persons differently if they are not "similarly situated."  Able v. United States, 155 F.3d 628, 631 (2d Cir. 1998).  The Fourteenth Amendment does not provide that all people must be treated identically.  Smith, supra, 814 F.Supp. at 247, citing Lombard v. Board of Education of the City of New York, 645 F. Supp. 1574, 1581 (E.D.N.Y. 1986).

Here, plaintiff argues that his complaint could be read to allege that the URC guideline was applied in a discriminatory manner or motivated by a discriminatory animus. Plaintiff's memorandum of law p. 31.  Assuming arguendo that plaintiff has made this allegation, such a claim

---

[7] Plaintiff admits that he did not begin a substance abuse course until September 2003.  Plaintiff's affidavit par. 90.

must be analyzed by 1) determining the group with which plaintiff is similarly situated and 2) whether discriminatory treatment absent a rational basis is alleged. See City of Cleburne, supra 473 U.S. at 447-50.

Employing this analysis, an equal protection claim similar to the one currently before the court was dismissed in Verley v. Goord, 2004 U.S. Dist Lexis 857 (S.D.N.Y. 2004)(attached).

> [A] policy requiring inmates to complete a program to ensure that they will be drug-free before beginning intensive treatment for a serious medical condition is facially neutral. Second Verley has not alleged that, in deciding to allow only those housed in the UPD [Unit for the Physically Disabled] access to the ASAT [Alcohol and Substance Abuse Treatment] program, defendants (assuming they had any role in creating the policy at issue) intended to discriminate against general population inmates in the treatment of Hepatitis C. . . . Very has not alleged any discriminatory reason for requiring that the ASAT program be a prerequisite for Hepatitis C treatment, nor any discriminatory reason why the ASAT program was purportedly made available only to those housed in UPD. Nor does Verley's Proposed Amended Complaint plead that defendants engaged in purposeful discrimination. I therefore recommend that Verley's equal protection claim be dismissed and, I further recommend that his motion to amend this claim be denied as well because the purported amendment would also be unable to survive a motion to dismiss as pleaded.
>
> Id at *69, 71, or p. 25-26.
>
> Paragraph 61 of plaintiff's complaint in the case at bar states;
>
> 3rd Claim-(Denial of Due Process) To Choose for Care There is Only one Care for an Inmate and That is the Contracted UConn Medical Health center and There [sic] employees at the C.D.O.C. Facilitys [sic] when denied medical care for the (HCV) I was denied equal protection Under the Law of the Fourteenth Amendment and Amendment eighth Amendment of Deliberate Indifference to a Serious Medical Need.

Here, the plaintiff has not alleged that he was treated differently than those similarly situated. Plaintiff has not alleged and cannot allege that other inmates who had used IV drugs and alcohol, within six months of their incarceration, and who had less than five years to serve were approved for interferon therapy in 2000 or 2001, without having first completing a DOC substance

9

abuse program. Plaintiff has not alleged and cannot allege any facts that suggest the facially neutral URC Policy in 2000 and 2001, was applied in an intentionally discriminatory manner. Accordingly, the plaintiff's equal protection claim is legally insufficient and summary judgment should issue in favor of defendants.

**CONCLUSION**

For these reasons and all those set forth in defendants' memorandum of law dated February 23, 2004, defendants respectfully ask this court to grant summary judgment in their favor.

>DEFENDANTS
>Edward Pesanti, Et Al.
>
>
>RICHARD BLUMENTHAL
>ATTORNEY GENERAL

BY:   \_\_/s/_____
>Ann E. Lynch
>Assistant Attorney General
>110 Sherman Street
>Hartford, CT 06105
>Tel.: (860) 808-5450
>Fax: (860) 808-5591
>E-mail: ann.lynch@po.state.ct.us
>Federal Bar #ct08326

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 1st day of July 2004:

Gerald Coderre, Inmate #245210
Enfield Correctional Institution
289 Shaker Road
P.O. Box 1500
Enfield, CT 06082

Richard Cahill, Esq.
Schuman and Associates
Inmates Legal Assistance Program
78 Oak Street, P.O. Box  260237
Hartford Ct 06126-0237

                                                                                        __/s/_____
                                                                                        Ann E. Lynch
                                                                                       Assistant Attorney General