Service: **Get by LEXSEE®**
Citation: **2003 U.S. Dist. LEXIS 9572**

*2003 U.S. Dist. LEXIS 9572, \**

SHARON KLECHER, Plaintiff, - against - METROPOLITAN LIFE INSURANCE COMPANY AND THE OXFORD HEALTH PLANS, INC. EMPLOYEE WELFARE PLAN, Defendants.

01 Civ. 9566 (PKL)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2003 U.S. Dist. LEXIS 9572

June 5, 2003, Decided
June 6, 2003, Filed

**DISPOSITION:** [*1] Plaintiff's and defendants' motions for summary judgment both denied without prejudice.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee sued defendant insurer and employee welfare plan under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., challenging the termination of long-term disability benefits under her employer's benefit plan. The parties filed cross-motions for summary judgment.

**OVERVIEW:** The plan governing the employee's claims was the one in effect when the long-term disability benefits claim was reviewed. A select benefits booklet given to the employee was not a summary plan description (SDP) as it did not provide the terms of benefit coverage, definitions, or information about the plan's terms, limitations, exclusions, or dispute resolution mechanisms. Since there was no response to the allegation that the employee did not receive a summary plan description, i.e., no statement that an attached summary plan description was in fact distributed to all employees as mandated by 29 U.S.C.S. § 1021(a), the court was unable to grant summary judgment on the claim that the insurer breached its fiduciary duty by terminating benefits. The claim for penalties for failing to produce copies of the plan against the insurer failed as it was not the plan administrator, but survived against the plan as it had not responded to a request for the SDP. The breach of fiduciary claim against the plan failed as the employee was seeking damages on her own behalf. Finally, the claim for benefits due and owing was dismissed as the employee had not exhausted her administrative remedies.

**OUTCOME:** The plan and insurer were granted summary judgment as to the payment of penalties against the insurer and the miscalculation of the employee's benefits. The employee was denied summary judgment as to the claim that the plan breached its fiduciary duty and the claim was dismissed. Summary judgment was denied without prejudice as to the claim against the insurer for breach of fiduciary duty and the claim against the plan for payment of penalties.

**CORE TERMS:** administrator, summary judgment, claim file, booklet, cause of action, breach of fiduciary duty, plan administrator, fiduciary, beneficiary, discretionary authority, governing plan, eligibility, arbitrary and capricious, disability, disclaimer, occupation, administrative record, effective, requesting, administrative remedies, moving party, duty, surveillance, distributed, decision to deny, nonmoving party, benefit plan, first cause, miscalculation,

informing

## LexisNexis(R) Headnotes → Hide Headnotes

Civil Procedure > Summary Judgment > Supporting Papers & Affidavits

*HN1* Under U.S. Dist. Ct., S. & E.D. N.Y., R. 56.1, a party moving for summary judgment is required to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact. U.S. Dist. Ct., S. & E.D. N.Y., R. 56.1(a), (d). If the opposing party then fails to controvert a fact so set forth in the moving party's 56.1 statement, that fact will be deemed admitted. U.S. Dist. Ct., S. & E.D. N.Y., R. 56.1(c). More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof

*HN2* The United States Court of Appeals for the Second Circuit holds that U.S. Dist. Ct., S. & E.D. N.Y., R. 56.1 does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard

*HN3* A moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law underlying a claim determines if a fact is material and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. When considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof

*HN4* In determining whether genuine issues of material fact exist, the court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. The movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim. Once the moving party discharges his burden of demonstrating that no genuine issue of material fact exists, the burden shifts to the nonmoving party to offer specific evidence showing that a genuine issue for trial exists. The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. A genuine dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies

*HN5* Courts in the Southern District of New York hold that a cause of action under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., based on the denial of benefits accrues at the time benefits are denied, and the plan in effect when the decision to deny benefits is controlling. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Reporting, Disclosure & Notice

*HN6* The United States Court of Appeals for the Second Circuit holds that when the terms of a plan and the terms of a plan summary conflict, it is the terms of the plan summary that control. That general rule arises from the requirement under the

Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq., that the administrator of an employee benefits plan distribute a summary plan description to beneficiaries. In requiring summary plan descriptions, the ERISA statute intends that the summary will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Reporting, Disclosure & Notice
HN7±In order to be deemed a summary plan description (SPD) under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq., the SPD must include, inter alia, the plan's requirements respecting eligibility for participation and benefits; circumstances which may result in disqualification, ineligibility or denial or loss of benefits; and the procedures to be followed in presenting claims for benefits under the plan including the office at the United States Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under ERISA. 29 U.S.C.S. § 1022. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Reporting, Disclosure & Notice
HN8±The United States Court of Appeals for the Second Circuit stresses the importance of protecting the employee's right to rely on the summary plan description that is mandated by the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq. In protecting that reliance, it is implicit that the document being relied upon would at least include the necessary information regarding accessing and becoming eligible for these benefits. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Reporting, Disclosure & Notice
HN9±The employer can not rely on language in a plan document that was not filed with the United States Secretary of Labor pursuant to the requirements of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
HN10±Each party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies
HN11±Under the arbitrary and capricious standard of review, a district court is limited in the scope of its review and may consider only the administrative record before the administrator when the administrator made its decision denying plaintiff's benefits. Accordingly, a district court reviewing a denial of benefits under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., is effectively functioning in an appellate capacity because it is precluded from considering new evidence. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies
HN12±While Fed. R. Civ. P. 56(a) does permit a plaintiff to present supporting affidavits in connection with her motion for summary judgment, the court cannot consider those affidavits in its review the administrator's denial of benefits under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., when the court is reviewing the decision of the administrator to determine if it was arbitrary and capricious. Therefore, the court can only consider the material reviewed by the administrator at the time the administrator made his determination. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies

HN13± If the governing document does not include language conferring discretionary authority upon the administrator, then the court reviews the decision to deny plaintiff's benefits under the de novo standard. The United States Court of Appeals for the Second Circuit holds that, where de novo review of a decision rendered under a plan governed by the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., is appropriate because the plan's decision maker did not have the requisite discretionary authority, the federal court has discretion to consider evidence outside the administrative record. However, such discretion ought not to be exercised in the absence of good cause. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies

HN14± The Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq., provides that, as a part of the administrative appeals process available to ERISA plan participants, every plan administrator must supply certain requested documents within thirty days of a request therefor. 29 U.S.C.S. §§ 1024(b)(4), 1132(a)(1)(A), 1132(c)(1). An administrator who fails or refuses to comply with a request for any information which such administrator is required by ERISA to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $ 100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. 29 U.S.C.S. § 1132(c)(1). More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies

HN15± Claims under 29 U.S.C.S. § 1132(c)(1) can only be brought against designated plan administrators, rather than the plan itself or the employer. The plan administrator under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., is defined as the person specifically so designated by the terms of the instrument under which the plan is operated. 29 U.S.C.S. § 1002 (16)(A)(i). More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies

HN16± Under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., a plan administrator may not be held liable for requests directed to someone other than the administrator. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies

HN17± Since the ultimate assessment of penalties is a discretionary matter for the court under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., the court can and will consider factors such as bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or the beneficiary. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies
Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities

HN18± Under 29 U.S.C.S. § 1132(a)(2), a participant or beneficiary of a plan can sue a fiduciary with respect to a plan for breach of fiduciary duty in violation of 29 U.S.C.S. § 1109. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities

HN19± See 29 U.S.C.S. § 1109.

Get a Document - by Citation    U.S. Dist. LEXIS 9572    Page 5 of 19

Case 3:02-cv-01096-RNC    Document 80-3    Filed 08/02/2004    Page 5 of 19

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities

HN20± The fiduciary duties imposed by 29 U.S.C.S. § 1109 run to a plan and not to individual beneficiaries. Although an individual may bring a claim under 29 U.S.C.S. § 1132(a)(2), it was Congress' intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole. More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies

HN21± The Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., requires that a plaintiff exhaust the administrative remedies available to her before bringing the claim before the district court. The doctrine of exhaustion of administrative remedies is grounded on the principle that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. More Like This Headnote

**COUNSEL:** Aba Heiman, Esq., Fusco, Brandenstein & Rada, P.C., Woodbury, N.Y., for Plaintiff.

Carl J. Schaerf, Esq., Lester Schwab Katz & Dwyer, LLP, New York, New York, for Defendants.

**JUDGES:** Peter K. LEISURE, U.S.D.J.

**OPINIONBY:** Peter K. LEISURE

**OPINION: OPINION AND ORDER**

**LEISURE, J:**

Plaintiff, Sharon Klecher ("Klecher"), brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and specifically under 29 U.S.C. § 1132(a)(1)(B), since plaintiff is challenging the termination of Long-Term Disability ("LTD") benefits under her employer's benefit plan. Plaintiff brings this suit against defendants, the Metropolitan Life Insurance Company ("MetLife") and The Oxford Health Plans, Inc. Employee Welfare Plan ("the Plan"). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the parties filed cross-motions for summary judgment. For the following reasons, with respect to the first cause of action [*2] for payment of penalties against MetLife, defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. With regard to plaintiff's first cause of action against the Plan for payment of penalties, both plaintiff's and defendants' motions for summary judgment are denied without prejudice. Regarding plaintiff's second cause of action against the Plan for its alleged miscalculation of plaintiff's benefits, plaintiff's motion for summary judgment is denied, and the claim is dismissed for failure to exhaust the administrative remedies available to her. With regard to plaintiff's third cause of action against the Plan for breach of fiduciary duty, plaintiff's motion for summary judgment is denied and plaintiff's third cause of action is hereby dismissed. Finally, plaintiff's and defendants' motions for summary judgment with respect to plaintiff's fourth cause of action against MetLife for breach of fiduciary duty are both denied without prejudice.

**BACKGROUND**

Parties had a difficult time agreeing to a certain number of facts, however, unless otherwise noted, what follows shall be the facts not in dispute. n1 The following overview is derived [*3] from the submissions of the parties and, of course, does not represent findings

of fact by the Court. This action arises from the denial of LTD benefits to plaintiff Klecher. Klecher worked for Oxford Health Plans, Inc. ("Oxford") as a Director of Provider Operations, and was a participant in, and beneficiary of, their group long-term disability plan. The plan is governed by ERISA. Oxford established and maintains the Plan, and pays the premiums for coverage on behalf of the participating employees. Benefits under the plan are funded through a group insurance policy issued by MetLife, which fully insures the disability plan and is the claims administrator.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 While both parties submitted 56.1 Statements and Counter 56.1 Statements in connection with their motions for summary judgment, there are certain flaws in plaintiff's 56.1 Statement and Counter 56.1 Statement, which the Court now notes. HN1 Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact. See Local Rule 56.1(a), (d). If the opposing party then fails to controvert a fact so set forth in the moving party's 56.1 statement, that fact will be deemed admitted. See Local Rule 56.1(c); Giannullo v. City of New York, 322 F.3d 139, 2003 WL 928608, at *1 (2nd Cir. 2003). In the present case, plaintiff's 56.1 Statement did not contain any citations to the admissible evidence of record supporting each fact, and plaintiff's Counter 56.1 Statement failed to address most of the facts set forth in defendants' 56.1 Statement. Defendants urge the Court to reject plaintiff's Counter 56.1 Statement since it is "more in the nature of argument" than a short and concise statement of the material facts, and therefore to deem all facts set forth in defendants' 56.1 Statement as true. See Defendants' Reply Memorandum of Law in Further Support of Motion for Summary Judgment ("Def. Rep.") at 3. However, HN2 the Second Circuit has held that "the local rule [56.1] does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001). Therefore the Court will not deem admitted those facts which are controverted in plaintiff's opposition papers but are not directly addressed in plaintiff's Counter 56.1 Statement. However, the Court does note that there are factual points and legal arguments made in defendants' memorandum of law in support of their motion for summary judgment which plaintiff does not address in their Counter 56.1 Statement or in their opposition papers. The Court will evaluate those issues with the arguments before it.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*4]

Klecher stopped working on October 20, 1998, and following her receipt of Short Term Disability benefits for a period, under the Terms of the Plan, began to receive LTD benefits on April 21, 1999. Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Pl. 56.1"), PP 5-6. Klecher's attending physician, Dr. Eileen Korpi, in a statement generated on or after July 1, 1999, noted a herniated lumbar disc as well as severe back pain with radiculopathy. Defendants' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1"), P 8. Dr. Korpi also noted a relationship between Klecher's ongoing pregnancy and her symptoms, and she anticipated improvement "possibly in six months." Id.; Claim File, attached as Ex. B to Defendants' Notice of Motion ("Def. Not."), at ARI 0324-25. Plaintiff gave birth to her third child on May 10, 1999. Dr. Amy Hopkins n2 reviewed plaintiff's claim file on September 28, 1999, including office notes from Dr. Korpi and an MRI report dated May 20, 1999. By letter dated October 4, 1999, MetLife terminated Klecher's LTD benefits, informing her that MetLife had reviewed her claim file, and the additional medical [*5] updates regarding her disability, and that MetLife determined that plaintiff was not "disabled" under the terms of the plan. Def. 56.1 P 10; Claim File at ARI 0298. n3 In that letter, the LTD Case Manager at MetLife informed plaintiff that, "although

Get a Document - by Citation     U.S. Dist. LEXIS 9572

Case 3:02-cv-01096-RNC     Document 80-3     Filed 08/02/2004     Page 7 of 19

Page 7 of 19

you [Klecher] may experience some discomfort there is no medical documentation or clinical date presented, which shows your condition to be severe enough that it would prevent you from performing the duties of your occupation, which is classified as sedentary to light." Claim File at ARI 0298. The letter further informed plaintiff that if she disagreed with this decision, she could file a written request for a review of her claim within 60 days of receiving that letter. Id.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Plaintiff describes Dr. Hopkins as "MetLife's non-examining reviewer," see Plaintiff's Memorandum of Law in Support of her Motion for Summary Judgment ("Pl. Mem.") at 15, and defendants describe Dr. Hopkins as an "independent medical consultant." See Def. 56.1 P 9.

n3 MetLife was relying on the definition of "disabled" included in the Summary Plan Description for 1998, which states that:

> "Disability" or "Disabled" means that, due to an injury or sickness, you require the regular care and attendance of a Doctor and:
>
>> 1. you are unable to perform each of the material duties of your regular job; and
>> 2. after the first 24 months of benefit payments, you must also be unable to perform each of the material duties of any gainful work or service for which you are reasonably qualified taking into consideration your training, education, experience and past earnings; or
>> 3. you, while unable to perform all of the material duties of your regular job on a full-time basis, are:
>> a. performing at least one of the material duties of your regular job on a full-time basis; and
>> b. earning currently at least 20% less per month than your Indexed Basic Monthly Earnings due to that same Injury or Sickness.

Summary Plan Description (hereafter "1998 SPD"), attached as Ex. A to Def. Mot. at ARI 0022; Complaint ("Comp.") P 18.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*6]

Thereafter, MetLife received a letter dated October 19, 1999 from Aba Heiman, Esq., plaintiff's counsel, appealing from the denial of LTD benefits, and requesting, among other things, a copy of the claim file, any and all job/occupation descriptions and vocational evaluations, and all Oxford LTD policies, including those which were in effect on October 20, 1998, and those issued thereafter. See Claim File at ARI 0288. A package of materials, including a copy of the claim file and a surveillance tape, was sent to Mr. Heiman less than thirty days later on November 8, 1999; however a copy of the policy and plan documents were not enclosed. Comp. P 21; Def. 56.1 P 12. On April 4, 2000, Mr. Heiman wrote to MetLife, again requesting a copy of the "Policy and the Plan." Comp. P 26. MetLife replied by letter dated April 24, 2000, advising Mr. Heiman that, in order to obtain a copy of the "Policy and the Plan", plaintiff would have to write the Plan Administrator at Oxford. Id. P 27. Plaintiff then wrote to the Plan Administrator on May 3, 2000 for the MetLife Policy and Oxford LTD plan, and in a letter dated May 12, 2000, the Plan responded by sending

plaintiff [*7] various plan documents. Id. PP 28, 29.

On January 23, 2000, plaintiff submitted additional documentation of the claim, including additional medical reports, and requested final determination on the administrative appeal. Id. P 22; Claim File at ARI 0195-96. One of the additional medical reports was from Dr. Scott McWilliams of Sound Neurology, LLP, dated December 14, 1999. Claim File at ARI 0200-02. Dr. McWilliams noted that plaintiff had "normal casual and tandem gait," and that a May 19, 1999 MRI showed "degenerative disk disease at L4-5 with mild central bulge, but no compression of neural structures." Id. Also enclosed and reviewed by MetLife were notes from Dr. Korpi's office spanning many years of treatment. Id. at ARI 0259-75. Some of these notes from October and December of 1999, indicate that Klecher reported difficulty in lifting her newborn child, and "great difficulty getting through her activities of daily living." Id.; Def. 56.1 P18.

Also among the set of medical documents to be reviewed was a report from Dr. Susan Jacoby-Berlin, who had conducted a neurological examination of plaintiff on November 18, 1999, and wrote "it [*8] is my opinion that the patient is totally permanently disabled due to her herniated discs and right lumbosacral radiculopathy. The patient is unable to sit, stand or walk for prolonged periods of time, certainly less than one half hour at a time or two hours per day total." Claim File at ARI 0197-98. She also completed a form entitled "Residual Functional Capacity Assessment." Id. at ARI 0199. In addition, MetLife reviewed surveillance of Klecher that was conducted on September 30, 1999 and October 1, 1999. Def. 56.1 P 20; Claim File at ARI 0292-97. In this surveillance tape, plaintiff was observed carrying an infant in her arms as she accompanied another child to the school bus and then walking back to her residence. Id.

On February 23, 2000, MetLife wrote to plaintiff's treating physician Dr. Korpi, requesting authorization to perform a "Functional Capacity Evaluation" ("FCE") on the plaintiff. On March 2, 2000, Dr. Korpi wrote back to MetLife, refusing to give authorization for an FCE, informing MetLife that, in her opinion, an FCE would be "detrimental to her [Klecher's] health." Claim File at ARI 0188; Comp. P 24. MetLife upheld its decision to terminate [*9] plaintiff's LTD benefits by letter dated March 14, 2000. Comp. P 25; Claim File at ARI 0149-52.

On November 6, 2000, plaintiff submitted additional medical documentation and a Social Security Notice of Award, setting forth Klecher's award of monthly disability benefits commencing in April 1999, to MetLife, requesting that MetLife reopen their consideration of the claim. Comp. P 30; Claim File at ARI 0153-55. The additional medical information was reviewed by Dr. Hopkins, and a medical review summary was generated on November 14, 2000. Def. 56.1 P 26; Claim File at ARI 0144-45. In the Comment section, Dr. Hopkins stated that:

> The findings of physical examination do not correlate with the degree of impairment that [Klecher] claims to have. In addition, surveillance documented that [Klecher's] level of functioning was far in excess of that claimed. Dr. Korpi did not provide any comment on the surveillance results. There was no evidence of spinal stenosis or foraminal encroachment on MRI. Dr. Korpi refused to authorize an FCE, so specifics of functional capacity could not be evaluated.

Claim File at ARI 0144-45. By letter dated November 15, 2000, MetLife [*10] advised Mr. Heiman that, upon completion of the appeal review, MetLife had upheld its termination of plaintiff's benefits. Comp. P 31.

Upon this final denial of her appeal, plaintiff brought her claim to this Court. The plaintiff's

complaint asserts four causes of action: (1) against MetLife and the Plan for payment of penalties pursuant to 29 U.S.C. §§ 1132(c) and 1133, based on defendants' alleged failure to furnish certain plan documents, see Comp. at PP 33-46; (2) against the Plan claiming a miscalculation of benefits that plaintiff was paid prior to the termination of benefits, see Comp. PP 47-60; (3) against the Plan claiming a breach of fiduciary duty based on the alleged furnishing of incorrect information to MetLife, see Comp. PP 61-70; and (4) against MetLife alleging a breach of fiduciary duty in terminating plaintiff's benefits. See Comp. PP 71-88.

## DISCUSSION

### I. Summary Judgment Standard

HN3 A moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [*11] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Holt v. KMI-Continental Inc., 95 F.3d 123, 128 (2d Cir. 1996). The substantive law underlying a claim determines if a fact is material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). When considering the motion, the Court's responsibility is not "to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986).

HN4 In determining whether genuine issues of material fact exist, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. See Anderson, 477 U.S. at 255; Holt, 95 F.3d at 129. The moving party bears the burden of demonstrating that no genuine issue of material [*12] fact exists. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); Gallo v. Prudential Residential Servs., Ltd. P'ship., 22 F.3d 1219, 1223-24 (2d Cir. 1994). "The movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Once the moving party discharges his burden of demonstrating that no genuine issue of material fact exists, the burden shifts to the nonmoving party to offer specific evidence showing that a genuine issue for trial exists. See Celotex, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." Dister v. Cont'l Group, 859 F.2d 1108, 1114 (2d Cir. 1988) [*13] (citing Anderson, 477 U.S. at 248).

### II. Identifying the Plan

The parties agree that ERISA governs the benefits plan at issue, however the parties disagree over which plan applies to this case. Before this Court can consider the merits of the cross-motions for summary judgment, the Court must first determine which plan governs the plaintiff's claim for LTD benefits, since the plan will delineate the benefits to which the plaintiff is entitled and the standard of review that the Court should apply to the administrator's determination of the plaintiff's eligibility for those benefits. Defendants argue that the Summary Plan Description ("SPD") effective in 1998 governs plaintiff's claim, since that is the year of the claimed onset of plaintiff's disability. See Defendants' Memorandum of Law In Opposition to Plaintiff's Motion for Summary Judgment ("Def. Opp.") at 2. Plaintiff argues that the plan effective in 1999 should be the plan that governs plaintiff's claim since

Get a Document by Citation - US Dist LEXIS 3957 
Case 3:02-cv-01096-RNC   Document 80   Filed 08/02/2004   Page 10 of 19
Page 10 of 19

that is when MetLife considered and initially approved her claim. See Pl. Mem. at 3.

The Court agrees with plaintiff that the plan in effect in 1999 is the plan that governs plaintiff's [*14] claim, since that was the plan in effect when MetLife reviewed and made its determination regarding plaintiff's claim. HN5 Courts in this District have held that "'an ERISA cause of action based on the denial of benefits accrues at the time benefits are denied, and the plan in effect when the decision to deny benefits is controlling.'" Randazzo v. Federal Express Corp. Long Term Disability Plan, 2000 U.S. Dist. LEXIS 159, No. 99 Civ. 2895, 2000 WL 20698, at *4 (S.D.N.Y. Jan. 11, 2000) (quoting McWilliams v. Metropolitan Life Ins. Co., 172 F.3d 863, [published in full-text format at 1999 U.S. App. LEXIS 2047] 1999 WL 64275, at *2 (4th Cir. 1999) (table, text in WESTLAW) (unreported)); Gaitan v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Elec. Indus., 2000 U.S. Dist. LEXIS 3323, No. 99 Civ. 3534, 2000 WL 290307, at *5 (S.D.N.Y. Mar. 20, 2000). Therefore, since MetLife considered plaintiff's claim for LTD benefits, and ultimately denied that claim, in 1999, then the benefit plan in effect in 1999 will govern. n4 Defendants argue that notations in the Claim File indicate that MetLife commenced its review of plaintiff's claim in 1998, while plaintiff argues that MetLife could not have commenced its review of plaintiff's [*15] claim for LTD benefits before she filed for LTD benefits on April 2, 1999. Plaintiff's Reply Brief ("Pl. Rep.") at 3; Claim File at ARI 0113; 0129-0130. n5 However, the Court does not need to address the question of when MetLife commenced its review of plaintiff's claim for LTD benefits in order to determine that the plan in effect in 1999 is controlling, since it is the plan in effect when the decision to deny benefits is made which governs, and in this case, benefits were denied in 1999. See Randazzo, 2000 U.S. Dist. LEXIS 159, 2000 WL 20698, at *4.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Plaintiff's reliance on Brandi v. Good Lad Co. Long Term Disability Plan, 1998 U.S. Dist. LEXIS 12740, 1998 WL 512960 (S.D.N.Y. Aug. 18, 1998); to support this proposition is misplaced since the Brandi Court merely states that the benefit plan that governs a plaintiff's claim must, at the very least, be one that was in existence at the time that the administrator began its review of the plaintiff's claim.
n5 In addition, there is a document in the file not cited by either party which indicates that as of April 1, 1999, MetLife was reviewing plaintiff's claim to determine whether plaintiff would be eligible for LTD benefits, which would begin only after plaintiff had been disabled for 26 weeks of short-term disability. See Claim File at ARI 0112.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*16]

Having determined that the governing plan is the one in effect in 1999, the Court must then determine which document governs the benefit determinations made in 1999. In defendants' submission in support of their motion for summary judgment, they attach a summary plan description ("SPD"), which seems to be the plan effective in 1998. n6 See 1998 SPD, attached as Ex. A to Def. Mot. While defendants do not attach any other SPD in their submissions, plaintiff claims that an SPD for 2000 LTD plan, as well as a MetLife LTD policy and an Oxford plan effective March 1, 1997, were included in the Administrative Record ("AR") produced by defendants to plaintiff. See Pl. Mem. at 3. However, plaintiff contends that there was no policy or plan included in the AR dated in 1999. Id. Plaintiff argues that, in the absence of a policy or plan which is clearly applicable to 1999, the "Select Benefits for Employees, 1999 Full Benefit Choices" ("Select Benefits booklet"), a booklet distributed to Oxford employees every year, should control See Pl. Mem. at 3. However, defendants maintain that the Select Benefits booklet cannot represent the governing plan since it is not an SPD, it is merely [*17] an "overview of the benefit options provided by Oxford," and it is provided to Oxford employees annually to aid them in making their annual benefit selections. See Select Benefits 1999, attached as Ex. C to Pl. Mem., at 1; Def. Opp. at 2. Moreover,

defendants argue, the Select Benefits booklet acknowledges that it is not an SPD, stating that:

> This brochure presents the highlights of your Oxford Select Benefits Program. If you have any questions or require further information on your benefits program, please refer to the applicable summary plan description or contact Human Resources.
> This document provides a general summary of your benefit plans. More complete descriptions of these plans and the terms under which benefits are provided, including limitations and exclusions, are contained in the official documents of these plans.

See Select Benefits booklet, attached as Ex. C. to Pl. Mem. at 23.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 The SPD is not dated, but it does list January 1, 1988 as the date of personal benefits eligibility, see 1998 SPD at ARI 0014, and in the "Declaration of Laura Sullivan," Ms. Sullivan states that she is an employee of MetLife and describes the document attached as Ex. A to Def. Mot. as the SPD effective in 1998. See Declaration of Laura Sullivan ("Sullivan Dec."), attached to Def. Mot., P 3.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - [*18]

The threshold issue before this Court then is whether the terms of the Select Benefits booklet or the terms of the appropriate SPD govern the determination of plaintiff's benefits. HN6⚓The Second Circuit has held that when the terms of a plan and the terms of a plan summary conflict, it is the terms of the plan summary that control. See Heidgerd v. Olin Corp., 906 F.2d 903, 907 (2d Cir. 1990) (Kearse, J.). That general rule arises from the requirement under ERISA that the administrator of an employee benefits plan distribute a summary plan description to beneficiaries. See id. (citing 29 U.S.C. § 1022 (1988) (employer must furnish its employees with summary for of benefit plans describing, inter alia, "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits")). In requiring SPDs, the ERISA statute intends that the summary will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." Heidgerd, at 906 F.2d at 907-8; Camarda v. Pan American World Airways Inc., 956 F. Supp. 299, 307 (E.D.N.Y. 1997). [*19]

Both cases cited by the plaintiff to support her argument that the terms of the Select Benefits booklet control, Camarda and Feifer v. Prudential Ins., 306 F.3d 1202 (2d Cir. 2002), rely on the holding of Heidgerd in finding that, when the terms of a summary plan and a plan conflict, the terms of a summary plan govern. In each of these cases, the Court determined that the summary plan at issue met the definition of a "summary plan description" under the ERISA statute. See 29 U.S.C. § 1022. HN7⚓In order to be deemed a summary plan description under ERISA, the SPD must include, inter alia, "the plan's requirements respecting eligibility for participation and benefits; circumstances which may result in disqualification, ineligibility or denial or loss of benefits; ... [and] the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this chapter." 29 U.S.C. § 1022; Grimo v. Blue Cross/Blue Shield of Vt., 34 F.3d 148, 151 (2d Cir. 1994) [*20] (finding that a "plan, fund

or program under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits"). Under this definition, the Select Benefits booklet cannot be deemed a summary plan description under ERISA. While the Select Benefits booklet does provide an overview of benefits available to employees, it does not provide any of the terms of coverage for these benefits, and does not even include the definitions of "total disability," whether in the employee's "own occupation" or "any occupation." Nor does the Select Benefits booklet include information about the terms under which the benefits offered in the plan are provided, the limitations or exclusions pertaining to those benefits, or the dispute resolution mechanisms for the determination of those benefits, in particular what, if any, discretionary authority the plan administrator has in making the eligibility determination. Therefore, while the Select Benefits booklet provides the employee with an overview of the benefits available to him, the Court does not find that a reasonable [*21] person could have ascertained from the Select Benefits booklet "the procedures for receiving benefits." Grimo, 34 F.3d at 151; accord Pegram v. Herdrich, 530 U.S. 211, 223, 147 L. Ed. 2d 164, 120 S. Ct. 2143 (2000) ("Rules governing collection of premiums, definition of benefits, submission of claims and resolution of disagreements over entitlement to services are all the sorts of provisions that constitute a plan.").

HN8 The Second Circuit has stressed the importance of protecting the employee's right to rely on the summary plan description that is mandated by the statute. In protecting that reliance, it is implicit that the document being relied upon would at least include the necessary information regarding accessing and becoming eligible for these benefits. The Select Benefits booklet does not do that; the 1998 SPD does. Moreover, the Select Benefits booklet does include language acknowledging that it is not an SPD, stating that the brochure just presents highlights of the Oxford Select Benefits Program," referring employees to the applicable summary plan description for further information about their benefits, and stating that "more complete descriptions [*22] of these plans and the terms under which benefits are provided, including limitations and exclusions, are contained in the official documents of these plans." See Select Benefits booklet, attached as Ex. C. to Pl. Mot., at 23. Plaintiff seeks to vitiate the effect of this disclaimer by pointing to the Court's holding in Feifer, that such a disclaimer does not prevent the a summary plan from being deemed the governing plan if that summary plan meets the requirements of a "plan" under ERISA. n7 However, this case is easily distinguished from the case in Feifer. In Feifer, the Court refused to find that a disclaimer stating that the Program Summary was "not intended to cover all details of the Plan" and "that the actual provisions of the Plan will govern," rendered that Program Summary a "non-plan" during the period when it was the only written document describing the benefits available. Feifer, 306 F.3d at 1209. To allow the disclaimer to negate the effect of the Program Summary would have effectively allowed the employer to "'opt out' of ERISA's requirements despite its establishment of an employee benefits scheme that meets ERISA's definition of a 'plan' [*23] ... this is especially true where the 'plan' allegedly summarized by the document distributed to employees does not otherwise exist in written form at the time of distribution." Id. at 1209-10. However, as addressed earlier, in the present case, the Select Benefits booklet does not meet ERISA's definition of a "plan," and more importantly, it was not the only written document in existence which described the available benefits. Not only was the 1998 SPD, with a much more comprehensive description of the benefits and the procedures to be used to access those benefits, available, but the Select Benefits Booklet actually directs employees to the SPD for "a more complete description of the plans and the terms under which benefits are provided." Select Benefits booklet, attached as Ex. C to Pl. Mot.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n7 While there is a general rule in this Circuit favoring the terms of plan summary over the terms of the actual plan where there is a conflict between the two, see Heidgerd, 906 F.2d at

Get a Document - by Citation - 2, U.S. Dist. LEXIS 9572

Case 3:02-cv-01096-RNC    Document 80-3    Filed 08/02/2004    Page 13 of 19

Page 13 of 19

908, several Courts in this Circuit have found this rule to be inapplicable in certain situations where the plan summary includes a disclaimer very similar to the one in the Select Benefits booklet. See Stang v. American Express Co., 1998 U.S. Dist. LEXIS 3138, No. 93 Civ. 6615, 1998 WL 118160 (S.D.N.Y. Mar. 16, 1998) (Keenan, J.); Osborne v. New York State Teamsters Conference Pension and Retirement Fund, 783 F. Supp. 739, 742-43 (N.D.N.Y. 1992) (finding a provision in a plan summary, which notified the reader that it is a mere summary of the plan and not the controlling document, to be significant in the Court's determination that the terms of the plan governed over any inconsistent terms in the plan summary). In Stang, the Court cogently observed that in a case where the terms of the plan summary and the official plan were in conflict, the terms of the official plan governed, largely in light of the disclaimer in the summary booklet, which stated, "This booklet describes only certain highlights of some of [AEB's] benefit plans as they apply to eligible employees ... It does not supercede the actual provisions of the applicable plan documents, which in all cases are the final authority." 1998 U.S. Dist. LEXIS 3138, 1998 WL 118160, at *9. Judge Keenan found that this disclaimer put the reader "on notice." Id.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*24]

Therefore, having found that the Select Benefits booklet does not meet the definition of a "summary plan description" under ERISA and can therefore not be deemed the governing plan for 1999, the Court must determine what was the governing plan for 1999. Defendants have attached the SPD effective in 1998, but have not informed the Court as to whether that SPD was also the SPD effective in 1999. See Sullivan Dec., attached to Def. Mot. n8 Nor have the defendants informed the Court as to whether the 1998 SPD or the Select Benefits booklet was filed with Secretary of Labor, as required under 29 U.S.C. § 1021(b) and § 1024(a). See Heidgerd, 906 F.2d at 907 (holding that HN9 the employer could not rely on language in a plan document which was not filed with the Secretary of Labor pursuant to the ERISA requirements); Fitch v. Chase Manhattan Bank, 64 F. Supp. 2d 212, 224 (W.D.N.Y. 1999). Moreover, plaintiff contends that she does not recall receiving a copy of the 1998 SPD, but she does recall receiving the Select Benefits booklet. See Affidavit of Sharon Klecher, attached as Ex. B to Pl. Mot. ("Klecher Aff."), P 1. In defendants' [*25] submissions, they do not respond to this allegation by informing the Court that the 1998 SPD was in fact distributed to all employees, as mandated under 29 U.S.C. § 1021(a). Therefore, it is not settled that the appropriate summary plan description for 1999 was even distributed to all of the participants in the plan. HN10 Each party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). Without knowing the identity of the governing plan for 1999 or whether the governing plan was in fact distributed to the participants in the plan, the Court cannot decide the cross motions for summary judgment regarding plaintiff's claim that MetLife breached its fiduciary duty by terminating plaintiff's LTD benefits. Both the plaintiff's and the defendants' cross motions for summary judgment pertaining to plaintiff's fourth claim are denied without prejudice, since the Court has insufficient information to determine the merits of these motions at this time. n9

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 Plaintiff had requested that defendants produce a 1999 plan or SPD, if one existed, and "any evidence that plaintiff received a copy of either or both of them," and that those documents be made a part of the administrative record. See Letter from Aba Heiman, Esq., plaintiff's counsel, to Carl Shaerf, Esq., defendants' counsel, dated Jan. 21, 2002 ("Jan. 21 Letter"), attached as Ex. F to Def. Mot. Inexplicably, it does not appear that defendants addressed plaintiff's request, either by informing plaintiff that no SPD for 1999 existed or by producing the appropriate SPD. It may very well be the case that the SPD identified by Ms. Sullivan as being the SPD in effect in 1998 was also the SPD in effect in 1999, but the

defendants have not disclosed that information to plaintiff or the Court. See Sullivan Declaration, attached to Def. Mot. **[*26]**

n9 Plaintiff's fourth cause of action is brought against MetLife for breach of fiduciary duty. See Comp. PP 77-88. However, for the same reasons discussed infra with regard to plaintiff's third cause of action, plaintiff's claim for breach of fiduciary duty against MetLife must fail, since plaintiff is seeking individualized relief, and not seeking relief on behalf of the Plan. See Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140-44, 87 L. Ed. 2d 96, 105 S. Ct. 3085; Lee v. Burkhart, 991 F.2d 1004, 1009. Nevertheless, the Court reviewed plaintiff's fourth claim as one brought under 29 U.S.C. § 1132(a)(1)(B), since it appears that plaintiff is seeking "to recover benefits due to [her] under the terms of the Plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the Plan." 29 U.S.C. § 1132 (a)(1)(B).


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

If and when the Court does consider motions for summary judgment regarding the defendants' denial of plaintiff's LTD benefits, the Court will need to determine from the language of the governing plan, what **[*27]** standard of review to apply to the administrator's determination of plaintiff's eligibility for LTD benefits. If the governing plan in effect in 1999 confers discretionary authority upon the administrator with language similar to that in the 1998 SPD, n10 then the Court will review the denial of benefits under an "arbitrary and capricious standard." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989); Miller v. United Welfare Fund, 72 F.3d 1066, 1070-71 (2d Cir. 1995). *HN11* Under the arbitrary and capricious standard of review, a district court is limited in the scope of its review and may consider only the administrative record (i.e., the Claim File) before the administrator when the administrator made its decision denying plaintiff's benefits. See Miller, 72 F.3d at 1071 ("We follow the majority of our sister circuits in concluding that a district court's review under the arbitrary and capricious standard is limited to the administrative record."). n11 Accordingly, a district court reviewing an ERISA denial of benefits is "effectively functioning in an appellate capacity because it is precluded **[*28]** from considering new evidence." See Larsen v. Prudential Ins. Co. of America, 151 F. Supp. 2d 167, 172 (D. Conn. 2001) (citing Rizk v. Long Term Disability Plan of Dun & Bradstreet Corp., 862 F. Supp. 783, 791 (E.D.N.Y. 1994)). *HN12* While plaintiff is correct that Rule 56(a) of the Federal Rules of Civil Procedure does permit her to present supporting affidavits in connection with her motion for summary judgment, the Court cannot consider those affidavits in its review the administrator's denial of benefits, since the Court is reviewing the decision of the administrator to determine if it was "arbitrary and capricious," and therefore can only consider the material reviewed by the administrator at the time the administrator made his determination. While plaintiff may very well be correct, that the supporting affidavits of her coworkers merely "confirm her own description of the nature of her occupation," Pl. Opp. at 3, these affidavits would still be considered new evidence, and therefore could not be considered by the Court in reviewing MetLife's decision to terminate her LTD benefits. The Court would only be able to consider plaintiff's own description **[*29]** of the nature of her occupation, which is a part of the Claim File reviewed by MetLife. See Claim File, at ARI 0178. n12


- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n10 While the Select Benefits booklet omits any discussion of discretionary authority afforded to the plan administrator, the 1998 SPD includes the following language, endowing MetLife with the discretionary authority to determine eligibility for and entitlement to Plan benefits:

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

1998 SPD, attached as Ex. A to Def. Mot., at ARI 0022.

n11 HN13 If the governing document does not include language conferring discretionary authority upon the administrator, then the Court would review the decision to deny plaintiff's benefits under the de novo standard. See Firestone Tire, 489 U.S. at 115 ("a denial of benefits ... is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe terms of the plan."). The Second Circuit has held that, where de novo review of a decision rendered under an ERISA governed plan is appropriate because the plan's decision maker did not have the requisite discretionary authority, the federal court has discretion to consider evidence outside the administrative record. DeFelice v. American Intern'l Life Assurance Co. of New York, 112 F.3d 61, 65 (2d Cir. 1997). However, such discretion "ought not to be exercised in the absence of good cause." DeFelice, 112 F.3d at 66. So if the Court found there to be good cause to consider plaintiff's extrinsic evidence in reviewing MetLife's decision to terminate LTD benefits, then the Court could consider such evidence. [*30]

n12 Plaintiff cites Nagele v. Elec. Data Sys. Corp., 193 F.R.D. 94, 103 (W.D.N.Y. 2000), to support its argument that the Court can consider extrinsic evidence outside of the administrative record even when reviewing the administrator's decision to deny benefits under an "arbitrary and capricious standard." Pl. Rep. at 5. However, Nagele simply holds that "review under this deferential standard does not displace using pretrial discovery to determine the actual parameters of the administrative record, and whether or not the fiduciary acted arbitrarily and capriciously with respect to a claim for benefits under a plan as Miller itself demonstrates." 193 F.R.D. at 103.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

### III. Plaintiff First Cause of Action Against MetLife and the Plan for Payment of Penalties

Plaintiff's first cause of action against MetLife and the Plan is for payment of penalties on the grounds that defendants failed to produce copies of the plan following the request initially made by plaintiff on October 15, 1999. Comp. PP 33-46. HN14 The ERISA statute provides that, as a part of [*31] the administrative appeals process available to ERISA plan participants, every plan administrator must supply certain requested documents within thirty days of a request therefor. 29 U.S.C. § 1024(b)(4) (requiring plan administrators to respond to informational requests by plan participants); 29 U.S.C. § 1132(a)(1)(A); 29 U.S.C. § 1132 (c)(1). An administrator who "fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) ... within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $ 100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1).

Get a Document - by Citation - U.S. Dist. LEXIS 9572

Case 3:02-cv-01096-RNC    Document 80-3    Filed 08/02/2004    Page 16 of 19

Page 16 of 19

Plaintiff's counsel, Mr. Heiman, wrote to MetLife on October 15, 1999, days after her LTD benefits were denied, requesting the Claim File and any Oxford LTD policies, [*32] "including those which were in effect on October 20, 1998, and those issued thereafter." Claim File at ARI 0288. MetLife sent plaintiff a copy of the Claim File on November 8, 1999, which did not include a copy of the Oxford LTD policies in effect. On April 4, 2000, Mr. Heiman sent a letter to MetLife, again requesting a copy of "the Policy and Plan." Comp. P 37. MetLife replied in a letter dated April 24, 2000, advising Mr. Heiman that such a request should be properly directed to Oxford Health Plans, Inc. See Def. Mem. at 7; Claim File at ARI 0179. After MetLife informed Mr. Heiman that the request needed to be directed to the Plan Administrator, Mr. Heiman wrote a letter to the Plan Administrator, and plan documents were then sent to plaintiff by May 12, 2000. Comp. P 38.

Initially, the Court can dispose of plaintiff's claim against MetLife for alleged disclosure violations under § 1132(c)(1) because MetLife is not the plan administrator, and HN15 claims under § 1132(c)(1) can only be brought against "designated plan administrators, rather than the plan itself or the employer." Thorpe v. Retirement Plan of the Pillsbury Co., 80 F.3d 439, 444 (10th Cir. 1996) (citing [*33] McKinsey v. Sentry Ins., 986 F.2d 401, 403 (10th Cir. 1993)); cf. Leyda v. AlliedSignal, Inc. 322 F.3d 199, 207-08 (2d Cir. 2003) (Kearse, J.) (affirming that, under the ERISA statute, it is the plan administrator who must make reasonable efforts to ensure each plan participant's actual receipt of the plan documents). The plan administrator under ERISA is defined as "the person specifically so designated by the terms of the instrument under which the plan is operated." ERISA § (3)(16)(A)(i) (29 U.S.C. § 1002 (16)(A)(i)). Whether or not it is the SPD in effect in 1999, the 1998 SPD is certainly "an instrument under which the plan is operated," and the plan document does specifically state the Oxford Health Plans, Inc. ("the Plan") is the plan administrator. See 1998 SPD at 42. n13

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n13 Plaintiff also acknowledges that Oxford Health Plans, Inc. is the plan administrator for plaintiff's LTD benefits claim. Comp. P 38.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Turning then to the claim against [*34] the Plan for the payment of penalties under § 1132 (c)(1), plaintiff alleges that the Plan is "liable for the acts and omissions of its claims administrator," Met Life. Comp. P 44. Plaintiff argues that the Plan is liable for MetLife's failure to inform the Plan of plaintiff's request for Oxford's LTD policies, and the subsequent delay in plaintiff's receipt of Oxford's LTD policies. However, the Court agrees with defendants that this argument is essentially the agency liability argument, which has been rejected by several courts. See Hiney Printing Co. v. Brantner, 243 F.3d 956 (6th Cir. 2001) HN16 (plan administrator may not be held liable for requests directed to someone other than the administrator); cf. Crocco v. Xerox Corp., 137 F.3d 105 (2d Cir. 1998) (rejecting de facto administrator theory under § 502(c) (as amended 29 U.S.C. 1132(c)(1)). The Plan sent the requested "Policy and Plan" less than thirty days after it received a request for it from plaintiff, who had been informed by MetLife that such a request needed to be directed to the plan administrator. See Comp. PP 38, 42. Therefore, the Court finds that the Plan [*35] responded to that request in a timely manner, and was not in violation of § 1132(c)(1). However, this Court cannot grant defendant's motion for summary judgment on this claim until the defendants address the plaintiff's request for a "1999 policy and/or SPD." Jan. 21 Letter, attached as Ex. F to Def. Mot. Until defendants address that request, the Court is not able to determine whether the Plan met its obligations under § 502(c)(1). n14

Get a Document - by Citation - 3 U.S. Dist. LEXIS 9572
Case 3:02-cv-01096-RNC    Document 80-3    Filed 08/02/2004    Page 17 of 19
Page 17 of 19

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n14 <sup>HN17</sup>Since the ultimate assessment of penalties is a discretionary matter for the Court, the Court can and will consider factors such as "bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or the beneficiary," when the Court ultimately determines the merits of plaintiff's claim against the Plan for penalties. Pagovich v. Moskowitz, 865 F. Supp. 130, 137 (S.D.N.Y. 1997); see also Devlin v. Empire Blue Cross and Blue Shield, 274 F.3d 76, 90 (2d Cir. 2001).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

[*36]

## V. Plaintiff's Third Claim against the Plan for Breach of Fiduciary Duty

Plaintiff's third claim is a breach of fiduciary duty claim against the Plan for furnishing incorrect information to MetLife regarding the governing LTD plan, and regarding the nature of plaintiff's occupation. Comp. PP 61-70. Defendants argue that plaintiff's claims against Oxford Health Plans, Inc. ("Oxford") should be denied since Oxford is not a named defendant. n15 While defendants are correct that plaintiff states the third claim against Oxford, it is clear from the substance of the claim that plaintiff intended to bring this claim against Oxford Health Plans, Inc. Employee Welfare Plan ("the Plan"), a named and served defendant. Therefore, the Court will review the claim as such.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n15 Plaintiff fails to address defendants' argument on this issue in their opposition papers.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

<sup>HN18</sup>Under ERISA § 502 (a)(2), as amended 29 U.S.C. § 1132(a)(2), a participant or beneficiary of a plan can sue a fiduciary [*37] with respect to a plan for breach of fiduciary duty in violation of 29 U.S.C. § 1109, which states that <sup>HN19</sup>"any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may Ideem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109 (emphasis added). The Supreme Court has held that <sup>HN20</sup>the fiduciary duties imposed by § 1109 run to a plan and not to individual beneficiaries. Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 148, 87 L. Ed. 2d 96, 105 S. Ct. 3085 (1985) ("'Neither the statute nor the legislative history reveals a congressional intent to create a private right of action.'" (citation omitted)). Although an individual may bring a claim under § 1132(a)(2), the Court explained [*38] that it was Congress' intent that "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole." Russell, 473 U.S. at 142 n.9. Therefore, defendants argue, that plaintiffs are barred from suing under 29 U.S.C. § 1132(a)(2) because plaintiff is seeking damages on her own behalf, not on behalf of the plan. See Def. Mem. at 21. n16 This Court finds that, since the plaintiff is seeking damages on her own behalf, and not on behalf of the plan, plaintiff's claim for breach of fiduciary duty must fail.

Get a Document - by Citation, U.S. Dist. LEXIS 9572
Case 3:02-cv-01096-RNC    Document 80-3    Filed 08/02/2004    Page 18 of 19
Page 18 of 19

See Russell, 473 U.S. at 140-44; Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993) (holding that plaintiffs were barred from suing under § 502 (a)(2) (as amended 29 U.S.C. § 1132(a)(2)) because plaintiffs were seeking damages on their own behalf, not on behalf of the Plan); see also Iwans v. Aetna Life Ins. Corp., 855 F. Supp. 579, 583 (D. Conn. 1994) (holding that breach of fiduciary duty claims brought under 29 U.S.C. § 1132(a)(2) "inure to the plan, not to the individual beneficiary"); Gruby v. Brady, 838 F. Supp. 820, 829 (S.D.N.Y. 1993) [*39] (relief must go to the benefit of the plan as a whole).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n16 Plaintiff does not address this argument in either their opposition to defendants' motion for summary judgment, or in their own motion for summary judgment.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## VI. Plaintiff's Second Claim Against the Plan for the Miscalculation of Benefits

Plaintiff's second cause of action appears to be one brought against the Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B), for "benefits due and owing," alleging that the Plan miscalculated the amount of LTD benefits due to plaintiff. See Comp. PP 47-60. Defendants argue that plaintiff's claim regarding the miscalculation of her LTD benefits must be dismissed because this claim was never raised before the claim administrator and therefore, cannot be raised now in this Court. See Def. Mot. at 25. However, plaintiff argues that two notations in the Claim File pertaining to phone calls made by plaintiff to the claims administrator to inform the administrator that her yearly salary [*40] was now $ 95,000, and not $ 79,810, indicate that, in fact, plaintiff had raised this issue before the claims administrator. See Pl. Opp. at 7; Claim File at ARI 0127, 0129.

HN21 The ERISA statute requires that plaintiff exhaust the administrative remedies available to her before bringing the claim before the District Court. See Kennedy v. Empire Blue Cross and Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993) ("In the ERISA context, 'the primary purposes of the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo.'" (citations omitted)); Sanfilippo v. Provident Life and Casualty Ins. Co., 178 F. Supp. 2d. 450, 457-58 (S.D.N.Y. 2002). The doctrine of exhaustion of administrative remedies is grounded on the principle "'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has [*41] been exhausted.'" See Kennedy, 989 F.2d at 592 (citations omitted). The notations to which plaintiff refers indicate that plaintiff contacted the claims administrator regarding the discrepancy in her salary figure for purposes of her benefit calculation, and that the administrator informed plaintiff that she had to provide proof from her employer of the salary change, and the salary increase date. See Claim File at ARI 0127, 0129. However, at no time was the amount of LTD benefits paid from April 1999 to October 1999 the subject of an appeal before the claims administrator, and therefore the claims administrator was never given the opportunity to consider this appeal. n17 Therefore, it would be inappropriate for the Court to consider an appeal which was not considered by the claims administrator. As such, plaintiff's motion for summary judgment is denied as to her second cause of action, and the second cause of action is hereby dismissed for failure to exhaust her administrative remedies.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n17 While plaintiff argues that the notations in the Claim file indicate that this issue was raised before the claims administrator, plaintiff does not contend that the issue of the amount of LTD benefits paid to plaintiff from April 1999 to October 1999 was ever the subject of any appeal before the claims administrator. See Pl. Opp. at 7.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*42]

## CONCLUSION

For the reasons stated above, with regard to plaintiff's first cause of action against MetLife for payment of penalties, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted. With regard to plaintiff's cause of action against the Plan for payment of penalties, both plaintiff's and defendants' motion for summary judgment is denied without prejudice. Regarding plaintiff's second cause of action against the Plan for their alleged miscalculation of plaintiff's benefits, plaintiff's motion for summary judgment is denied, and plaintiff's second cause of action is dismissed for failure to exhaust the administrative remedies available to her. With regard to plaintiff's third cause of action against the Plan for breach of fiduciary duty, plaintiff's motion for summary judgment is denied and plaintiff's third cause of action is hereby dismissed. Finally, with regard to plaintiff's fourth cause of action against MetLife for breach of fiduciary duty, both plaintiff's and defendants' motions for summary judgment are denied without prejudice.

**SO ORDERED.**

June 5, 2003

Peter K. LEISURE

U.S.D.J.

Service: Get by LEXSEE®
Citation: 2003 U.S. Dist. LEXIS 9572
View: Full
Date/Time: Friday, July 9, 2004 - 1:16 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.