## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GERALD CODERRE                          :
    *Plaintiff*                       :   CIVIL NO. 3:02CV1096 (RNC) (DFM)

V.

DR. EDWARD PESANTI, ET AL.
    *Defendants*                     :   JULY 16, 2004


### AMENDED LOCAL RULE 56(a)(2) STATEMENT

Pursuant to Local Rule 56(a)(2), the plaintiff submits the following response to the

defendants' Local Rule 56(a)(1) Statement. The numbered paragraphs correspond to the

paragraphs in the defendants' statement.

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Plaintiff admits that he testified that he entered Meridian Hill in 1998 for heroin

and alcohol detox, but he now recalls that the program was only for heroin detox.

(Affidavit of Gerald Coderre (hereinafter "Coderre affidavit"), Para. 8).

8.   Admitted.

9.   To the extent that this paragraph suggests that the plaintiff was informed of the Hepatitis C diagnosis in 1997, it is denied. Blood tests taken in 1997 show elevated enzyme levels, but the plaintiff was not informed of the results of those tests until 2000 and he did not know until June 1998 that he had Hepatitis C. (Coderre affidavit, Para. 10, 13, 29). The remainder of this paragraph is admitted.

10.   The plaintiff admits that he was out of DOC custody from March 25, 1998, to September 21, 1998. The remainder of this paragraph is denied. (Coderre affidavit, Para. 12-14; Exhibit B to Coderre affidavit.)

11.   The portion of this paragraph indicating that the plaintiff has been opium dependent since the age of 16 is denied. (Plaintiff's deposition (submitted by defendants), P. 67,  Lines 4-8). The remainder of this paragraph is admitted.

12.   Admitted.

13.   Admitted.

14.   The plaintiff admits that his AST and ALT levels were 149 and 359, respectively, on October 6, 1999. He also admits that he was returned to prison on a technical violation on January 3, 2000, but he denies that the technical violation was drug use. The remainder of this paragraph is denied. (Coderre affidavit, Para. 24-26).

15.   Admitted.

16.   The plaintiff admits that the chart entry dated October 8, 2000, indicates that he had no symptoms, but he denies that he was asymptomatic at the time. (Coderre affidavit, Para. 39). The remainder of this paragraph is admitted.

17.   Admitted.

18.   The first sentence of this paragraph is denied. (Plaintiff's deposition, P. 98, Lines 4-10; Coderre affidavit, Para. 30, 72-74). The remainder of this paragraph is admitted.

19.   The portion of this paragraph implying that Dr. Bianchi sent a request to the Utilization Review Committee only because the plaintiff requested that he do so is denied. (Coderre affidavit, Para. 44). The remainder of this paragraph is admitted.

20.   Admitted.

21.   Denied. (Coderre affidavit, Para. 48-49, 54-60).

22.   The plaintiff admits that a substance abuse program was not available to him. (Coderre affidavit, Para. 36, 40-41).

23.   The plaintiff denies that this paragraph accurately quotes the guidelines in effect in May 2000. (Coderre affidavit, Para. 48-50; Exhibits R and S to Coderre affidavit).

24.   The portion of this paragraph indicating that in most cases it takes more than 30 years for an individual with Hepatitis C to develop serious liver problems is denied.

(Affidavit of Dr. John Gittzus (submitted by defendants), Para. 7).The plaintiff also

denies that it is prudent to wait "until you are sure" that a patient "will not again start

using intravenous drugs" before beginning treatment for Hepatitis C. (Management of

Hepatitis C, National Institutes of Health, P. 13). The remainder of this paragraph is

admitted.

    25.   The plaintiff neither admits not denies the facts purported in this paragraph

because they are not material.

    26.   The plaintiff denies the following statement because it is quoted out of context:

"Treatment for addiction should be provided prior to treatment for Hepatitis C."

According to the National Institutes of Health, "treatment of patients who are drinking

significant amounts of alcohol or who are actively using illicit drugs should be delayed

until these habits are <u>discontinued for at least six months</u>." (Emphasis supplied).

(Management of Hepatitis C, National Institutes of Health, P. 13). The remainder of this

paragraph is admitted.

    27.   Admitted.

    28.   The plaintiff admits that those cured of Hepatitis C can relapse. He also admits

that an individual currently using IV drugs is at risk of infecting himself and, for such a

person, the risks of interferon treatment would outweigh the benefits. The plaintiff denies

the portion of this paragraph which says that a person who might use IV drugs in the

future should be denied treatment. (Management of Hepatitis C, National Institutes of

Health, P. 13).

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. The plaintiff admits that the liver biopsy on September 9, 2002, confirmed that

he had chronic and severe Hepatitis C that could still be treated.

35. Admitted.

36. Admitted.

37. Admitted.

38. The plaintiff admits that he signed the intake form and that the comments

about alcohol and drug use appear on it. He denies that the comments accurately reflect

the information he provided at the time or that they were on the form at the time he

signed it. (Plaintiff's deposition, P. 35, Lines 21-25; P. 36, Lines 1-17).

39. Admitted.

40.   Plaintiff admits he had a job in the kitchen from July to September 2003. The remainder of this paragraph is denied because it inaccurately quotes the plaintiff's testimony. (Plaintiff's deposition, P. 103, Lines 2-4).

41.   Admitted.

42.   Admitted.

43.   The plaintiff denies the portion of this paragraph implying that the defendants recommended that he wait until better medication was available. (Coderre affidavit, Para. 71). He also denies the portion of this paragraph implying the only reason Dr. Bianchi submitted a URC request was because the plaintiff demanded that he do so. (Coderre affidavit, Para. 44). The remainder of this paragraph is admitted.

44.   The plaintiff denies that he "did not sustain any clinical significant progression of his illness by a delay in treatment." (Coderre affidavit, Para. 77-79, 83-84; Exhibits Q, EE, FF, GG, HH, II, KK, LL to Coderre affidavit). The plaintiff neither admits nor denies the purported facts regarding the present standard of interferon therapy because they are not material. The portions of this paragraph claiming that the defendant benefitting by the delay in treatment are denied. (Coderre affidavit, Para.77-79, 83-84).

45.   The plaintiff neither admits nor denies this paragraph because the purported facts are not material.

46.   The plaintiff neither admits nor denies this paragraph because it does not purport any facts.

47.   The plaintiff neither admits nor denies the facts purported in this paragraph because they are not material.

48.   Admitted.

49.   The plaintiff neither admits nor denies the purported facts regarding the current standard in the community because they are not material. The plaintiff admits that a person who receives treatment for Hepatitis C and later becomes reinfected did not receive any long-term benefit from the treatment.

## DISPUTED ISSUES OF MATERIAL FACT

1.   Blood work taken at Gates Correctional Institution on June 10, 1997, showed elevated liver enzyme levels, but the plaintiff was not informed about the results of the tests until nearly three years later. (Coderre affidavit, Para. 10, 11, 29).

2.   The plaintiff did not learn he had Hepatitis C until June 1998, when blood tests were performed at Danbury Hospital. (Coderre affidavit, Para. 13).

3.   After the diagnosis at Danbury Hospital, the plaintiff was instructed to return in three months for follow-up monitoring and the possible initiation of Interferon therapy.

The follow-up appointment did not take place because the plaintiff was arrested. (Coderre affidavit, Para. 14, 15).

4.  Correctional Managed Health Care ("CMHC") personnel failed to monitor the plaintiff's liver enzyme levels while he was incarcerated between October 1998 and August 20, 1999. (Coderre affidavit, Para. 20).

5.  While the plaintiff was on Transitional Supervision ("TS") from August 20 to September 23, 1999, the plaintiff was required to submit to regular urine tests. Those tests were negative for the presence of alcohol or illegal drugs. (Coderre affidavit, Para. 21).

6.  While on TS, the plaintiff reported to his TS officer once a week from November 10 to December 24, 1999. Each week, he was required to submit a urine sample, which tested negative for the presence of alcohol or illegal drugs. (Coderre affidavit, Para. 24-25).

7.  The plaintiff was brought back to prison from TS on January 3, 2000, because he had missed appointments with his TS officer. (Coderre affidavit, Para. 26).

8.  Dr. Edward Blanchette ordered blood work for the plaintiff in March 2000, which showed elevated liver enzyme levels. Despite the elevated levels, Dr. Blanchette failed to refer the plaintiff for Hepatitis C treatment. (Coderre affidavit, Para. 30; Exhibit G to Coderre affidavit).

9.  While the plaintiff was housed at the Bridgeport Correctional Center from

December 14, 2000, to May 3, 2001, substance abuse courses were not available to him.

(Coderre affidavit, Para. 36).

10.   On January 16, 2001, during a discussion with a mental health worker, the

plaintiff expressed a desire for help in combating his drug problem. (Coderre affidavit,

Para. 38; Exhibit J to Coderre affidavit).

11.   Sometime in 2000, the plaintiff began to suffer from fatigue. In January 2001,

he began to feel aches in his knees and other joints. At that time, he did not know that

these problems could be symptoms of liver damage caused by Hepatitis C. (Coderre

affidavit, Para. 39).

12.   On April 16, 2001, the plaintiff received a Class A Disciplinary Report

accusing him of fighting with another inmate. (Coderre affidavit, Para. 40; Exhibit K to

Coderre affidavit).

13.   Because he pleaded guilty to the Class A disciplinary charge, the plaintiff was

ineligible for prison programs, including substance abuse courses, for a period of 120

days. (Coderre affidavit, Para. 41; Exhibit L to Coderre affidavit).

14.   Recommendations from the National Institutes of Health contain no support

for the proposition that an inmate who has not used illegal drugs for six months and is

otherwise an appropriate candidate for Hepatitis C treatment should be denied such

treatment if he used illegal drugs in the six months prior to his incarceration.

(Management of Hepatitis C, National Institutes of Health; Coderre affidavit, Para. 49;

Exhibits R, S, T to Coderre affidavit).

15.   Prior to issuing new guidelines for the treatment of Hepatitis C on July 7,

2000, Dr. Edward Pesanti discussed the proposed guidelines with infectious disease

doctors in the state's prisons and incorporated changes suggested by some of those

physicians. (Exhibit R to Coderre affidavit).

16.   Dr. Edward Blanchette was an infectious disease doctor and was one of the

physicians with whom Dr. Pesanti discussed the proposed guidelines. (Dr. Blanchette's

Responses to Plaintiff's Requests for Admissions (Exhibit LL to Coderre affidavit), P. 1,

No. 1, 2).

17.   At no point did CMHC guidelines require an inmate to complete a substance

abuse program before Hepatitis C treatment would be provided. (Exhibits R, S, T to

Coderre affidavit).

18.   Prior to July 7, 2002, the CMHC guidelines for the treatment of Hepatitis C

had remained the same since October 1998. (Coderre affidavit, Para. 50-51; Exhibit R, S

to Coderre affidavit).

19.   Prior to July 7, 2000, the CMHC guidelines did not contain a requirement

barring Hepatitis C treatment unless an inmate had not used illegal drugs in the six

months prior to his incarceration or had a sentence in excess of five years. (Exhibits R, S to Coderre affidavit).

20.   In February 2002, CMHC revised its guidelines to eliminate the provision barring treatment unless an inmate had not used illegal drugs for at least six months prior to incarceration. (Coderre affidavit, Para. 52; Exhibit T to Coderre affidavit).

21.   The plaintiff has never refused to take a substance abuse course while in prison. (Coderre affidavit, Para. 54).

22.   When an inmate refuses health services, CMHC requires the inmate to sign a form acknowledging the refusal and releasing CMHC from responsibility. The plaintiff was never asked to sign a form stating he had refused a substance abuse course, and his prison medical records do not contain such a form. (Coderre affidavit, Para. 55).

23.   On June 26, 2001, the plaintiff was not eligible to take a substance abuse course because 120 days had not passed since he was found guilty of a Class A Disciplinary Report dated April 16, 2001. (Coderre affidavit, Para. 56).

24.   On June 25, 2001, Dr. Germain Bianchi submitted a request to the Utilization Review Committee ("URC"), asking that the plaintiff be sent to a gastroenterology ("GI") clinic for a probable liver biopsy. Dr. Bianchi submitted the request because he believed that the plaintiff was in need of HCV treatment, not simply because the plaintiff requested or demanded that he do so. (Coderre affidavit, Para. 44).

25. On June 26, 2001, when the Utilization Review Committee denied Dr. Bianchi's request to send the plaintiff for a GI consultation, the plaintiff had been clean and sober for more than six months. He had not drunk alcohol or used illicit drugs since prior to the beginning of his incarceration on December 14, 2000. (Coderre affidavit, Para. 57).

26. The plaintiff has never drunk alcohol or used illegal drugs while in prison. Such behavior would be a violation of prison rules and would subject an inmate to a Disciplinary Report. The plaintiff has never received a Disciplinary Report accusing him of possession or using alcohol or illegal drugs. (Coderre affidavit, Para. 58-60).

27. On June 26, 2001, the plaintiff was not eligible for a substance abuse course under prison rules because 120 days had not passed since he was found guilty of the Disciplinary Report dated April 16, 2001. (Coderre affidavit, Para. 41, 56).

28. When the Disciplinary Report "cleared" in August 2001, the plaintiff signed up for a substance abuse course. But he was placed on a waiting list. (Coderre affidavit, Para. 62-63).

29. Defendants Enrica White and Dr. Germain Bianchi were aware that the plaintiff was on the waiting list and was unable to attend a substance abuse course. (Coderre affidavit, Para. 64-65, 67; Exhibits W, Y to Coderre affidavit).

30. Nurse White and Dr. Bianchi made no attempts to get the plaintiff moved up

on the waiting list or otherwise take any action that would have allowed him to attend a substance abuse course. (Coderre affidavit, Para. 69).

31.  None of the defendants, or anyone else employed by CMHC, ever suggested to the plaintiff that it would be beneficial to delay treatment until advances were made in Hepatitis C medication. The only reason given for not providing treatment was that the plaintiff had not completed a substance abuse program. (Coderre affidavit, Para. 71).

32.  Dr. Bianchi told the plaintiff that Dr. Pesanti does not approve requests for HCV treatment because such treatment costs too much. (Coderre affidavit, Para. 44).

33.  Dr. Pesanti's decision on June 26, 2001, to deny the request for a GI consultation and liver biopsy until the plaintiff completed a substance abuse course was based upon financial concerns. (Coderre affidavit, Para. 44; Exhibit R to Coderre affidavit).

34.  The provision in CMHC guidelines which said that an inmate was not a candidate for HCV treatment unless he had a very long sentence or had not used illicit drugs for at least since months prior to his incarceration was merely a pretext for a policy to deny HCV treatment because of the cost of such treatment. (Coderre affidavit, Para. 44; Exhibit R to Coderre affidavit).

35.  On February 26, 2002, the plaintiff received a Class A Disciplinary Report. He

13

pleaded guilty to the charge, which made him ineligible for a substance abuse program for another 120 days. (Coderre affidavit, Para. 75-76).

36.  In March 2002 or thereabout, the plaintiff began to experience problems such as pain over both kidneys, severe headaches, muscle pains in his back and legs, difficulty urinating and blood in the urine. (Coderre affidavit, Para. 77-79).

37.  The problems the plaintiff began to experience in March 2002 or thereabout, as well as the fatigue and joint pain that began earlier, were caused by untreated liver disease associated with Hepatitis C. (Coderre affidavit, Para. 84; Dr. Pesanti's Responses to Plaintiff's Requests for Admissions (Exhibit Q to Coderre affidavit), P. 3, No. 8; Dr. Blanchette's Responses to Plaintiff's Requests for Admissions (Exhibit LL to Coderre affidavit), P 3-4, No. 12).

38.  On July 25, 2003, CMHC allowed the plaintiff to begin treatment for Hepatitis C even though he had not completed a substance abuse course (Coderre affidavit, Para. 84) and despite the fact it had information that he had drunk alcohol and used illegal drugs in the six months prior to the beginning of his incarceration on March 24, 2003. (Defendants' Local Rule 56(a)(1) Statement, Para 38).

THE PLAINTIFF


_____
Gerald Coderre, Pro Se
Inmate #245210
Enfield Correctional Institution
289 Shaker Road
P.O. Box 1500
Enfield, CT 06082


Although not appearing herein, the undersigned
assisted in the preparation of this statement:


_____
Richard P. Cahill, Esq.
Schulman & Associates
Inmates' Legal Assistance Program
78 Oak Street, P.O. Box 260237
Hartford, CT 06126-0237
Tel: (860) 246-1118
Fax: (860) 246-1119

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage prepaid, on this *16th*

day of July, 2004, to the following counsel and pro se parties of record:


Ann E. Lynch, Esq.
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105


Gerald Coderre