UNITED STATES
DISTRICT
COURT

Gerald Coderre

V.

DR. Edward Pesanti

3:02cv1096 (RNc)

FILED

2005 FEB 11 ^ 11:19

Feb 10, 2005

Plaintiffs opposition for The
ReNewed Summery Judgement Motion
By the Defendants.

Also enclosed A supplemental Affidavit
of The Plaintiff Feb 10, 2005

Memerandum in support of The ReNewed
summery Judgement motion.

It is as Follows

①

On February 24, 2004 Defendants Filed a Motion For summary Judgement.

On September 30, 2004 The Court Granted The Defendants Motion for summary Judgement as To Plaintiffs conspiracy claim and equal Protection claim.

The Court denied The denfendants Motion for summary Judgement on the Deliberate Indifference Claim but stated.

That The Plaintiff will have until December 31, 2004 to Come up with an expert Report Countering The Defendants delay exposed Plaintiff to a substantial risk of serious harm.

On January 31, 2005 Mr Richard Cahill of Inmates legal Assistance Filed The Report of DR. Jonathan Isreal.

During The Search of The expert That was eventually Found Richard Cahill Gave the G.I DR. Isreal with Permission My Medical chart and other Documents. I The Plaintiff was Not sure if Myself and Mr Cahills chart Coincided From Past Problems of C.M.H.C Not Giving Mr Cahill a Complete Medical chart Mr Cahill would Not Agree to a prior Meeting to Go over and check Through.

During this Medical expert opinion that

2

Richard Cahill I.L.A.P had Done I was
Not Allowed to Ask Questions to Dr Isreal
talk to him persenally or on the Phone Nor
was I Informed of any of The Questions
That were asked.
During a visit From Richard Cahill I was
Informed of The Report and This is it
I was Advised To File it. It is all we Got
and you have to File something.
I was Also Advised That This was only
a Report That The Defendants Could Not
use it That it wasn't signed testimony
or Affidavit and or a Deposition Then and
only Then did I Agree to submitt it
Because I did not Agree to the Doctors
Report as submitted and wanted to talk
to DR Isreal I was Never Afforded The
opertunity.
My opposition to The Defendants ReNewed
Motion for Summery Judgement is as
Follows.

During The First ever Monoriting of Hepatitis
C. virus (HCV) From here on AFter) In
January 2000 By Nurse Diane Carter
to March 2000 when she Alerted The Plaintiff
to her Findings and The medical File Results
of Previous years (see Affidavit 6/23/04

3

#26-29 and evidence Cited There in.)
(see opposition to summery Judgement PG-4
6/23/04.) From here on After oPPo 6/23/04.)
During this incorceration From January 2000
to November 2000 The (Alts) were Being Monitored.
and They were Markedly High.
(see Affidavit 6/23/04 # 29-34.)
Due to the length of time I was Not a
Canadate for InterFeron treatment. (see Affidavit
6/23/04 #33.) (see opposition 6/23/04 PG-5)
The Defendants elaberate on the Fact that
I did Not have any symptoms I was Asym-
-ptomatic (see Defendants Motion for summery
Judgement PG-5.) 2/23/04.) 56(a)(2) statement From
here on After.

DR Gitless states in his Affidavit that it takes
20 yrs for serious liver ProBlems (see Gitless AFF-
-idavit 2/23/04 # 7.)
DR. Pesanti states liver disease to happen, it
usally takes 20-30 yrs (see Pesanti Affidavit
2/23/04 #21.)
The Defendants had No insight on how long
The Plaintiff had (HCV.) and a liver Biopsy is
the only way to determine the extent of
damage done. (see N.I.H Book excerpted From
Defendents evidence PG-7.)
Testing for serum Alts is the most inexpensive
and NoNinovasive Means of essesing disease.

4

Activity

The Defendants over years of ALT evaluations know that The liver was Being Damaged it was happening.

The Defendants own Affidavits show that There is a Genuine issue of Material Fact The Defendants testified That The Plaintiff did Not sustain any clinical significant Progression of his Illness by a Delay in treatment. (Affidavit of Blanchette #32. 2/23/04.) Affidavit of Pesanti 2/23/04, #29.) But They also testified That I was Asymptomatic in October 2000. (see Def 56(a)(2) PG-5.) (Affidavit of Pesanti #16) (Affidavit of Blanchette #17.) (Affidavit of Bianchi #16.) (see Plaintiffs supplemental Affidavit 2/10/05 #3, 1, 4)

The Plaintiff testified that he started to feel symptoms of (HCV.) But he DiDn't know what They were Related to (see Plaintiff Affidavit #39, 6/23/04) (see DR. Isreal report If Plaintiff was treated in 2001 it wouldn't of happen

On PG-4-5 of Defendants Memorandum on ReNewed Motion for summery Judgetment 2/3/05

Plaintiff has offered any Medical evidence to Counter The Following Facts in Para 43. of Def Local 56(a)(2) statement.

The Defendants testified that Because the InterFeron tx Available From 1998 through the summer of 2002 Was Not as Good as the Current treatment They Recommended waiting For a better Medication

5

Unless a Patient had severe and or Advanced (HCV) (Affidavit of Blanchette #31) Affidavit of Pesanti #28. (Affidavit of Bianchi #37.) The liver Biopsy shows That The Plaintiff had severe (HCV.) on 9/9/02 (see Affidavit Plaintiff 6/23/04 #83.) and evidence cited there in.) Therefore one of two things Must Be true eather the Plaintiff Advanced to this stage During the Denial in Care and or when he was Denied he was severe Pointing to thier own testimony the Plaintiff should have Been treated.

On PG-4 of Defendants Renewed Motion for Summery Judgement.

According to Plaintiffs Most Recent suBmission There is only a 10 to 15 Percent chance that one will develop Muscle Aches and Joint Pains From (HCV.)

Currently (HCV.) is Responsible For an estimated 8 to 10,000 Deaths annually and without effective intervention it is Postulated to triple in the next 10-20 years. Currently, Approximinently 30,000 Acute New Case infections are estimated to occur each year (see N.I.H excerpted PG-3.)

About 85% of (HCV.)-infected individuals Fail to clear the virus by 6 Months and develop chronic (HCV.) (see N.I.H PG-5.)

The Report From DR. Jonathan Isreal says PG-2 There is a 10 to 15 Percent Risk that those

6

chronically infected with (HCV.) can develop cryoglobulinemia and treating Mr Codarre in June 2001 would of obviated this Risk Given the Fact That 30,000 case Develop a year 85% become chronically infected Thats close to 25,000 so 2500 to 3000 People Could develop and Do Develop cryoGlobulinemia as the Plaintiff DiD suffer From.

eradication of The (HCV.) is the Appropiate treatment as treating Mr Codarre in 2001 would of obviated This Risk.

The Defendants say Plaintiff speculates the Pain that he suffered and The Addmissions of The Defendants are Just Addmissions that People Do suffer as is Correctly Pointed out in 8 and 12 on The Bottom of Page 4 except the Plaintiff DiD Not speculate.

The Defendants Never Concluded that The Plain-tiff was Diagnosed with any other Disease that Cause these symptoms other than (HCV.) (See Affidavitt 6/23/04 Plaintiff # 77-80, 83.) The Defendants Addmitted These symptoms (see (Affidavitt 6/23/04 #84 and evidence cited There in.) During the time of The Denial in Medical Care The Defendants would Not Give infor-mation, litature on the (HCV.) to the Plaintiff The Defendants DiD Not want The Plaintiff to atribute any symptom that he was

7

suffering From to the (HCV.)
(see supplemental Affidavit of Plaintiff 2/10/05
#1.) and evidence cited there in.)
There was No way I was Getting any Information
out of Them The Defendants and when I Grieved
it I Got transferred (see supplemental Affidavit
Plaintiff 2/10/05 #2.)
(see Affidavit of Bianchi #32.)
In March of 2002 The (HCV) Related symptoms
Got Bad (see oppo to summery Judgement
6/23/04, PG-21-22 and evidence cited There in)
On 5/3/02 DR. Bianchi Gave an exam on the
Plaintiff Due to the symptoms the Plaintiff
was suffering From (see Plaintiff Affidavit 6/23/04
77-80 83-85.) After a thorough exam DR.
Germain Bianchi expedited a G.I consult
to Uconn U.R.C who Approved one.
(see supplemental Affidavit Plaintiff 2/10/05 #3)
DR. Bianchi in exhibit M states Headaches
are Not associated with (HCV) his Affidavit says
Different (see ~~Affidavit of~~ Bianchi Admissions #15.)
I was Sent To a G.I who Determined
That The symptoms I verbally told her
of sent me for a liver Biopsy
(see Affidavit Plaintiff 6/23/04 #83.)
As The Aches and Pains Progressed it Got
worse and worse when I was transferred
out of Carl Robinson June 2002 and

8

They were Prescribing Me Motrin The Highest
Doses For the Pain in My Back legs Arms
Headaches (see supplemental Affidavit 2/10/05
#4.) why would I Get Motrin if I was
suffering No Pain This is a Genuine issue
of Material Fact and summery Judgement
should enter on My behalf. This is sufficient
evidence to overcome summery Judgement and
is Not speculation as the Defendants contend.
The Defendants Contend That There wasn't any
significant Progression of The Illness That
I actually Benefited By the Delay and Also
testified That The Medication was Not
Approved until After I was Paroled out of The
Care of Connecticut Dept of Correction (Here on After
C.D.O.C.) Then it Cant Be a Delay when one leaves
There Control and The C.D.O.C specifically says They
No longer will Care for you (see Plaintiffs supplemen-
tal Affidavit #5.) (see Affidavit 6/23/04 # 86-89.)
This supports My conclusion that I sought Care
Through an Outside physician who had to run
Additional tests and I was Returned to C.D.O.C
Before I could start (HCV) treatment.
The Defendants own supporting Documents support
The Notion that They weren't Going to treat
The Plaintiff with any Medication (7/1/04.
Defendants Reply Memorandum PG-3  DR. Pesanti,

9

Believed That Giving Plaintiff interFerron would at best be a Futile Act and at worst an unnecessary suBJection of Plaintiff to side effects of a Medi—cation that would Be Rendered useless. DR. Pesati harbored Ill regard towards Inmates with Past Drug historys and Let inmates such as The Plaintiff suffer from (HCV.) Related symptoms instead of helping Plaintiff. DR. Isreals Report says treating Mr Calewe in 2001 would of deviated This Risk. During Deposition testimony the Defendants Posed a Question why Give treatment to somebody who is only Going to Go Back out and Reinfect Themselves? But The Thing is I wasnt Given a chance to Get treated (see Deposition of Plaintiff enclosed in supplemental Affidavit 2/10/05 #6) This is the Defendants state of mind and as DR. Isreal correctly Points out Active I.V Drug use is a CounterDiction The Plaintiff was and is clean (see Plaintiff Affidavit 6/23/04 #53-69.) This is a Genuine issue of Material Fact as to the state of mind of The Defendants and whether there Actions in this so Called Delay was to Actually treat the Plaintiff Prior to The Community Release and only a trier of Fact Could Render an Appropiate Decision Based on Facts. summery Judge ment should enter on behalf of The Plaintiff

On PG-4-5 Defendants Memorandum in support of

10

There Renewed Motion for summery Judgement.
The Defendants Contend The InterFerron Available
From 1998 Through To summer of 2002 was Not
as Good as the Current treatment and Pegsys
wasnt Approved until 12/3/02 and the Approval
was a Milestone. The Defendants elaborate
That Pegsys is a Pegylated InterFerron that
Retains Active in the Bloodstream longer and
at a more Constant level Than NoN Pegylated
InterFerrons.
The Fact is The Plaintiff was Denied treatment
6/26/01 and had Been incarcerated since
12/14/00 (see Plaintiff Affidavit 6/23/04 #35.)
#46,)
In ~~December of~~ 2001 The pegylated Inter—
Ferron was invented By sherring-Plough
LaBratorys kenilworth NewJersey it was
called Peg-intren it was Quoted as the Cure
(see Plaintiffs supplemental Affidavit 2/10/05 #
1.) The C.D.O.C and The Defendants had
in there Pocession a Cure for the Plaintiff
and as was Previously shows [sic] Through
Judical Records The Pain and suffering and
DR. Isreal says This Could of Been Avoided
in PG-2 Report By treating hr Colerre in 2001
The Correctional managed Health Care The Defendants
In February 2002 The C.M.H.C The Defendants
Came out with a Revised GuiDeline

11

(See Plaintiffs Affidavit 6/23/04 #52.)
On the Cover is the Uconn stamp under
This stamp only Combination therapy with
Ribivirian and Inter Feron (regular or PeGylated
will Be Approved This shows the Fact That
The Defendants were using Pegylated Peg-intron
Prior to 2002 But still opted on letting the
Plaintiff suffer with Pain and The easiest
Daily task was a chair.
The Fact also is that Genotype 3 is the
easiest of strands to treat The Defendants
for years Assumed That I had The hardest
Strand To treat and Neglected testing for
it. The Defendants cannot Produce a Genotype
3 test Result until June of 2003. The Plain-
tiff on upon his Community Release when he
sought help Through outside Docter Mr shiffhon
Then DiD The Plaintiff Knew he had a strand
of (HCV.) That was six Months in treatment
(see Plaintiffs supplemental Affidavit 2/10/05 #8.)
DR. Isveals Report Concludes that with
Genotype 3 a Patient such as I showed
a Good Responce as would be expected
of Genotype 3.
The Defendants Point out on Page 5 of The
ReNewed Motion for summery Judgement 2/3/05
Plaintiff offers No evidence to counter the
Facts 1) The hepatitis C. treatments improved

12

After september 2002 I don't Have to prove
New ones' came out after I showed That
Pegylated Peg-intron came out (see Plaintiffs supple-
-mental Affidavit 2/10/05 #7.) During My Incarceration
and They used it to Cure People and still use
it as well as the Community in treating People
with (HCV.) (see Plaintiffs Affidavit 6/23/04 #70.)
2.) The New treatments have a greater success
Rate in clearing the virus. The Fact is that
The Plaintiff had a Genotype of a 3A and the
success Rate in clearing This Genotype (HCV.)
(see Plaintiffs supplemental Affidavit 2/10/05 #9.)
Dr Jonathan Isreal Never Discredited any
other Pegylated InterFerron he hearly Noted I
was treated with Pegasys-Copagus. and the
Response was Good as would Be expected with
Genotype 3. And The treatment Regiman was only
6 Months versus a year. In Defendants Local.
56(a)(2) statement #46 They Contend That if
treatment was started Prior to his Parole he
May Not have Finished treatment on the outside
If I Recieved The treatment 6/26/01 treatment
would of ended 1/26/02 The Defendants Failed to
look at The whole Picture and Concluded The
Patient would Be a waste of time.
3.) The side effects with The New treatment are
Much less Frequent As with any InterFerron
They all Pose a Risk of side effects and

13

If side effects Do happen it is usally in the
First 2to4 weeks of treatment.
(see Affidavit of DR. John Gittziss 1/29/04 #10)
and as was expected I had side effects
The First Few weeks and They disipated.
This Argue ment Cannot stand The Defendants
Cannot honestly say they were waiting for a new
Improved Medication to Come out when they had
available to them the Best Peg-intron Regulated
InterFeren and it was curing People instead
The Defendants chose to let The Plaintiff suffer
with Pain with The inaBility to Do Daily
activitys Quite simply summery Judge ment should
enter on the Plaintiffs Behalf.


On Page 2 of The Defendants Relewed Motion for
summery Judgement It is Quite unlikely that a
Delay of 2or 3yrs in his treatment would have
Caused additional harm to his liver.
DR. Jonathon Isreal did Not Rule it out with
a Gauratee it is so unlikely Not Gaurateed.
DR. Isreals Report did Conclude That The liver
Biopsy Report had Active hepatitis and Moderate
Fibrosis The N.I.H clearly Marks out who
should Be treated (see N.I.H PG-12.)
treatment is Recommended for the Group of Patients
with chronic (HCU) who are at Greatest Risk for
Progression to Cirrhesiss These Patients are

14

characterized By Persistantly elevated ALT, Positive HCV-RNA and a liver Biopsy with either Portal or Bridging Fibrosis and at least Moderate Degrees of Inflamation and Necrosis (see Plaintiffs Affidavit 6/23/04 # 83.) and evidence cited There in) As The Biopsy shows it is in The Advanced Severe stage III Approaching cirrhosiss in the Next Few sections ✓ I'm Going to shows Facts That a Patient in The Stages that was Posessed By the Plaintiff was in Fact Put at a Risk to develop cirrhosiss and additional harm. (see Plaintiffs supplemental Affidavit # 9 exhibit A.)

Front Page 665 Most hepatologists agree that Patients with Moderate hepatitis bridging Fibrosis or Cirrhosiss should Be treated. Dr Isreal agrees Page 2 Active hepatitis Moderate fibrosis The Defendants own Affidavits show that There is a Genuine issue of Material Fact The defendants testified that The Plaintiff did Not sustain any clinical significant Progression of his Illness by a "delay" in treatment.

( Affidavit of Edward Blanchette #32 )
Affidavit of Edward Pesanti # 29 )
But They also testified That Because the inter- Feron treatment available From 1998 Through The summer of 2002 was Not as Good as the Current treatment They Recommended waiting

15

For a better Medication unless a Patient had
severe and or Advanced Hepatitis C.
(Affidavit of Blanchette #31.)
(Affidavit of Pesanti #28.)
(Affidavit of Bianchi #37.)
The liver Biopsy shows That The Plaintiff had
severe Hepatitis C. on 9/9/02 (see Plaintiff
Affidavit 6/23/04 exhibit k-k.)
Therefore one of two things Must be true
Either the Plaintiffs Illness had Progressed
to that Advanced stage since June 26, 2001
when the ReQuest was denied or the Plaintiff
allready had severe Hepatitis C. on June
26, 2001 which would Mean that According
to the view expressed By the Defendants, in
there Affidavits the Plaintiff should have
Been Provided with The treatment at That
time as is expressed By the other offered
evidence Then the Percentage of anything
happening and The Pain and Suffering of
The Plaintiff would of Been at Zero Percent
and The Risk Factor eliminated This is a
Genuine issue of Material Fact
(see Plaintiffs supplemental Affidavit 2/10/05 #9
exhibit (A).)
On PG-666 3) watchful waiting with Liver Biopsy
every 3 years and Combination therapy in
Patients Found to have Moderate hepatitis

16

oN Liver Biopsy. The First Biopsy found severe hepatitis with Moderate Bridging Fibrosis so According to the view of The Defendants [sic] I was severe when I was Denied in June 26, 2001 In exhiBit A Plaintiffs supplemental Affidavit PG-670 In the long term the Reduced Risk for Cirrhosiss Associated with Immediate Therapy translated into a 0.4 year Gain in life. The benefit of Immediate antiviral treatment increased with Qaulity adJustment because such Therapy Resulted in a higher proportion of sustained Responders sooner decreasing the likelihood and proportion of Life spent in less desirable states of health cryoglobinemia Muscle AChes and Pains headaches is a less desireable state and Because immediate Therapy Also Prolonged life. The Judge who sentenced The Plaintiff Never set Conditions that The years at The end of My Life Be shortened.

Frequency of Biopsy First one for prognoses then 3yrs if treatment is Not Recommended as with This Case treatment was Recommended But according to the views expressed By the Defendants [sic] I should of Gotten treatment June 26, 2001.

PG-672 treatment of patients in whom disease Progressed to Moderate hepatitis is superior to waiting until cirrhosis develops (with delayed treatment all Patients became older and some Might also Progress to Cirrhosiss. PG-665)

17

Since The Defendants used The Report of Dr Jonathon Isreal. After I was advised By Richard Cahill That it Could Not Be used Because it wasnt a sworn to statement an Affidavit, or deposition it was used in There Refiling of The Motion for summery Judgment.

I would Like To Refer To Defendants Reply Memorandum Dated July 1, 2004, in this Memorandum the Defendants Quote a Case at length PG-5 and Cite a Page at of This Case Johnson V. wright 2004 U.S Dist Lexis 7543 Attached *4-5 I would Like to show the Court This Report Filed By an expert who obviosly was. The Court Accepted it and Printed into the Case I will show The similiar Facts.

Johnson suffers From chronic Hepatitis C. He was Diagnosed with The Disease in May 1997 at that time it was Determined that his Disease was in Advanced stage III with Bridging Fibrosis of The liver (see Plaintiffs Affidavit 6/23/04 #83 exhibit kk liver Biopsy) chronic hepatitis, Active severe stage III of VI comment Portal to Portal Fibrous bridges.

Additionally in Johnson *5
chronic hepatitis C is an extremely

18

slow progressing disease. Researchers
currently estimate that it takes at
least 10 to 20 years For a Person inflicted
with chronic hepatitis C. to develop Cirrhosis
(see Affidavit of DR. Gitterss #7.) he says 20
yrs And (see Affidavit of DR. Eduard
Pesanti # 21.) he says 20 serious liver Disease
However The Progression of a Patient
infected with chronic hepatitis C. From
Advanced stage III with Bridging Fibrosis
to stage IV Can take as little as
Several years expert Report of efsevia
ALBanis M.D
According to the Defendants testimony [SIC]
one of two things Must be true when I
was Denied (HCV) treatment I was Advanced
and severe and or I Progressed to it upto
The Biopsy The Defendants said They
Posed No Risk This was a Serious Risk
and Caused No Harm being in Pain everyday
as was shown [SIC] Caused harm Mentally
emotionally, Physically. The Plaintiff has
Not Relied on My own Allegations as is
shown on clinical Records Documents
and Report I have offered evidence From
which a Reasonable Juror Could Find That
The Defendants were Incorrect and
Deliberately Indifferent towards a serious

19

Medical Need as well as Condition This
creates a Genuine issue of Material Fact

## Memorandum of law

This is Not a Case of temporary delay
as it was Brought out to be and or interuption
in Care that This Case is denial in Medical
treatment and That The Pain and suffering
was Caused By the Denial (see Plaintiffs
supplemental Affidavit #5.) How Can one say well
when he Comes Back we'll save this Bottle of
Medication and it will only Be a Delay.
In the Case the Court Cites smith v. Carpenter
316 F.3d 178, 187 states in Part.
when Medical Care tk is denied for a prolonged
Period of time or when a degenerative Medical
Condition is Neglected over sufficient time The
Alleged deprivation of Care Can No longer be
characterized as delayed treatment but May
Properly be viewed as a Refusal to Provide
Medical treatment Quoting Harrison v. Barkley
219 F.3d at 137
If The Court Doesn't Accept This Argument
as a Complete Denial of Medical Care Based
on the Facts Then the Court Must Construe
This as a Delay From 1997 when The Def-
endants First knew of Alt enzyme liver Dam-
age occuring because it is the same scenerio
Delay Don't have enough time as was thought

20

to Recieve tx They No longer Could Delay Because
of known severe Damage which was Deliberately
ignored.
This is Not a Case of we Ran out of Medication
for a week temporary delay. tx interupted.)
There was No Care to be interupted
It is undisputed That (HCV.) if left untreated can
Cause liver Disease and Damage and eventually
Death.
The defendants do Not dispute that The Plaintiff tried
to Meet The NoN Medical Requirements A.S.A.T to
Recieve tx
Because the OBJective Component of an eighth
Amendment Claim is Necessarily Contextual and
Fact specific the Serious Medical Need InQuiry
Must Be tailored to the specific Circumstances
of each Case  smith 316 F.3d at 185.
when The Basis For a prisoners Eighth Amend-
-Ment claim is a temporary delay or interuption
in the Provision of otherwise AdeQuate Medical
tx it is Appropiate to Focus on the Delay or Inter-
-ruption in tx Rather than the Prisoners underlying
Medical Condition alone in Analyzing whether the
Alleged deprivation is in OBJective terms sufficiently
serious to support an eighth Amendment claim.
There is No Need to distinguish between a Prisoners
underlying serious Medical Condition and the
Circumstances of his serious Medical Need

21

When The Prisoner Alleges that Prison officials have
Failed to Provide General, treatment for his
Medical Condition, smith 316 F.3d at 185-86
The Defendants took a Risk That I Might Get
Sick (HCV) Related symtoms Pain and suffering
and Rolled The Dice and The Defendants
DiDnt know until 1½ yrs later that when they
Denied The Medical Care I was severe in (HCV)
liver Disease and Moderate Fibrosis DR. Isreal
Report.
to establish an eighth Amendment claim based
on the denial of Medical Care First The Plaintiff
Must Make an ObJective showing that The
deprivation was sufficently serious or that The
Result of defendants denial was sufficently
serious. Montgomery V. Pinchak 294 F.3d at 499

The defendants deliberatly denied societys standard
The N.I.H Plaintiffs supplemental Affidavit exh. B,+(A)
on who should Be treated it is clearly shown The
Defendants Point out in PG-2 of The Redrawed Motion
for summary JudgeMent is Hnt I suffered only a 10
to 15 percent chance and That The symptoms were
Not Related I was suffering Before that and upto
The Commencement of Medication that Relieved My
symptoms treating me in June 2001 would of also
of extended My life span instead it is shortened
Further.

22

Prison officials May Not ignore Medical
Conditions that are very likely to cause
serious Illness and Needless Suffering in
The Future even if The Prisoner has No Current
serious symptoms
Helling v. Mckinney 507 U.S at 33
The defendants knew That The Plaintiff had
elevated ALts Liver enzymes for years
(see N.I.H PG-6)
Longterm studies suggest that Most Patients with
Progressive liver Disease who develop Cirrhosiss
have detectable ALt elevations
(Affidavit of Pesanti #13)(Affidavit of Blanchette #14)
Affidavit of Bianchi #13) These Doctors knew of
The damage that happened That was happening
But did Nothing to prevent it.
The Defendants rightfully Point out That The
Plaintiff was asymptomatic in October 2000
(Affidavit of Bianchi #16.) But DR. Bianchi sent
The Plaintiff To a Gastroenterologist as is Noted
In(Plaintiffs supplemental Affidavit #3.) it wasn't
a Foot doctor or Head Doctor But a liver Doctor
who specialized in (HCV.) and also as DR. Bianchi
rightfully Points out Patient has chronic (HCV) expedite
6.I consult.(see Plaintiffs Affidavit 6/23/04 #39.)
Any doubts About The credibility of an Affidavit
or deposition are Generally left to the Fact
Finder The Role of The Court being to
(see Plaintiffs Affidavit 6/23/04 77-80)

23

Determine whether There is indeed No issue
of Material Fact
Fujitsu V. Fed express 247 F.3d 423, 428
(2d cir 2001)
The Defendants Throughout There Reviewed Motion
for summary Judgement Point to a view of
The Plaintiff speculateing That can be laid
To Rest The evidence supports The Pain
and Suffering that The Plaintiff endured and
laid a Genuine issue of Material fact
whether The denial ("Delay") Caused a Risk of
harm now and in the Future The issues Raised
is a Jury Function and Do Not Justify Granting
summery Judgement on Behalf of The Defendants

The term Serious Medical Need means a
Condition of urgency one that Might Produce
extreme Pain, degeneration or death. In other
words it is a Condition Presenting a Substantial
Risk of harm. In estelle V. Gamble the
supreme Court explained that The eighth Amend-
ment Prohibition on Cruel and unusual Punishment
encompasses the deliberate Failure to treat
a Prisoners serious Illness or Injury
Resulting in the infliction of Unnecessary
Pain and suffering, estelle 429 U.S at 105
DR. Isreal treating Mr Coleure in 2001 would of
obviated this Risk of any Pain and suffering

24

The Fact is the Defendants Addmitted That
The described symptoms that The Plaintiff
suffered From Could Be indicative of Numerous
other Conditions The Defendants Cannot Point
to the Record and Indicate at That time the
Plaintiff suffered from any other diagnosed
disease or Illness (see Defendants Renewed
Motion for Summery Judgement PG-4)
(see Plaintiffs Affidavit 6/23/04 Exhibits Q and LL)
If The Defendants Say where is the Physical
Injury we only Need To look at The liver
Biopsy (Plaintiffs Affidavit 6/23/04 #83 exhibit kk)
Due to the severity, it made all known symptoms
to (HCV) a Factor.
The Defendants Never Said in any Form how
long from stage III severe Advanced bridging
Fibrosis such as The Plaintiff has to Advance
to stage IV cirrhosiss until This Question
is Answered it Brings a Genuine issue of Fact
what ever Number of years that can be brought
about 2yrs is a significant ("Delay") to Cause Injury


An outright Refusal of any treatment for a
degenerative Condition that tends to cause
Acute infection and Pain if left untreated
and Imposition of a seriously unreasonable
Condition on such treatment both Constitute
deliberate Indifference on the Part of

25

Prison officials.

Harrison v. Barkley 219 F.3d 132, 138

This is Precisely what happened The Medical Condition, Need, went untreated on Part of deliberate Indifference of The Defendants and as DR. Isreal rightfully Points out treatment in 2001 would of obviated The Risk of Pain and suffering the Plaintiff went Through

The Eighth Amendment forbids not only deprivations of Medical Care that Produce Physical torture and lingering death but also less serious denials which Cause or perpetuate pain

Brock v. wright 315 F.3d 158, 163 (2d Cir 2003)

todaro v. ward 565 F.2d 48, 52 (2d cir 1977)

we do not require an Intiate to demonstrate that he or she experiences Pain that is at The limit of human Ability to bear Nor do we Require a showing that his or her Condition will degenerate into a life threatening one.

Brock v. wright 315 F.3d at 163

on Both The Accounts Above I showed Through exhibited Material The Pain and also an Issue of Conflict in the Affidavits of The Defendants on the Accountability of treating

26

That was severe in Reality (HCV.) and or it
Progressed to severity in which The Court wanted
to see. Both scenerios is serious deliberate Indifference
because I Got sick and That Risk could of Been Avoided.
This is a Genuine issue.
I want to Reiterate The Fact That I was Not Allowed
to speak to My own Medical exerpt DR. Isreal. to ask
important Questions I'm a pro-se Plaintiff who was
Denied Counsel To Get a Medical expert. Time was Money
and I didn't have it and Mr Cahill said The Doctor is
Not Going to Accept any more Questions I Never asked
any was this My Doctor. By The Looks of The Report
I would say it wasn't. I was told The Doctor spent
2 hrs on it I have over a Thousand Pages it would
Take That Much Time to Flip the Pages. when I was
Convinced Misled By Mr Richard Cahill of I.L.A.P
to sign this Report he said it would Not Count
it is Not a Deposition, sworn testimony and or an
Affidavit and he Led me to Believe it was Better to
File that Than Nothing. He also Put on the Motion the
Fact of The 700.00 on the Draft "why".
Then an Inmate looking out for My Interest showed me Rules
803 (6) 803 (7) That The diagnosis is addmissable

I'm asking that The ☐ Judge discredit The
report Based on 3 Facts 1) The Patient Intake
Never Spoke to the Doctor

27

And or was examined. 2) Mr Richard Cahill of I.L.A.P Let The Pro-se Party Led The Plaintiff to Believe That This Report Could Not Be Used as said Before [SIC] 3) The Plaintiff does Not know if all if any of The Medical Records were Actually Reviewed seeing that The Plaintiff was Not Allowed To talk to The Doctor Mr Isreal. This does Not Make sense I SupposeAbly had an expert I Could Not Talk with!

One important Question it is No Secret That when I was Denied Medical Care I had Advanced stage III with Bridging Fibrosis Liver Disease On June 26, 2001.

I Presented A case Johnson v. wright 2004 U.S Dist Lexis 7543 AT *5

It Quotes a Medical Doctor As This 2nd or Court Presented That To stage 4 cirrhosiss From Advanced stage III could take as Little as several years.

June 26, 2001 To July 16, 2003 is 1 yr 3 ½ mo of several. This is Risk of serious InJury To the Plaintiff Due to The Delay.

My ALt and AST Liver Functions May Normal. But when The AST₃ Are higher Than The ALts even if Normal it Presents a form of Cirrhosiss and My Functions are Flipped I was Not Afforded The Question to be

(see Plaintiffs supplemental Affidavit 2/10/05 #10)



Answered and I.L.A.P Richard Cahill would
Not Present This Question to DR. Isreal.
I'm asking That The Judge Dismiss This Report
and or have an expert Appointed to the
Plaintiff where Questions Can Be Answered
And a variety of Doctor, client Privelges can
be Brought up with Confidence.
The Determination as to whether Records are
suffiently Reliable to warrant There Addtission
in evidence is left to the sound discretion
of The trial Judge.

Furthurmore The Plaintiff has endured Pain that
at sometimes was unbearable I lost The
Ability to work, Play, and any daily Activity
was a painful episode as can be seen
Through The evidence Presented [sic] That
There was Maximum strength katrin for Pain
That didn't help I had abdoman Pain kidney
Pain muscle Pain aches all over my Body
My Back was unbelivable.
The Defendants Contend in there August 5,
2004 Reply to Plaintiffs supplemental Memorandum
That a Car Accident in 1998 was The
result of The Back Pain I was suffering
The Fact is From The Accident in sept 1998
to January of 2001 I Recieved No kind
of Medical help from the C.D.O.C about

(29)

Any kind of Injury so one Could Conclude that
This wasnt Related it was years apart

There is No settled precise hetric Guide a Court
in its estimation of The seriasness of a prisoners
Medical Condition in Many Cases, however, We have
set Forth Factors That should guide The Analysis.
Thus in Chance v. Armstrong we Refereed to a
Non exaustive list of such Factors including 1.)
whether a Reasonable docter or patient would perceive
The Medical Need in Question as important and
worthy of Comment or treatment 2) whether the
Medical Condition significantly Affects daily Activities
and 3) The existance of chronic and substantial.
Pain. Brock v. wright 315 F.3d 158, 162 (2nd cir)
Chance v. Armstrong 143 F.3d at 702 (2nd cir)
In all Three described Above I have set Forth
in evidence Not speculation on #1 That is
Presented in ( supplement affidavit of Plaintiff 2/10/05
# 3 ) DR. Bianchi Thought it was important and
worthy of Comment and treatment.
In Number 2 and 3 I Presented Pain and
suffering in (see supplemental Affidavit of Plaintiff
2/10/05 # 3, 2, 1, 4, ) espically #4 DR. Bianchi
agreed I was unable to work and The Medical
Condition effected My daily Activity. (see Amended
complaint 10; 18, 31, 33, 38.)
The eighth Amendment ForBids Not only

(30)

deprivations of Medical Care That Produce
Physical torture and lingering death but
Also less serious Denials which Cause or
Perpetuate Pain

The Defendants Denial in Medical had severe
Medical Consequences on the Plaintiff as is
shown Physically, Mentally, emotionally The
Defendants Contend That it was all Pure
Speculation The Plaintiff has Proved otherwise
I Gerald Codewe the Plaintiff Respectfully
ask The Court to Denie summary Judgement
on Behalf of The Defendants There is more
Than enough To let a trier of Fact decide
The Facts in this Case summary Judgement
should be Granted on Behalf of The Plaintiff

I Respectfully Ask The Court To Consider The
Previous Denied Motion for Appointment of
Counsel to obtain a Medical expert That
will speak to Plaintiff

Gerald Codewe
Enfield C.I
P.O Box 1500
Enfield ct 06083

Certification

I hereby Certify that a Copy
of This Motion was Mailed to
The Following On   2/10/05

TO: Assistant Attorney General
ANN E, Lynch
110 Sherman ST.
Hartford ct 06105

Gerald Cadevic
Plaintiff
2/10/05